**CASE NO. 8:16-CV-02105-VMC**

---

**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

---

SAVANNAH CAPITAL, LLC,

Appellant,

vs.

THOMAS SALVADOR MARTINO,

Appellee.

---

**ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF FLORIDA**

---

# INITIAL BRIEF OF APPELLANT

ANTHONY & PARTNERS, LLC
John A. Anthony, Esq.
Stephenie Biernacki Anthony, Esq.
Dominic A. Isgro, Esq.
201 N. Franklin Street, Suite 2800
Tampa, Florida 33602
(813) 273-5616

# I. TABLE OF CONTENTS

**I. TABLE OF CONTENTS** .......... i

**II. TABLE OF AUTHORITIES** .......... iii

**III. STATEMENT OF APPELLATE JURISDICTION** .......... 1

**IV. STATEMENT OF THE ISSUES AND STANDARD OF REVIEW** .......... 1

A. Statement of the Issues .......... 1

B. Standard of Review .......... 2

**V. STATEMENT OF THE CASE** .......... 4

**VI. STATEMENT OF FACTS** .......... 9

A. The Relationship of the Parties and the History of the Debtor's Actionable Misconduct with respect to Deville Corp. .......... 9

B. Initiation of the Bankruptcy Case and the Nondischargeability Action .......... 13

C. Savannah's Continued Efforts in the Bankruptcy Case .......... 16

D. Summary Judgment as to the Nondischargeability Action and the Debtor's Objection to the Savannah Claim .......... 18

**VII. SUMMARY OF THE ARGUMENT** .......... 21

**VIII. ARGUMENT** .......... 23

A. LEGAL STANDARD PERTAINING TO THE ISSUES OF STANDING AND DIRECT VERSUS DERIVATIVE CAUSES OF ACTION .......... 23

B. THE BANKRUPTCY COURT ABUSED ITS DISCRETION BY FAILING TO APPLY THE PROPER LEGAL STANDARD OR TO FOLLOW PROPER PROCEDURES IN MAKING ITS DETERMINATION AS TO THE ISSUE OF SAVANNAH'S STANDING TO SUE ....................26

C. CONTRARY TO THE DEBTOR'S ASSERTIONS, SAVANNAH HAD NO REASON TO SEEK DERIVATIVE STANDING AT SOME POINT PRIOR TO THE SUMMARY JUDGMENT STAGE OF THE LITIGATION ....................31

D. THE BANKRUPTCY COURT ERRED IN DETERMINING THAT SAVANNAH LACKED STANDING TO SUE IN ITS OWN RIGHT ....................34

E. THE BANKRUPTCY COURT ABUSED ITS DISCRETION BY SUSTAINING THE DEBTOR'S OBJECTION TO THE SAVANNAH CLAIM, BECAUSE THE DEBTOR LACKED STANDING, IN THE FIRST INSTANCE, TO ASSERT SUCH OBJECTION....................36

**IX. REQUEST FOR ORAL ARGUMENT** ....................40

**X. CONCLUSION** ....................41

# II. TABLE OF AUTHORITIES

**Cases**

*Caserta v. Tobin*,
175 B.R. 773 (S.D. Fla. 1994)........................................................ 37, 39

*Citizens Nat. Bank of St. Petersburg v. Peters*,
175 So. 2d 54 (Fla. 2d DCA 1965)........................................................25

*Deramus v. Bank of Prattville*,
180 B.R. 665 (M.D. Ala. 1995)..............................................................2

*Hantz v. Belyew*,
194 Fed. Appx. 897 (11th Cir. 2006) .............................................. 25, 34

*Harrell v. The Florida Bar*,
608 F.3d 1241 (11th Cir. 2010)............................................................24

*In re Beeber*,
239 B.R. 13 (Bankr. E.D.N.Y. 1999) .............................................. 34, 36

*In re Beverly Mfg. Corp.*,
841 F.2d 365 (11th Cir. 1988)................................................ 4, 9, 10, 27

*In re Bull*,
528 B.R. 473 (M.D. Fla. 2015) ..............................................................3

*In re Chase & Sanborn Corp.*,
904 F.2d 588 (11th Cir. 1990)................................................................3

*In re Chira*,
378 B.R. 698 (S.D. Fla. 2007)................................................................3

*In re Chris-Marine, U.S.A., Inc.*,
321 B.R. 63 (M.D. Fla. 2004) ................................................................2

*In re Costello*,
184 B.R. 166 (Bankr. M.D. Fla. 1995)........................................... 37, 38

*In re D'Anello*,
477 B.R. 13 (Bankr. D. Mass. 2012) .............................................. 23, 24

*In re I & F Corp.*,
219 B.R. 483 (Bankr. S.D. Ohio 1998) .......................................... 38, 39

*In re Pervis*,
497 B.R. 612 (Bankr. N.D. Ga. 2013) ............................................ 34, 35

*In re Phillips*,
185 B.R. 121 (Bankr. E.D.N.Y. 1995) ............................................ 34, 36

*In re Premier Const. Group, LLC*,
2015 WL 3407857 (M.D. Fla. 2015) .................................................... 40

*In re Red Carpet Corp. of Panama City Beach*,
902 F.2d 883 (11th Cir. 1990) ........................................................ 3, 27

*In re Regency Realty Associates*,
205 B.R. 317 (M.D. Fla. 1997) ...............................................................3

*In re Stanley*,
114 B.R. 777 (Bankr. M.D. Fla. 1990) ...................................... 37, 38, 39

*In re Weeks Landing, LLC*,
439 B.R. 897 (M.D. Fla. 2010) ...............................................................2

*In re Whittle*,
449 B.R. 427 (Bankr. M.D. Fla. 2011) ........................................... passim

*Mulhall v. UNITE HERE Local 355*,
618 F.3d 1279 (11th Cir. 2010) ..................................................... 23, 24

*Nat'l Capital Mgmt., LLC v. Herman*, 6:11-CV-9-ORL-28,
2011 WL 4531736 (M.D. Fla. Sept. 29, 2011) .........................................3

*Parks v. Multimedia Techs., Inc.*,
520 S.E.2d 517 (Ga. Ct. App. 1999) .....................................................34

*Pittman v. Cole*,
267 F.3d 1269 (11th Cir. 2001) ........................................................ 3, 36

*Warth v. Seldin*,
422 U.S. 490 (1975) ................................................................ 23, 24, 25

**Statutes**

11 U.S.C. § 523 ..................................................................... 4, 5, 13, 30

11 U.S.C. § 502 ..................................................................... 8, 22, 37, 38

11 U.S.C. § 726 ............................................................................... 37

28 U.S.C. § 158 ................................................................................. 1

§ 605.0410, *Florida Statutes* ............................................................ 11

**Rules**

F.R.A.P. 32 ....................................................................................... 41

Fed. R. Bankr. P. 8001(a) .................................................................... 1

## III. STATEMENT OF APPELLATE JURISDICTION

Appellant, Savannah Capital, LLC (hereinafter "Savannah") brings this appeal from the United States Bankruptcy Court, Middle District of Florida (the "Bankruptcy Court") to the United States District Court for the Middle District of Florida, pursuant to 28 U.S.C. § 158 and Federal Rule of Bankruptcy Procedure 8001(a). Savannah appeals from the (i) "Order Sustaining Objection to Proof of Claim of Savannah Capital, LLC," entered in Bankruptcy Case No. 8:14-bk-13452-KRM on July 29, 2016, [Appx. 76], in favor of Thomas Salvador Martino (the "Debtor"); (ii) "Memorandum Opinion and Order Granting Defendant's Motion for Summary Judgment," entered in Adversary Proceeding No. 8:15-ap-00418-KRM on July 13, 2016, [Appx. 178]; and (iii) "Final Judgment," entered in Adversary Proceeding No. 8:15-ap-00418-KRM on July 14, 2016, [Appx. 187]. The instant appeal, Case No. 8:16-cv-02105-VMC (the "Appeal") [Appx. 1], and a second-filed appeal, Case No. 8:16-cv-02151-EAK (the "Second-Filed Appeal"), have been consolidated by Order of the Court under Case No. 8:16-cv-02105-VMC. [Appx. 4].

## IV. STATEMENT OF THE ISSUES AND STANDARD OF REVIEW

### A. Statement of the Issues

(1) Did the Bankruptcy Court abuse its discretion by disallowing Savannah's

claim and granting summary judgment in favor of the Debtor on Savannah's nondischargeability action, where the Court had previously denied the Debtor's motion to dismiss the nondischargeability action for lack of standing?

(2) Does Savannah possess standing, as a matter of law, to maintain a nondischargeability action against the Debtor?

(3) Did the Bankruptcy Court abuse its discretion by sustaining the Debtor's objection to Savannah's claim, where the Debtor lacked standing to raise his objection?

**B. Standard of Review**

District courts sitting in an appellate capacity to review the determination of a bankruptcy court apply the same standards of review as do appellate courts when reviewing other cases. *In re Chris-Marine, U.S.A., Inc.*, 321 B.R. 63, 64 (M.D. Fla. 2004) (*citing Deramus v. Bank of Prattville*, 180 B.R. 665, 667 (M.D. Ala. 1995)). "A bankruptcy court's conclusions of law are therefore reviewed *de novo,* requiring the district court to independently examine the law and to draw its own conclusions after applying the law to the facts, without regard for the decision of bankruptcy court." *Id.; see also In re Weeks Landing, LLC*, 439 B.R. 897, 911 (M.D. Fla. 2010) ("An appellate court reviews the Bankruptcy Court's grant of a summary judgment *de novo*, applying the same summary judgment

legal standard applicable in the Bankruptcy Court and viewing all evidence and reasonable inferences in favor of the non-moving party."); *In re Regency Realty Associates*, 205 B.R. 317, 318 (M.D. Fla. 1997) ("Appellant is entitled to an independent *de novo* review of all conclusions of law and the legal significance accorded to the facts."). The issue of whether a plaintiff possesses standing to bring suit in federal court is subject to *de novo* review. *See Pittman v. Cole*, 267 F.3d 1269, 1282 (11th Cir. 2001) ("We review *de novo* whether a plaintiff has standing to bring suit in federal court."). Findings of fact made by the bankruptcy court are reviewed under the "clearly erroneous" standard. *Id.*; *see also In re Chase & Sanborn Corp.*, 904 F.2d 588, 593 (11th Cir. 1990); *In re Regency Realty Associates*, 205 B.R. 317, 318 (M.D. Fla. 1997).

"A bankruptcy court's decision to allow or disallow a claim is reviewed under the abuse of discretion standard." *In re Bull*, 528 B.R. 473, 484 (M.D. Fla. 2015); *Nat'l Capital Mgmt., LLC v. Herman*, 6:11-CV-9-ORL-28, 2011 WL 4531736, at *1 (M.D. Fla. Sept. 29, 2011); *In re Chira*, 378 B.R. 698, 708 (S.D. Fla. 2007), *aff'd*, 567 F.3d 1307 (11th Cir. 2009). "An abuse of discretion occurs if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous." *In re Red Carpet Corp. of Panama City Beach*, 902 F.2d 883,

890 (11th Cir. 1990) (*citing In re Beverly Mfg. Corp.*, 841 F.2d 365, 369 (11th Cir. 1988)).

## V. STATEMENT OF THE CASE

For over two years, Savannah has been engaged in vigorous litigation with the Debtor in both State and Federal Court to seek redress for the injuries it has sustained as a result of the fraud, defalcation, breaches of fiduciary duties, and other actionable misconduct perpetrated by the Debtor in his capacity as manager of Deville Corp. ("Deville"), a corporation in which Savannah and the Debtor each hold a 50% equity interest. Since the Debtor filed his petition seeking relief under Chapter 7 on or about November 14, 2014, thereby initiating that certain bankruptcy case styled as *In re Thomas Salvador Martino*, Case No. 8:14-bk-13452-KRM, currently pending in the United States Bankruptcy Court for the Middle District of Florida (the "Bankruptcy Case"), Savannah has been an active participant as a creditor therein, maintaining a claim against the Debtor's bankruptcy estate amounting to not less than $1,514,081.00 (the "Savannah Claim"), commencing that certain adversary proceeding styled as *Savannah Capital, LLC v. Thomas Salvador Martino*, Adv. Proc. No. 8:15-ap-00418-KRM, by filing a complaint (the "Complaint") against the Debtor seeking a determination that the debt represented by the Savannah Claim should be

nondischargeable pursuant to §§ 523(a)(2), (a)(4), and (a)(6) of the United States Bankruptcy Code (the "Nondischargeability Action"), and even playing an instrumental role in augmenting the Debtor's bankruptcy estate by $480,000 by way of an auction for the sale of certain fraudulent transfer claims formerly held by the Chapter 7 Trustee against the Debtor and his spouse, as described in greater detail *infra*.

On May 1, 2015, Savannah commenced the Nondischargeability Action and filed the Savannah Claim in the Bankruptcy Case. Shortly thereafter, on May 20, 2015, the Debtor filed a motion to dismiss the Nondischargeability Action, asserting, *inter alia*, that Savannah lacked standing to maintain the same. At that early stage of the Nondischargeability Action, the issue that is now of paramount importance – indeed, the issue upon which the resolution of this Appeal turns in large part – was raised before the Bankruptcy Court. That threshold issue was, and remains, whether Savannah possesses standing to maintain an action against the Debtor under § 523(a) of the Bankruptcy Code or, at the very least, whether Savannah should have been permitted to amend its Complaint to bring suit in a derivative capacity on behalf of Deville. Crucially, in passing upon this issue, the Bankruptcy Court initially agreed with Savannah, and on September 4, 2015, it entered an order denying the Debtor's motion to dismiss to the extent the

motion was predicated upon allegations that Savannah lacked standing to maintain the Nondischargeability Action.[1] Naturally, Savannah understood then, as it continues to believe now, that it possessed standing to maintain the Nondischargeability Action. Indeed, the threshold issue of standing was ripe for consideration at the time of the hearings on the Debtor's motion to dismiss in the early summer of 2015, and it was incumbent upon the Bankruptcy Court to dispose of such issue at that time, regardless of whether the Court ruled that Savannah possessed standing in its own right or would be required to amend its suit to maintain the same on behalf of Deville.

In the ensuing months between August of 2015, when the Bankruptcy Court denied the Debtor's motion to dismiss as to the issue of standing, and July of 2016, when the Court abruptly reversed course and determined, summarily and in direct contradiction to its previous determination, that Savannah lacked standing to maintain the Nondischargeability Action, Savannah continued to prosecute its case with all vigor, seeking discovery from the Debtor (who stubbornly refused to comply with reasonable discovery requests) and expending significant time and resources in an effort to augment the assets of the Debtor's

---

[1] The Bankruptcy Court also granted the Debtor's motion to dismiss in part, but only as to the dismissal of Deville as a party defendant to the Nondischargeability Action.

estate[2] by preventing the Debtor from compromising certain valuable fraudulent transfer claims (the "UFTA Claims") held by the Chapter 7 Trustee against the Debtor and his spouse for less than their fair value. More specifically, the Debtor attempted to reach a compromise with the Trustee (and very nearly succeeded, but for the intervention of Savannah) to settle the UFTA Claims for the paltry amount of $25,000, arguing that the claims were wholly without merit. However, Savannah interceded for the benefit of the estate and pressed for an auction of the UFTA Claims. Miraculously, once Savannah stepped in, claims that the Debtor had asserted were entirely meritless only a few weeks beforehand suddenly became immensely valuable – a fact born out when an entity friendly to the Debtor (and induced by the Debtor to bid at the bankruptcy auction) ultimately purchased the ostensibly "worthless" UFTA Claims at auction for $480,000.

This Appeal arises out of the Bankruptcy Court's grant of summary judgment in favor of the Debtor, which disposed of Savannah's Nondischargeability Action on the basis of standing, as well as the disallowance of the Savannah Claim.[3] Not only did Savannah possess standing to maintain the

---

[2] And, by extension, its own eventual recovery as the largest creditor of the estate.

[3] The Savannah Claim is predicated upon the same actionable misconduct that forms the basis of the Complaint in Savannah's Nondischargeability Action. During a hearing held on June 11, 2015, the Bankruptcy Court deemed the Savannah Claim timely filed, allowed the Debtor thirty (30) days in which to object to the same, and determined that the Savannah Claim and

Nondischargeability Action and the Savannah Claim, but Savannah respectfully submits that the Bankruptcy Court also abused its discretion by abruptly reversing its ruling on the issue of standing after it initially disposed of the issue in Savannah's favor, leading Savannah to continue to expend significant time and resources to prosecute an adversary proceeding, only to be summarily exiled from the proceeding and simultaneously cut off from any prospect of recovery upon the Savannah Claim over a year later, without regard to the substantive merits of Savannah's causes of action against the Debtor.

Moreover, Savannah respectfully urges that the Bankruptcy Court erred in its application of pertinent law to the facts of the Nondischargeability Action, inasmuch as the Bankruptcy Court's ruling on the issue of Savannah's standing sacrificed substance for the sake of form, resulting in a severe miscarriage of justice and significant prejudice to Savannah. Finally, Savannah submits that the Bankruptcy Court abused its discretion by permitting the Debtor to object to the Savannah Claim, as the Court had not determined that there was a surplus of assets in the bankruptcy estate such as might otherwise have endowed the Debtor

---

any objection thereto would track, or "travel with," the Nondischargeability Action. [Appx. 125]. Accordingly, when the Bankruptcy Court later ruled on summary judgment that Savannah lacked standing to maintain the Nondischargeability Action, it also sustained the Debtor's objection to the Savannah Claim on the same grounds, simultaneously disposing of the Nondischargeability Action and shutting Savannah out from any recovery upon the Savannah Claim in the Bankruptcy Case.

with standing to object to the Savannah Claim pursuant to Bankruptcy Code § 502(a) and relevant decisions thereunder. Indeed, during the proceedings surrounding the Bankruptcy Court's grant of summary judgment in the Debtor's favor and its disallowance of the Savannah Claim, it became evident that there is no surplus in the bankruptcy estate. As such, it is somewhat ironic that while the Debtor complained of Savannah's lack of standing, the Debtor lacked standing to object to the Savannah Claim in the first instance.

## VI. STATEMENT OF FACTS

### A. The Relationship of the Parties and the History of the Debtor's Actionable Misconduct with respect to Deville Corp.

Since July 26, 1985, the Debtor has been a member of The Florida Bar in good standing, and at all relevant times has been engaged in the private practice of law. [Appx. 79]. The Debtor is a relative by marriage of the equity interest holders of Savannah, and represented to the principals of Savannah that he was skilled and knowledgeable not only in law but in business administration and real estate management. *Id.*

Savannah is owned by sixteen (16) children and stepchildren of Robinson Callen (the "Callen Group"), one of whom is Pam Martino, the spouse of the Debtor. *Id.* Mr. Callen has operated Savannah as its managing member since 2012. *Id.* In connection with the formation of Deville, the Callen Group and the

Debtor agreed that the Callen Group, through a corporate entity, would own half of Deville, and the Debtor and his wife, Pamela Martino, a stepdaughter of Robinson Callen, would own the other half. *Id.* It was also agreed that the Debtor would have ongoing responsibility for the management and control of Deville. [Appx. 80].

The Debtor knowingly accepted all of the responsibilities and duties conferred upon him by the principals of Savannah, but upon effectively taking control of Deville, the Debtor manipulated the business and financial activities of Deville for his own personal lucre at the expense of Savannah and the Callen family members, who had trusted him. *Id.*

While in *de facto* control of Deville, the Debtor engaged in certain actionable misconduct, including funding a loan to himself for $1,028,162, through sporadic checks written out of the Deville bank account by the Debtor to himself and related companies (the "Loan"); failing to account to Savannah as requested in connection with the business and financial operations of Deville; permitting secured loans owed by Deville to go into default in such a manner that valuable property located at 128-130 Second Avenue North, Nashville, Tennessee (the "Second Avenue Property") was lost at foreclosure thus diminishing the net worth of Deville; and failing to account to Savannah or

Deville for the inappropriate actions and lost opportunities resulting from the apparent insolvency of Deville. *Id.* By permitting the Second Avenue Property to be lost at foreclosure, the Debtor not only depleted the equity in Deville by at least $2,000,000, but also enabled an entity related to the Debtor and his spouse to acquire the loan on the Second Avenue Property from the lender just prior to foreclosure for substantially less than the fair value of the property, and resell it for personal gain.

Notwithstanding efforts of the Debtor to frustrate the flow of information from Deville to Savannah, Savannah was able to determine that there was no "loan" in any traditional sense made by Deville to the Debtor. Indeed, no loan documents have ever been produced to Savannah, and the relevant records in Savannah's possession instead reflect use by the Debtor of Deville as a personal source of funds for himself and his law firm.

On August 27, 2014, having become at least partially aware of the Debtor's malfeasance with respect to Deville, Savannah initiated a civil action against Deville (the "Records Action") in the Thirteenth Judicial Circuit in and for Hillsborough County, Florida (the "State Court"), styled *Savannah Capital, LLC, v. Deville Corp.*, Case No. 2014-CA-08669, seeking a determination that Savannah possesses a fifty percent (50%) equity interest in Deville, and seeking

access to records under § 605.0410, *Florida Statutes* and its predecessor statute. [Appx. 81]. Under the management of the Debtor, Deville resisted the relief requested in the Records Action, though the State Court determined that Savannah was a 50% owner of Deville. [Appx. 179] (finding that Savannah owns 50% of Deville).

In furtherance of a pattern of concealment, delay, and obfuscation consistent with a scheme to defraud Savannah, the Debtor did not sufficiently comply with records requests in the context of the Records Action.[4] The Debtor's noncompliance confirmed legitimate suspicions by Savannah that its investment in Deville had been willfully dissipated by the Debtor; however, the Debtor's control over Deville, coupled with his unwillingness to release information to Savannah, made it difficult for Savannah to ascertain the exact condition of Deville – a circumstance which continues to this day.

[4] Consistent with his apparent determination to prevent Savannah from obtaining information that would validate and support its claims regarding the Debtor's mismanagement, fraud, and defalcation with respect to Deville, the Debtor also staunchly resisted Savannah's efforts to obtain discovery in the Nondischargeability Action, and succeeded in convincing the Bankruptcy Court to dispose of that action before any meaningful discovery had been accomplished.

### B. Initiation of the Bankruptcy Case and the Nondischargeability Action

On November 14, 2014, during the pendency of the Records Action, the Debtor filed the Bankruptcy Case. [Appx. 6]. On December 10, 2014, the Debtor filed his schedules and statement of financial affairs (collectively, the "Schedules"), wherein he scheduled Savannah as both a secured and unsecured creditor, [Appx., 12, 17]; however, Savannah did not receive notice of the Bankruptcy Case until service of the Schedules, which occurred after the initial 341 Meeting of Creditors.

In the 341 Meeting of Creditors held on February 11, 2015, the Debtor described the scheduled loan of Deville as "bogus," and indicated that there was no documentation to support it. Contrary to the Debtor's assertions, however, his intermittent withdrawal of over $1,000,000 from Deville from its formation to present is documented by his own handwriting, with "loan" noted on checks to the Debtor individually and scattered through Deville's bank account statements, which are in the Debtor's possession and control. [Appx. 80, 91-110].

On May 1, 2015, Savannah filed the Savannah Claim in the amount of $1,514,081. [Appx. 18-23]. The same day, Savannah filed an adversary complaint (the "Adversary Complaint") against the Debtor and Deville, thereby commencing the Nondischargeability Action. [Appx. 78]. Pursuant to the

Adversary Complaint, Savannah sought the determination of the Bankruptcy Court that the Savannah Claim was nondischargeable pursuant to §§ 523(a)(2), (a)(4), and (a)(6) of the Bankruptcy Code, as well as an accounting and dissolution of Deville. *Id.*

On May 20, 2015, the Debtor filed a "Motion to Dismiss and Strike" (the "Motion to Dismiss") [Appx. 111], asserting that Savannah lacked standing to maintain the Nondischargeability Action. Deville, also represented by the Debtor's counsel, filed a separate motion to dismiss Deville as a party defendant [Appx. 117]. On June 11, 2015, the Bankruptcy Court held a hearing on the foregoing motions (the First Dismissal Hearing"), at which the Bankruptcy Court dismissed Deville as a party, but continued the hearing as to the Debtor's Motion to Dismiss the Nondischargeability Action. During the First Dismissal Hearing, the Bankruptcy Court also deemed the Savannah Claim timely filed, and directed that any objection the Debtor might make to the Savannah Claim would track, or travel with, the adversary proceeding. [Appx. 125]. Shortly thereafter, on July 15, 2015, the Debtor filed his "Objection to Proof of Claim of Savannah Capital, LLC" (the "Claim Objection") [Appx. 24].

On August 18, 2015, the Bankruptcy Court held a continued hearing (the "Second Dismissal Hearing") on the Motion to Dismiss, at which the parties

addressed the Debtor's allegations regarding Savannah's standing. At the Second Dismissal Hearing, counsel for the Debtor strenuously argued that the allegations of the Adversary Complaint demonstrate that Deville – not Savannah – is a creditor of the Debtor, and that Savannah's proper remedy would have been to bring a derivative suit against the Debtor on behalf of Deville. [Appx. 59-66]. In response, counsel for Savannah argued that where a corporate officer causes defalcation or fraud by his corporation, the officer may be personally liable to shareholders, particularly in the context of a closely-held corporation with only two (2) shareholders, one of which is the person accused of the fraud. [Appx. 66-71].

Significantly, the Bankruptcy Court disposed of the critical threshold issue of standing by ruling in favor of Savannah and denying the Motion to Dismiss. [Appx. 71]. In framing the legal issue at hand, the Bankruptcy Court remarked:

> Can one shareholder of a privately-held fifty-fifty corporation who has his hands on the management of a company, manage that company in such a way as to directly prejudice his other shareholder? And I think that's -- I think that can happen.

[Appx. 72]. Upon issuing its ruling, the Bankruptcy Court further stated:

> I'm going to deny the motion to dismiss. It seems to me that in a closely-held corporation, unlike a corporation with lots of shareholders, that one shareholder who handles -- who has his hands on

> the control of the corporation, could directly injure the other shareholder by mismanaging the corporation. Now, whether that occurred here or not is another issue.

[Appx. 71]. Accordingly, on September 4, 2015, the Court entered an Order denying the Motion to Dismiss and directing the Debtor to answer the Adversary Complaint. [Appx. 126]. On September 25, 2015, the Debtor filed his "Answer and Affirmative Defenses" to the Complaint (the "Answer") [Appx. 128].

**C. Savannah's Continued Efforts in the Bankruptcy Case**

Meanwhile, Savannah remained actively engaged in the Bankruptcy Case in efforts to enrich the Debtor's bankruptcy estate and, by extension, its prospective recovery as a creditor of the estate. On February 11, 2016, the Trustee filed a motion to compromise controversy pertaining to the Trustee's UFTA Claims against the Debtor and his wife (the "Compromise Motion"), proposing to settle the UFTA Claims in consideration for the receipt by the estate of $25,000. [Appx. 29]. On March 10, 2016, the Bankruptcy Court entered an order approving the Trustee's proposed compromise of controversy (the "Compromise Order") [Appx. 35]; however, on March 11, 2016, Savannah filed an objection to the Compromise Motion (the "Compromise Objection"), indicating that an entity related to Savannah (the "Competing Bidder") was ready, willing, and able to pay at least $50,000 (the "Competing Bidder Offer") to

purchase the UFTA Claims, and that the claims should be put to auction, notwithstanding that neither the Court nor any of the parties had become aware of the interest of the Competing Bidder until after the Compromise Order was entered. [Appx. 37]. Furthermore, on or about March 14, 2016, Savannah filed a motion for reconsideration of the Compromise Order (the “Motion for Reconsideration”). [Appx. 41].

On March 24, 2016, the Bankruptcy Court held a hearing on the Compromise Motion, Compromise Objection, and the Motion for Reconsideration, and granted the relief sought by Savannah, ordering the Trustee to either seek approval of a new compromise based on the Competing Bidder Offer or move the Court to conduct an auction. [Appx. 49]. The Trustee thereupon filed his “Motion to Sell (at Auction) Property of the Estate” (the “Motion to Sell”) [Appx. 46].

On May 19, 2016, the Bankruptcy Court held a hearing on the Motion to Sell. [Appx. 53]. Yet again, counsel for the Debtor attempted to assert that Savannah lacked standing to maintain the Savannah Claim. However, the Bankruptcy Court again refused to countenance the Debtor’s argument regarding standing and instead conducted an auction of the UFTA Claims. Despite the Debtor’s previous insistence that the UFTA Claims were all but worthless, the

Debtor induced the Callen Trust, an entity friendly to the Debtor and also represented by the Debtor's counsel during the auction, to bid against the Competing Bidder, and the Callen Trust ultimately entered the winning bid to purchase the UFTA Claims for $480,000. [Appx. 54].

### D. Summary Judgment as to the Nondischargeability Action and the Debtor's Objection to the Savannah Claim

On May 17, 2016, the Debtor filed "Thomas Salvador Martino's Motion for Summary Judgment as to All Counts of the Complaint and as to his Objection to Savannah Capital's Proof of Claim for Lack of Standing" (the "Summary Judgment Motion") [Appx. 135], seeking summary judgment in his favor and against Savannah in the Nondischargeability Action, as well as summary judgment in his favor and against Savannah on the Claim Objection, on precisely the same grounds – i.e., that Savannah lacked standing – previously asserted in the Motion to Dismiss and on numerous other occasions, though the Debtor had never prevailed in any instance.

On June 9, 2016, the Bankruptcy Court held a hearing on the Summary Judgment Motion. [Appx. 144]. At the hearing, Savannah argued that the Bankruptcy Court had already disposed of the threshold issue of standing in Savannah's favor, citing to the Second Dismissal Hearing. [Appx. 156-57]. However, the Bankruptcy Court articulated that it "[certainly didn't] feel bound

by any decisions that [it] made at the dismissal stage," indicating a departure from its prior ruling that Savannah possessed standing to maintain the Nondischargeability Action. [Appx. 156]. The Debtor then proceeded to argue, *inter alia,* that the case of *In re Whittle,* 449 B.R. 427 (Bankr. M.D. Fla. 2011), was directly on point and compelled the relief sought in the Summary Judgment Motion. [Appx. 153]. The Bankruptcy Court was persuaded that *Whittle* controlled its determination on the issue of standing, stating:

> The question really here is whether conduct by a managing member in an LLC or a managing officer and director in a closely-held corporation, if they engage in conduct that damages the corporation.
>
> There are only three parties in the room – the two shareholders and the entity. And the cases that [Debtor's counsel] cited support the proposition that (a) you look to the four corners of the complaint and see what's alleged as the claims -- see what claims are alleged.
>
> Secondly, you analyze them as to whether the losses are direct to the Plaintiff or they're indirect to the Plaintiff through the losses to the corporation.
>
> And here, that's the case. And even though it seems like a harsh result to dismiss this action, the fact remains that no steps were taken to file a claim on behalf of Deville Corporation.
>
> And that's the point of law here that could go either way. Whether I were to say: Well, it's just like Deville Corporation, this is the party that could sue

> derivatively on behalf of Deville versus the cases that you've cited to me where other judges have taken the opposite approach. This is clearly an indirect loss. It's an indirect claim. It's damage to an entity in which the Plaintiff here was the 50 percent shareholder.
>
> And I think the tipping point here is no action was taken in State Court previously and no steps were taken here in this court to assert a derivative claim on behalf of the corporation. That is the entity. That's the relief that the law allows, is to sue Mr. Martino to have him put money back in the corporate coffers.

[Appx. 169-170]. Thus, the Bankruptcy Court, for the first time, agreed with the Debtor that Savannah lacked standing to maintain the Savannah Claim or the Nondischargeability Action and granted summary judgment in the Debtor's favor and against Savannah, notwithstanding that –

(i) the Bankruptcy Court had denied the Motion to Dismiss, which set forth precisely the same allegations regarding Savannah's lack of standing (a critical threshold issue determinative of Savannah's ability to proceed in its case), nearly a year earlier;

(ii) Savannah had proceeded as a creditor in the Bankruptcy Case for over a year at significant personal cost;

(iii) Savannah had proceeded as a plaintiff in the Nondischargeability Action for over a year at significant personal cost;

(iv) the Bankruptcy Court had routinely rejected or refused to lend any credence to the Debtor's repeated assertions, on numerous occasions over the course of more than a year, that Savannah lacked standing; and

(v) the Debtor, who remains in control of Deville to this day, has never filed a proof of claim on behalf of Deville.

Moreover, while recognizing that it was unclear whether the Debtor even possessed standing to object to the Savannah Claim, the Bankruptcy Court found that the Savannah Claim should be disallowed. [Appx. 170-71]. The Appeal and Second-Filed Appeal followed, and were consolidated by order of this Court. [Appx. 4].

## VII. SUMMARY OF THE ARGUMENT

The Bankruptcy Court's grant of summary judgment constituted an abuse of discretion because the Court had previously disposed of the threshold issue of standing in Savannah's favor, leaving Savannah with no reason to believe that it lacked standing or that it might have to pursue derivative standing to prosecute its case and maintain its claim as a creditor in the Bankruptcy Case. Furthermore, the Bankruptcy Court's reliance upon *In re Whittle*, 449 B.R. 427 (Bankr. M.D. Fla. 2011) to enter final summary judgment in favor of the Debtor was at least

partially misplaced. At most, consideration of the *Whittle* case should have led the Bankruptcy Court to dismiss the Nondischargeability Action without prejudice to Savannah's right to amend the Complaint.

Moreover, in light of the particular facts of the Nondischargeability Action and the Bankruptcy Case, Savannah asserts that it does, in fact, possess standing in its own right to maintain the Nondischargeability Action and its related claim against the Debtor's bankruptcy estate. While it is generally true that a shareholder seeking to recover misappropriated funds must bring a derivative action under applicable state law, there are exceptions to this rule, including when the circumstances show that the reasons for requiring a derivative suit do not apply. As Savannah argued before the Bankruptcy Court, it is manifestly clear that none of the reasons underpinning the requirement for a derivative suit are applicable in the context of the case at bar. As such, the Bankruptcy Court erred as a matter of law when it determined that Savannah lacked standing to maintain the Nondischargeability Action and the Savannah Claim.

Savannah's final assignment of error is that the Bankruptcy Court abused its discretion by permitting the Debtor to object to the Savannah Claim, because there had been no determination that there was a surplus of assets in the Debtor's bankruptcy estate, such as would confer standing upon the Debtor to object to the

claim of a creditor pursuant to Bankruptcy Code § 502(a) and relevant decisions thereunder. Ironically, while the Debtor vigorously asserted and the Bankruptcy Court ultimately agreed that Savannah lacked standing, the facts of the case clearly demonstrate that the Debtor lacked standing to object to the Savannah Claim in the first instance.

For all of the foregoing reasons, Savannah respectfully submits that the Bankruptcy Court erred in sustaining the Debtor's object to the Savannah Claim and entering final summary judgment in favor of the Debtor as to Savannah's Nondischargeability Claim.

## VIII. ARGUMENT

### A. LEGAL STANDARD PERTAINING TO THE ISSUES OF STANDING AND DIRECT VERSUS DERIVATIVE CAUSES OF ACTION

Standing is "the **threshold** question in every federal case." *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (emphasis added); *In re Whittle*, 449 B.R. 427, 429 (Bankr. M.D. Fla. 2011) (stating that standing is a "threshold" issue); *In re D'Anello*, 477 B.R. 13, 21 (Bankr. D. Mass. 2012) (discussing that standing is a threshold issue determining the power of the court to entertain a suit). The party seeking to invoke federal jurisdiction bears the burden of demonstrating standing to sue. *Mulhall v. UNITE HERE Local 355*, 618 F.3d 1279, 1286 (11th Cir. 2010).

The United States Supreme Court has explained that standing involves both "constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth*, 422 U.S. at 498. To establish Article III standing, the plaintiff must show that: "(1) he has suffered, or imminently will suffer, an injury-in-fact; (2) the injury is fairly traceable to the defendants' conduct; and (3) a favorable judgment is likely to redress the injury." *Mulhall*, 618 F.3d at 1286 (*citing Harrell v. The Florida Bar*, 608 F.3d 1241, 1253 (11th Cir. 2010)). As for prudential standing, "the doctrine requires (1) that the plaintiff's complaint fall within the 'zone of interests' protected by the statute or constitutional provision at issue; (2) that the complaint not require the court to pass on abstract questions or generalized grievances better addressed by the legislative branches; and (3) that the plaintiff assert his or her own legal rights and interests rather than the legal rights and interests of third parties." *Mulhall*, 618 F.3d at 1290; *see also In re D'Anello*, 477 B.R. 13, 22 (Bankr. D. Mass. 2012) (discussing that the doctrine of prudential standing requires the plaintiff to demonstrate that it is asserting its own claims, rather than the claims of another). The issue addressed by the question of prudential standing is essentially "whether the constitutional or statutory provision on which the [plaintiff's] claim rests

properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth*, 422 U.S. at 500.

In the case at bar, the issue of Savannah's standing, as framed by the parties and conceived of by the Bankruptcy Court, is properly an issue of prudential standing – i.e., whether Savannah asserted its own claims or the claims of Deville. On multiple occasions, the Debtor argued (and the Bankruptcy Court ultimately agreed) that Savannah's purported lack of standing was a result of the fact that Savannah had chosen to bring its claims in an individual, or direct, capacity in its own right, rather than derivatively on behalf of Deville. The determination as to whether a cause of action is direct or derivative is a matter of state law. *Hantz v. Belyew*, 194 Fed. Appx. 897, 900 (11th Cir. 2006). In Florida, this determination is made in accordance with the "gravamen" test, pursuant to which "a stockholder may bring a suit in his own right to redress an injury sustained directly by him, and which is separate and distinct from that sustained by other stockholders." *Id.* (*citing Citizens Nat. Bank of St. Petersburg v. Peters*, 175 So. 2d 54, 56 (Fla. 2d DCA 1965)). "If, however, the injury is '*primarily* against the corporation, or the stockholders generally, then the cause of action is in the corporation and the individual's right to bring it is derived from the corporation.'" *Hantz*, 194 Fed. Appx. at 900.

### B. THE BANKRUPTCY COURT ABUSED ITS DISCRETION BY FAILING TO APPLY THE PROPER LEGAL STANDARD OR TO FOLLOW PROPER PROCEDURES IN MAKING ITS DETERMINATION AS TO THE ISSUE OF SAVANNAH'S STANDING TO SUE

There can be little doubt that the threshold issue of Savannah's standing to sue was ripe for adjudication at the time the Bankruptcy Court first considered the Debtor's Motion to Dismiss. As such, it was incumbent upon the Bankruptcy Court to determine at that point in time, and assuming the truth of the allegations of the Complaint, whether Savannah had set forth a direct or derivative cause of action, *see Whittle*, 449 B.R. at 429 (addressing the threshold issue of standing at the dismissal stage), and indeed, the Bankruptcy Court did so. In passing up the Motion to Dismiss at the Second Dismissal Hearing, the Bankruptcy Court refused to dismiss the Nondischargeability Action based on the Debtor's allegations that Savannah lacked standing, stating:

> I'm going to deny the motion to dismiss. It seems to me that in a closely-held corporation, unlike a corporation with lots of shareholders, that one shareholder who handles -- who has his hands on the control of the corporation, could directly injure the other shareholder by mismanaging the corporation. Now, whether that occurred here or not is another issue.

[Appx. 71]. In so ruling, the Bankruptcy Court looked at the precise allegations of the Complaint and determined, assuming the truth of those allegations, that

Savannah possessed a cause of action **in its own right** against the Debtor. A year later, when the Bankruptcy Court passed upon the Debtor's Summary Judgment Motion, the Court looked at the same allegations of fact and applied the same legal standard, but suddenly agreed for the first time that Savannah lacked standing to assert its claims directly. [Appx. 169-170].

It was in this instance, first and foremost, that Savannah respectfully submits the Bankruptcy Court abused its discretion. "An abuse of discretion occurs if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous." *In re Red Carpet Corp. of Panama City Beach*, 902 F.2d 883, 890 (11th Cir. 1990) (emphasis added) (*citing In re Beverly Mfg. Corp.*, 841 F.2d 365, 369 (11th Cir. 1988)). Had the Bankruptcy Court determined at the dismissal stage – i.e., at the threshold, when the issue was initially ripe for adjudication – that Savannah's claims were derivative rather than direct in nature, it could have (and should have) permitted Savannah an opportunity to amend the Complaint to assert those claims in a derivate capacity on behalf of Deville. In fact, that was precisely the outcome in the case of *In re Whittle*, upon which the Debtor relied heavily both at the dismissal stage and the summary judgment

stage, and which the Bankruptcy Court apparently found conclusive as to the standing issue. [Appx. 173-74].

Admittedly, *Whittle* presented a scenario that was analogous to the facts of the instant case in many respects. In that case, the plaintiff was the owner of a 50% membership interest in an LLC, of which the debtor, Mr. Whittle, was the managing member. *In re Whittle*, 449 B.R. at 428. When Whittle filed his bankruptcy petition, the plaintiff commenced an adversary proceeding seeking a determination that Whittle's debt to the plaintiff was nondischargeable under § 523(a)(2)(A) and (a)(4) because Whittle had used funds of the LLC improperly to pay himself excessive compensation, reimburse himself for expenses, and for other personal, as opposed to company, uses. *Id.* More specifically, the plaintiff asserted that Whittle squandered at least $650,000 of the LLC's funds and then overtly concealed his wrongdoing by providing false accounting and operating reports to the plaintiffs. *Id.* Resolving the question of the plaintiff's standing to sue, the court in *Whittle* reasoned that the acts alleged in the plaintiff's complaint inured to the detriment of the LLC, rather than to the plaintiffs in their own right, and concluded that the "plaintiffs [were] not entitled to recover directly any damages that were inflicted on the LLC by Whittle's misuse of LLC property." *Id.* at 430.

Its factual similarity notwithstanding, *Whittle* is distinguishable from the instant case in one very crucial respect. In *Whittle*, the bankruptcy court was obliged, based on its application of the law to the facts alleged in the complaint, to grant the debtor-defendant's motion to dismiss (not his motion for summary judgment), and it did so **without prejudice**, permitting the adversary plaintiffs to amend their complaint. *Id.* A review of the proceedings in *Whittle* reveals that the plaintiffs did, in fact, amend their complaint, and the case was ultimately resolved at mediation thereafter. *See* M.D. Fla. Bankr. Case No. 6:10-ap-00327-KSJ, Dkt. 9, 16.

Had the Bankruptcy Court dealt with the issue in this case in a manner similar to that employed by the court in *Whittle*, it would have dismissed the case with leave to amend at the time it originally passed upon the standing issue in August of 2015. Instead, the Court applied the legal standard properly applicable to a motion to dismiss at the summary judgment stage, and instead of dismissing the case without prejudice, rendered a final judgment in the Debtor's favor almost a year after it had previously determined that Savannah possessed standing to maintain the Nondischargeability Action in its own right.

That the Bankruptcy Court's review was no different at the dismissal stage than it was at the summary judgment stage is reflected in the transcript of the Summary Judgment Hearing, wherein the Court stated:

> The question really here is whether conduct by a managing member in an LLC or a managing officer and director in a closely-held corporation, if they engage in conduct that damages the corporation.
>
> There are only three parties in the room – the two shareholders and the entity. **And the cases that [Debtor's counsel] cited support the proposition that (a) you look to the four corners of the complaint and see what's alleged as the claims -- see what claims are alleged.**
>
> **Secondly, you analyze them as to whether the losses are direct to the Plaintiff or they're indirect to the Plaintiff through the losses to the corporation.**
>
> And here, that's the case. And even though it seems like a harsh result to **dismiss this action**, the fact remains that no steps were taken to file a claim on behalf of Deville Corporation.

[Appx. 169-70] (emphasis added). Thus, the Bankruptcy Court never actually reached the merits of Savannah's claims under 11 U.S.C. § 523. In fact, the only material difference between the Bankruptcy Court's initial adjudication of the issue and its later determination was its application of the law regarding direct versus derivative claims to the very same facts that appeared on the face of the

Complaint from the outset of the case. The Bankruptcy Court's later reapplication of the law to identical facts, after having permitted Savannah to proceed in a direct capacity initially, constituted an abuse of discretion.

### C. CONTRARY TO THE DEBTOR'S ASSERTIONS, SAVANNAH HAD NO REASON TO SEEK DERIVATIVE STANDING AT SOME POINT PRIOR TO THE SUMMARY JUDGMENT STAGE OF THE LITIGATION

The Debtor has never argued that Savannah could not maintain the claims asserted in the Complaint in a derivative capacity. Quite to the contrary, the Debtor, through counsel, conceded at the Summary Judgment Hearing that Savannah would have standing to maintain claims on behalf of Deville:

> THE COURT: But you concede -- and it seems obvious -- that Deville would have standing –
>
> MS. VAUGHAN: That Deville would have standing if these claims existed, Your Honor.
>
> THE COURT: -- to allege –
>
> MS. VAUGHAN: But here's my problem, Your Honor. This issue has been raised over several months numerous times. There's steps that Savannah Capital could have taken to bring a derivative claim and they've chosen not to, for whatever reason. I don't know why. I have no comprehension of that. But they've chosen to go forward on this and –
>
> THE COURT: And the time has run.

> MS. VAUGHAN: And the time has run, Your Honor. And that raises an issue. I mean, my client has the right to know what claims are being prosecuted against him.

[Appx. 165-66]. Likewise, the Debtor argued that Savannah had ample opportunity to amend the Complaint to assert its claims in a derivative capacity or to otherwise seek derivative status, but had failed to do so. *Id.* The Bankruptcy Court was heavily persuaded by this argument, opining:

> And here, that's the case. And even though it seems like a harsh result to dismiss this action, **the fact remains that no steps were taken to file a claim on behalf of Deville Corporation.**
>
> …
>
> And I think **the tipping point here is no action was taken in State Court previously and no steps were taken here in this court to assert a derivative claim on behalf of the corporation.** That is the entity. That's the relief that the law allows, is to sue Mr. Martino to have him put money back in the corporate coffers.
>
> …
>
> And I think we need to, in the findings of fact, I think it's undisputed -- maybe it will be considered disputed. But the pre-bankruptcy State Court lawsuit, I don't know how long that lasted or when it was filed, but it doesn't appear to me -- Ms. Anthony, I think, has conceded that there was no action taken there. One of the two of you gave me that impression, **that there was no action taken**

> **there, to have a State Court anoint Savannah Capital as having standing on behalf of Deville.**
>
> **And that's also a factor here, that there's been a long time here where this could have been perhaps lined up, and has not been done.**
>
> So four corners of the complaint, the claims are direct as to Deville, derivative as to Savannah Capital. And under the case law that I have seen, that would mean that this particular Plaintiff does not have standing to make this claim, even though we've all acknowledged that it's the only party who could have done it, **but after all these months and all this time, has not**. **And that's where we are today.**

[Appx. 170, 174] (emphasis added).

What the Debtor and the Bankruptcy Court failed to appreciate, however, is that Savannah took no action to obtain derivative status or amend its suit to assert derivative claims **precisely because** of the fact that the Bankruptcy Court had denied the Debtor's Motion to Dismiss for lack of standing. Indeed, there was no reason for Savannah to seek to assert it claims derivatively when it had already prevailed in the first instance to assert them directly. Again, had the Bankruptcy Court agreed with the Debtor initially, at the dismissal stage, Savannah would have sought to amend its Complaint to assert claims on behalf of Deville – claims which, significantly, are virtually identical in substance

regardless of whether they were to be asserted by Savannah in its own right or by Savannah on behalf of Deville.

### D. THE BANKRUPTCY COURT ERRED IN DETERMINING THAT SAVANNAH LACKED STANDING TO SUE IN ITS OWN RIGHT

Notwithstanding that the Bankruptcy Court ultimately reached the contrary conclusion, Savannah submits that the Court correctly determined the issue of standing when it initially passed upon the Debtor's Motion to Dismiss. While it is generally true that a shareholder, like Savannah, seeking to recover misappropriated funds must assert its claims in a derivative action, there are exceptions to this rule. If the shareholder can show that its injury is separate and distinct from that wrought upon the corporation or that the wrongdoer owed him a special duty, then the shareholder may maintain a cause of action in its own right. *See Hantz*, 194 Fed. Appx. at 900; *see also In re Pervis*, 497 B.R. 612, 624 (Bankr. N.D. Ga. 2013). Furthermore, when the circumstances show that the reasons for the general rule requiring a derivative suit do not apply, shareholders may be allowed to proceed individually. *See In re Pervis*, 497 B.R. at 624-25; *In re Phillips*, 185 B.R. 121, 128 (Bankr. E.D.N.Y. 1995); *In re Beeber*, 239 B.R. 13, 24 (Bankr. E.D.N.Y. 1999); *Parks v. Multimedia Techs., Inc.*, 520 S.E.2d 517, 523 (Ga. Ct. App. 1999).

The reasons for requiring derivative suits are to prevent multiplicity of lawsuits by shareholders, protect corporate creditors by putting the proceeds of the recovery back in the corporation, protect the interests of all shareholders by increasing the value of their shares instead of allowing a recovery by one shareholder to prejudice the rights of others not a party to the suit, and adequately compensate the injured shareholder by increasing the value of his shares. *Pervis*, 497 B.R. at 625. In the case at bar, as in *Pervis*, none of the reasons for requiring the plaintiff to sue in a derivative capacity are present.

First, there is absolutely no risk of a multiplicity of lawsuits, as there are only two (2) shareholders of Deville, each of whom holds a 50% equity interest. Second, there are no corporate creditors to protect; while the Debtor is in bankruptcy, Deville is not, and there have been no findings of record, nor has the Debtor suggested, that there are any creditors of Deville that would be prejudiced by Savannah maintaining an action against the company in its own right. Third, the only shareholder that has been injured by the acts of the Debtor alleged in the Complaint is Savannah, so there is no danger that a recovery by Savannah would prejudice the rights of non-party shareholders (indeed, far from being prejudiced, the Debtor has actually been substantially enriched, to the tune of over $1 million, by virtue of his defalcation with respect to Deville). Finally, there is no readily

available market for the shares of a closely-held corporation like Deville, so forcing a derivative recovery would not adequately compensate Savannah by increasing the value of Deville's shares. As the United States Bankruptcy Court for the Eastern District of New York aptly summarized the issue:

> Where, as in this case, the matter concerns a closely held corporation in which all ownership is vested in the two parties to the lawsuit, there can be little doubt that any injury to the corporation caused by one fifty percent owner is in fact a direct injury to the other owner. Therefore, Plaintiff's injury is direct whether he sues directly as an individual or as a shareholder.

*Phillips*, 185 B.R. at 127; *see also Beeber*, 239 B.R. at 24 (quoting *Phillips* for the same proposition). On *de novo* review, this Court should likewise find that the facts and circumstances of the instant case are sufficient to endow Savannah with standing to sue directly as an individual or as a shareholder. *See Pittman v. Cole*, 267 F.3d 1269, 1282 (11th Cir. 2001) ("We review *de novo* whether a plaintiff has standing to bring suit in federal court.").

### E. THE BANKRUPTCY COURT ABUSED ITS DISCRETION BY SUSTAINING THE DEBTOR'S OBJECTION TO THE SAVANNAH CLAIM, BECAUSE THE DEBTOR LACKED STANDING, IN THE FIRST INSTANCE, TO ASSERT SUCH OBJECTION

While the instant Appeal turns in large part upon the issue of Savannah's standing to sue, the standing of the Debtor (or lack thereof) to object to the

Savannah Claim is also an important legal issue subject to *de novo* review. *See Caserta v. Tobin*, 175 B.R. 773, 774 (S.D. Fla. 1994). The issue of whether a Chapter 7 debtor possesses standing to object to the claims of the creditors of his bankruptcy estate is properly resolved by resort to two (2) provisions of the United States Bankruptcy Code. First, Bankruptcy Code § 502 provides, in relevant part,

> A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, **unless a party in interest**, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

11 U.S.C.A. § 502(a) (2016) (emphasis added). Second, the scheme of distribution of proceeds in a Chapter 7 liquidation is governed by Bankruptcy Code § 726, which provides that a Chapter 7 debtor may only receive a distribution from the estate after all unsecured claims are paid in full with interest. 11 U.S.C. § 726; *see also In re Stanley*, 114 B.R. 777, 778 (Bankr. M.D. Fla. 1990). By operation of these two Code section, the general rule is that a Chapter 7 debtor is not a "party in interest" for purposes of § 502(a), because he typically possesses no pecuniary interest in the distribution of assets from the bankruptcy estate, and thus lacks standing to object to the claims of the creditors of the bankruptcy estate. *See Stanley*, 114 B.R. at 778; *In re Costello*, 184 B.R. 166,

168 (Bankr. M.D. Fla. 1995); *In re I & F Corp.*, 219 B.R. 483, 484 (Bankr. S.D. Ohio 1998). By the same token, bankruptcy courts recognize an exception to the foregoing rule when it appears that there will be a surplus in the estate that may be distributed to the debtor if the contested claims are disallowed. *Stanley*, 114 B.R. at 778; *Costello*, 184 B.R. at 168; *I & F Corp.*, 219 B.R. at 484-85.

Savannah raised the issue of the Debtor's lack of standing to object to the Savannah Claim at the Summary Judgment Hearing. [Appx. 155]. However, while the Bankruptcy Court recognized the issue, it ultimately deemed the matter inconsequential, explaining:

> As to the standing, while it's a general rule that a debtor that's out of the money, where there's no surplus, has no standing to object to claims, I don't know whether there's going to be a surplus in this case or not. And it's a -- the conclusion to disallow the claim flows directly from the ruling in the adversary proceeding. And I see no benefit to making the Trustee, compelling the Trustee to take the papers from this proceeding and object to your claim. I'm going to disallow the claim as well.

Thus, without making any determination as to whether the debtor was a "party in interest" for purposes of Bankruptcy Code § 502, the Bankruptcy Court sustained the Debtor's objection to the Savannah Claim. [Appx. 170-71]. This was an abuse of the Bankruptcy Court's discretion.

On August 2, 2016, a hearing was held in the Bankruptcy Case on Savannah's motion to recognize an informal proof of claim. While the Debtor had never previously urged that he possessed standing to object to the Savannah Claim by virtue of a surplus in the estate, he advanced this argument through counsel at the hearing. However, when the Bankruptcy Court inquired after the matter with the Chapter 7 Trustee, the Trustee explained:

> MR. KASTEN: Your Honor, I'd like to just quickly respond to that. It actually is not a surplus case. With Mr. Fineman's claim, intact as it is, at $180,000, it's about a 30 or $40,000 deficit from a 100 percent payout. So there will not be any surplus now, and it's just not there yet, so –

Stated simply, the Bankruptcy Court erred by failing to determine whether the Debtor possessed standing to object to the Savannah Claim and nonetheless sustaining the Debtor's objection. *See Stanley*, 114 B.R. at 778 (overruling debtor's objection and allowing creditor's claim because estate was insolvent); *I & F Corp.*, 219 B.R. at 485 (overruling debtor's objections to proofs of claim without prejudice to right of Chapter 7 trustee to file her own objections if she deemed it appropriate); *Caserta*, 175 B.R. at 775 (affirming order of bankruptcy court holding that Chapter 7 debtor lacked standing to object to creditor's claim, where Chapter 7 trustee had been appointed and there was no surplus in the bankruptcy estate). For the foregoing reasons, this Court should reverse the

Bankruptcy Court's order sustaining the Debtor's objection to the Savannah Claim.

## IX. REQUEST FOR ORAL ARGUMENT

Pursuant to F.R.A.P. 34(a) and M.D. Fla. Local Rule 3.01(j), Savannah respectfully requests that the Court permit oral argument in this case. This case comports with the standards of F.R.A.P. 34(a)(2) in that it is not a frivolous appeal, the dispositive issues herein have not been authoritatively decided, and the decisional process would be significantly aided by oral argument. F.R.A.P. 32(a)(2); *see also In re Premier Const. Group, LLC*, 5:14-CV-175-OC-PRL, 2015 WL 3407857, at *1, n. 3 (M.D. Fla. May 27, 2015) (discussing the standard for allowing oral argument). Contrary to the Debtor's argument at the Summary Judgment Hearing, none of the authorities cited by the Debtor and relied upon by the Bankruptcy Court in granting summary judgment are dispositive of the issues raised in this appeal. Moreover, should the judgment stand, the Debtor will have succeeded in abusing the bankruptcy process to abscond with over a million dollars pilfered wantonly from Deville's corporate coffers, leaving Savannah bereft of any recourse. This Court should permit oral argument so as to promote careful consideration of the issues presented on appeal, particularly in light of the

potential for a final result that is diametrically inconsistent with the purpose of relief under the Bankruptcy Code.

## X. CONCLUSION

For all of the foregoing reasons, Savannah respectfully requests that this Court reverse the entry of final summary judgment in favor of the Debtor, reverse the order sustaining the Debtor's objection to the Savannah Claim, and remand the case with instructions that Savannah be permitted to proceed, whether directly, in a derivative capacity, or both, to an adjudication of the merits of its claim against the Debtor's estate, as well as its claims for the nondischargeability of the debt owed to Savannah by the Debtor.

Respectfully submitted,

**ANTHONY & PARTNERS, LLC**

/s/ Dominic A. Isgro
JOHN A. ANTHONY, ESQ.
Florida Bar Number: 0731013
janthony@anthonyandpartners.com
STEPHENIE BIERNACKI ANTHONY, ESQ.
Florida Bar Number: 0127299
santhony@anthonyandpartners.com
DOMINIC A. ISGRO, ESQ.
Florida Bar Number: 0113318
disgro@anthonyandpartners.com
201 N. Franklin Street, Suite 2800
Tampa, FL 33602
Telephone: (813) 273-5616/Fax: (813) 221-4113
*Attorneys for Savannah Capital, LLC*

## CERTIFICATE OF COMPLIANCE UNDER F.R.A.P. 32(a)(7)

The undersigned hereby certifies that the Appellant's Initial Brief complies with the type-volume limitation of F.R.A.P. 32(a)(7)(B). According to the word count utility of the word processor used to compose this brief, the Appellant's Initial Brief contains 9,203 words, excluding the items listed in F.R.A.P. 32(f).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished through the CM/ECF system on all registered CM/ECF recipients and counsel of record on this 20th day of January, 2017, as listed below:

D. Lee Pitisci, Esq.
Pitisci Dowell Markowitz
101 S. Moody Avenue
Tampa, Florida 33609
lpitisci@pdmmlaw.com
Counsel for Thomas Salvador Martino

Lori V. Vaughan, Esq.
Rhys P. Leonard, Esq.
Trenam Kemker
101 E. Kennedy Blvd., Suite 2700
Tampa, Florida 33602
lvaughan@trenam.com
Counsel for Thomas Salvador Martino

A. Christopher Kasten, II, Esq.
Bush Ross, P.A.
Post Office Box 3913
Tampa, Florida 33601
ckasten@bushross.com
Counsel for Chapter 7 Trustee

/s/ Dominic A. Isgro
**ATTORNEY**