**CASE NO. 8:16-CV-02105-VMC**

**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

SAVANNAH CAPITAL, LLC,

Appellant,

vs.

THOMAS SALVADOR MARTINO,

Appellee.

**ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA**

# APPENDIX TO APPELLANT'S INITIAL BRIEF

# INDEX TO APPENDIX


| ITEM | TAB | PAGE |
|---|---|---|
| Notice of Appeal | 1 | 1 |
| Order Granting Motion to Consolidate Appeals | 2 | 4 |
| Debtor's Chapter 7 Petition | 3 | 6 |
| Debtor's Bankruptcy Schedules (Schedules E & F) | 4 | 12 |
| Proof of Claim of Savannah Capital, LLC | 5 | 18 |
| Debtor's Objection to Savannah's Proof of Claim | 6 | 24 |
| Trustee's Motion to Compromise of Controversy | 7 | 29 |
| Order Approving Compromise of Controversy | 8 | 35 |
| Savannah's Objection to Trustee's Motion to Compromise of Controversy | 9 | 37 |
| Savannah's Motion for Reconsideration of Order Approving Compromise of Controversy | 10 | 41 |
| Trustee's Motion to Sell (at Auction) Property of the Estate | 11 | 46 |
| Order on Consideration of Compromise Pleadings | 12 | 49 |
| Order Confirming the Sale of Property of the Estate | 13 | 53 |
| Excerpt from Transcript of Proceedings (Hearing held August 18, 2015, pp. 1, 2, 28-44) | 14 | 57 |
| Order Sustaining Objection to Proof of Claim | 15 | 76 |
| Adversary Complaint Objecting to Dischargeability | 16 | 78 |

| | | |
|---|---|---|
| Exhibits to Adversary Complaint Objecting to Dischargeability | 17 | 90 |
| Motion to Dismiss and Strike Adversary Complaint | 18 | 111 |
| Motion to Dismiss Defendant Deville Corp. as a Party | 19 | 117 |
| Excerpt from Transcript of Proceedings (Hearing held June 11, 2015, pp. 1-3, 28) | 20 | 122 |
| Order Denying Motion to Dismiss and Strike Adversary Complaint | 21 | 126 |
| Debtor/Defendant's Answer and Affirmative Defenses | 22 | 128 |
| Debtor's Motion for Summary Judgment as to Adversary Complaint and Claim Objection | 23 | 135 |
| Transcript of Proceedings (Hearing held June 9, 2016) | 24 | 144 |
| Memorandum Opinion and Order Granting Defendant's Motion for Summary Judgment | 25 | 178 |
| Final Judgment | 26 | 187 |
| Certificate of Service of Appendix | - | 189 |

**IN THE UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

IN RE:

THOMAS SALVADOR MARTINO,

Debtor.
_________________________________/

Case No.: 8:14-bk-13452-KRM
Chapter 7

SAVANNAH CAPITAL, LLC,

Plaintiff,

v.

THOMAS SALVADOR MARTINO,

Defendant.
___________________________________/

Adv. Pro. No.: 8:15-ap-00418-KRM

## NOTICE OF APPEAL

NOTICE IS HEREBY GIVEN that Savannah Capital, LLC, by and through its undersigned counsel, and pursuant to 28 U.S.C. § 158(a) and other applicable law, appeals to the United States District Court for the Middle District of Florida from the (i) "Memorandum Opinion and Order Granting Defendant's Motion for Summary Judgment" [Doc. 72], entered in this adversary proceeding on July 13, 2016, a copy of which is attached hereto as Exhibit "A," and the (ii) "Final Judgment" [Doc. 73], entered in this adversary proceeding on July 14, 2016, a copy of which is attached hereto as Exhibit "B."

The name of each party to the order appealed from, together with the names, addresses, and telephone numbers of their attorneys, are as follows:

**Counsel for Savannah Capital, LLC**
John A. Anthony, Esq.
janthony@anthonyandpartners.com
Stephenie Biernacki Anthony, Esq.
santhony@anthonyandpartners.com
Dominic A. Isgro, Esq.
disgro@anthonyandpartners.com
ANTHONY & PARTNERS, LLC
201 North Franklin Street, Suite 2800
Tampa, Florida 33602
Telephone: (813) 273-5616
Telecopier: (813) 221-4113

**Counsel for Thomas Salvador Martino**
Lori V. Vaughan, Esq.
lvaughan@trenam.com
TRENAM, KEMKER, SCHARF, BARKIN,
FRYE, O'NEILL, & MULLIS, P.A.
Suite 2700, Bank of America Plaza
101 East Kennedy Boulevard
Tampa, Florida 33602
Telephone: (813) 223-7474
Telecopier: (813) 229-6553

and

D. Lee Pitisci, Esq.
lpitisci@pdmmlaw.com
PITISCI DOWELL & MARKOWITZ
101 South Moody Avenue
Tampa, Florida 33609
Telephone: (813) 228-9233
Telecopier: (813) 229-5979

Respectfully submitted,

/s/ Stephenie Biernacki Anthony
**JOHN A. ANTHONY, ESQ.**
Florida Bar Number: 0731013
janthony@anthonyandpartners.com
**STEPHENIE BIERNACKI ANTHONY, ESQ.**
Florida Bar Number: 0127299
santhony@anthonyandpartners.com
**DOMINIC A. ISGRO, ESQ.**
Florida Bar Number: 0113318
disgro@anthonyandpartners.com
Anthony & Partners, LLC
201 N. Franklin Street, Suite 2800
Tampa, Florida 33602
Telephone: 813/273-5616/Telecopier: 813/221-4113
Attorneys for Savannah Capital, LLC

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via electronic means and/or U.S. mail on the 18th day of July, 2016, to the following:

Lori V. Vaughan, Esq.
Trenam Kemker
101 E. Kennedy Boulevard
Suite 2700
Tampa, Florida 33602
lvaughan@trenam.com

D. Lee Pitisci, Esq.
Pitisci Dowell Markowitz
101 S. Moody Avenue
Tampa, Florida 33609
lpitisci@pdmmlaw.com

/s/ Stephenie Biernacki Anthony
**ATTORNEY**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN RE:
THOMAS SALVADOR MARTINO,

Debtor,
______________________________/

SAVANNAH CAPITAL, LLC,

Appellant,

v. | Case No. 8:16-cv-2105-T-33
Bankr. No. 8:14-bk-13452-KRM
Adversary 8:15-ap-418-KRM

THOMAS SALVADOR MARTINO,

Appellee.
______________________________/

**ORDER**

This cause comes before the Court pursuant to Appellee Thomas Salvador Martino’s Motion to Consolidate Appeals (Doc. # 2), filed on August 12, 2016. Appellant Savannah Capital, LLC filed its response on August 19, 2016, which indicates that Savannah Capital does not object to the Motion. (Doc. # 3). Upon due consideration, the Court determines this appeal, Case No. 16-cv-2105 (the “**Appeal**”), and the second-filed appeal, Case No. 16-cv-2151 (the “**Second-Filed Appeal**”), involve common questions of law and fact such that consolidation is appropriate pursuant to Federal Rule of

Civil Procedure 42(a)(2). By separate order, the Court will direct the Clerk of Court to administratively close the Second-Filed Appeal.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Appellee Thomas Salvador Martino's Motion to Consolidate Appeals (Doc. # 2) is **GRANTED.**

(2) The Clerk of Court is directed to **CONSOLIDATE** the Appeal and Second-Filed Appeal.

(3) The parties are directed to make all future filings in the Appeal. To the extent that the parties wish for the Court to consider any materials filed in the Second-Filed Appeal, the parties are directed to re-file any such materials in the Appeal.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 7th day of September, 2016.

Virginia M. Hernandez Covington

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

B1 (Official Form 1)(04/13)

# United States Bankruptcy Court
## Middle District of Florida

# Voluntary Petition

| Debtor | Joint Debtor |
|---|---|
| Name of Debtor (if individual, enter Last, First, Middle): **Martino, Thomas Salvador** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
| All Other Names used by the Debtor in the last 8 years (include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 8 years (include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN (if more than one, state all) **xxx-xx-6940** | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN (if more than one, state all) |
| Street Address of Debtor (No. and Street, City, and State): **114 East Davis Blvd. #3 Tampa, FL** ZIP Code **33606** | Street Address of Joint Debtor (No. and Street, City, and State): ZIP Code |
| County of Residence or of the Principal Place of Business: **Hillsborough** | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address): ZIP Code | Mailing Address of Joint Debtor (if different from street address): ZIP Code |

Location of Principal Assets of Business Debtor (if different from street address above):

**Type of Debtor**
(Form of Organization) (Check one box)

- [X] Individual (includes Joint Debtors) *See Exhibit D on page 2 of this form.*
- [ ] Corporation (includes LLC and LLP)
- [ ] Partnership
- [ ] Other (If debtor is not one of the above entities, check this box and state type of entity below.)

**Chapter 15 Debtors**

Country of debtor's center of main interests:

Each country in which a foreign proceeding by, regarding, or against debtor is pending:

**Nature of Business**
(Check one box)

- [ ] Health Care Business
- [ ] Single Asset Real Estate as defined in 11 U.S.C. § 101 (51B)
- [ ] Railroad
- [ ] Stockbroker
- [ ] Commodity Broker
- [ ] Clearing Bank
- [X] Other

**Tax-Exempt Entity**
(Check box, if applicable)

- [ ] Debtor is a tax-exempt organization under Title 26 of the United States Code (the Internal Revenue Code).

**Chapter of Bankruptcy Code Under Which the Petition is Filed** (Check one box)

- [X] Chapter 7
- [ ] Chapter 9
- [ ] Chapter 11
- [ ] Chapter 12
- [ ] Chapter 13
- [ ] Chapter 15 Petition for Recognition of a Foreign Main Proceeding
- [ ] Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding

**Nature of Debts**
(Check one box)

- [ ] Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."
- [X] Debts are primarily business debts.

**Filing Fee** (Check one box)

- [X] Full Filing Fee attached
- [ ] Filing Fee to be paid in installments (applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.
- [ ] Filing Fee waiver requested (applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B.

**Chapter 11 Debtors**

Check one box:

- [ ] Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).
- [ ] Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).

Check if:

- [ ] Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,490,925 *(amount subject to adjustment on 4/01/16 and every three years thereafter).*

Check all applicable boxes:

- [ ] A plan is being filed with this petition.
- [ ] Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

**Statistical/Administrative Information**

- [ ] Debtor estimates that funds will be available for distribution to unsecured creditors.
- [X] Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors.

THIS SPACE IS FOR COURT USE ONLY

Estimated Number of Creditors

| [X] | [ ] | [ ] | [ ] | [ ] | [ ] | [ ] | [ ] | [ ] | [ ] |
|---|---|---|---|---|---|---|---|---|---|
| 1-49 | 50-99 | 100-199 | 200-999 | 1,000-5,000 | 5,001-10,000 | 10,001-25,000 | 25,001-50,000 | 50,001-100,000 | OVER 100,000 |

Estimated Assets

| [ ] | [ ] | [X] | [ ] | [ ] | [ ] | [ ] | [ ] | [ ] | [ ] |
|---|---|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |

Estimated Liabilities

| [ ] | [ ] | [ ] | [ ] | [X] | [ ] | [ ] | [ ] | [ ] | [ ] |
|---|---|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |

B1 (Official Form 1)(04/13) Page 2

| **Voluntary Petition**<br>*(This page must be completed and filed in every case)* | Name of Debtor(s):<br>**Martino, Thomas Salvador** | |
|---|---|---|
| **All Prior Bankruptcy Cases Filed Within Last 8 Years** (If more than two, attach additional sheet) | | |
| Location<br>Where Filed: **- None -** | Case Number: | Date Filed: |
| Location<br>Where Filed: | Case Number: | Date Filed: |
| **Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor** (If more than one, attach additional sheet) | | |
| Name of Debtor:<br>**- None -** | Case Number: | Date Filed: |
| District: | Relationship: | Judge: |

**Exhibit A**

(To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.)

☐ Exhibit A is attached and made a part of this petition.

**Exhibit B**

(To be completed if debtor is an individual whose debts are primarily consumer debts.)

I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I delivered to the debtor the notice required by 11 U.S.C. §342(b).

**X** ______________________________

Signature of Attorney for Debtor(s) (Date)

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐ Yes, and Exhibit C is attached and made a part of this petition.

■ No.

**Exhibit D**

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

■ Exhibit D completed and signed by the debtor is attached and made a part of this petition.

If this is a joint petition:

☐ Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition.

**Information Regarding the Debtor - Venue**

(Check any applicable box)

■ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐ Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

**Certification by a Debtor Who Resides as a Tenant of Residential Property**

(Check all applicable boxes)

☐ Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

______________________________

(Name of landlord that obtained judgment)

______________________________

(Address of landlord)

☐ Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐ Debtor has included with this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

☐ Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(l)).

# Voluntary Petition

*(This page must be completed and filed in every case)*

Name of Debtor(s):
**Martino, Thomas Salvador**

## Signatures

### Signature(s) of Debtor(s) (Individual/Joint)

I declare under penalty of perjury that the information provided in this petition is true and correct.
[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.
[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. §342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X **/s/ Thomas Salvador Martino**
Signature of Debtor **Thomas Salvador Martino**

X ______________________________
Signature of Joint Debtor

______________________________
Telephone Number (If not represented by attorney)

**November 14, 2014**
Date

### Signature of Attorney*

X **/s/ David W. Steen**
Signature of Attorney for Debtor(s)

**David W. Steen 221546**
Printed Name of Attorney for Debtor(s)

**David W. Steen P.A.**
Firm Name

**602 S Bouelvard**
**Tampa, FL 33606**

Address

**Email: dwsteen@dsteenpa.com**
**813-251-3000 Fax: 813-251-3100**
Telephone Number

**November 14, 2014**
Date

*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect.

### Signature of Debtor (Corporation/Partnership)

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X ______________________________
Signature of Authorized Individual

______________________________
Printed Name of Authorized Individual

______________________________
Title of Authorized Individual

______________________________
Date

### Signature of a Foreign Representative

I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.

(Check only one box.)

☐ I request relief in accordance with chapter 15 of title 11. United States Code. Certified copies of the documents required by 11 U.S.C. §1515 are attached.

☐ Pursuant to 11 U.S.C. §1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.

X ______________________________
Signature of Foreign Representative

______________________________
Printed Name of Foreign Representative

______________________________
Date

### Signature of Non-Attorney Bankruptcy Petition Preparer

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached.

______________________________
Printed Name and title, if any, of Bankruptcy Petition Preparer

______________________________
Social-Security number (If the bankrutpcy petition preparer is not an individual, state the Social Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.)(Required by 11 U.S.C. § 110.)

______________________________
Address

X ______________________________

______________________________
Date

Signature of bankruptcy petition preparer or officer, principal, responsible person,or partner whose Social Security number is provided above.

Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual:

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. §110; 18 U.S.C. §156.*

B 1D (Official Form 1, Exhibit D) (12/09)

# United States Bankruptcy Court
## Middle District of Florida

In re **Thomas Salvador Martino** Debtor(s) Case No. ______ Chapter **7**

## EXHIBIT D - INDIVIDUAL DEBTOR'S STATEMENT OF COMPLIANCE WITH CREDIT COUNSELING REQUIREMENT

**Warning: You must be able to check truthfully one of the five statements regarding credit counseling listed below. If you cannot do so, you are not eligible to file a bankruptcy case, and the court can dismiss any case you do file. If that happens, you will lose whatever filing fee you paid, and your creditors will be able to resume collection activities against you. If your case is dismissed and you file another bankruptcy case later, you may be required to pay a second filing fee and you may have to take extra steps to stop creditors' collection activities.**

*Every individual debtor must file this Exhibit D. If a joint petition is filed, each spouse must complete and file a separate Exhibit D. Check one of the five statements below and attach any documents as directed.*

☐ 1. Within the 180 days **before the filing of my bankruptcy case**, I received a briefing from a credit counseling agency approved by the United States trustee or bankruptcy administrator that outlined the opportunities for available credit counseling and assisted me in performing a related budget analysis, and I have a certificate from the agency describing the services provided to me. *Attach a copy of the certificate and a copy of any debt repayment plan developed through the agency.*

■ 2. Within the 180 days **before the filing of my bankruptcy case**, I received a briefing from a credit counseling agency approved by the United States trustee or bankruptcy administrator that outlined the opportunities for available credit counseling and assisted me in performing a related budget analysis, but I do not have a certificate from the agency describing the services provided to me. *You must file a copy of a certificate from the agency describing the services provided to you and a copy of any debt repayment plan developed through the agency no later than 14 days after your bankruptcy case is filed.*

☐ 3. I certify that I requested credit counseling services from an approved agency but was unable to obtain the services during the seven days from the time I made my request, and the following exigent circumstances merit a temporary waiver of the credit counseling requirement so I can file my bankruptcy case now. *[Summarize exigent circumstances here.]* ____

**If your certification is satisfactory to the court, you must still obtain the credit counseling briefing within the first 30 days after you file your bankruptcy petition and promptly file a certificate from the agency that provided the counseling, together with a copy of any debt management plan developed through the agency. Failure to fulfill these requirements may result in dismissal of your case. Any extension of the 30-day deadline can be granted only for cause and is limited to a maximum of 15 days. Your case may also be dismissed if the court is not satisfied with your reasons for filing your bankruptcy case without first receiving a credit counseling briefing.**

☐ 4. I am not required to receive a credit counseling briefing because of: *[Check the applicable statement.] [Must be accompanied by a motion for determination by the court.]*

☐ Incapacity. (Defined in 11 U.S.C. § 109(h)(4) as impaired by reason of mental illness or mental deficiency so as to be incapable of realizing and making rational decisions with respect to financial responsibilities.);

☐ Disability. (Defined in 11 U.S.C. § 109(h)(4) as physically impaired to the extent of being unable, after reasonable effort, to participate in a credit counseling briefing in person, by telephone, or through the Internet.);

☐ Active military duty in a military combat zone.

☐ 5. The United States trustee or bankruptcy administrator has determined that the credit counseling requirement of 11 U.S.C. § 109(h) does not apply in this district.

**I certify under penalty of perjury that the information provided above is true and correct.**

Signature of Debtor: **/s/ Thomas Salvador Martino**
**Thomas Salvador Martino**

Date: **November 14, 2014**

Software Copyright (c) 1996-2014 Best Case, LLC - www.bestcase.com Best Case Bankruptcy

Thomas Salvador Martino
114 East Davis Blvd. #3
Tampa, FL 33606

David W. Steen
David W. Steen P.A.
602 S Bouelvard
Tampa, FL 33606

Bank of America
PO Box 22021
Greensboro, NC 27420-2021

Branch Banking and Trust
200 West Second St.
Winston Salem, NC 27101

Branch Banking and Trust
200 West Second St
Winston Salem, NC 27101

Bright House Networks
One Galleria Tower
13355 Noel Rd S.
Dallas, TX 75240

Deville Corp
2018 East 7th Ave
Tampa, FL 33605

Gold Standard Properties LLC
2018 East 7th Ave
Tampa, FL 33605

Heritage Bank of Florida
fdic
550 17th Street NW
Washington, DC 20429

JH Portfolio Debt Equities
c/o Credit Control, LLC
5757 Phantom Dr.
Suite 330
Hazelwood, MO 63042

Medmarc Casualty Ins Corp.
PO Box 10809
Chantilly, VA 20153

Mercantile Bank
P.O. Box 100201
Columbia, SC 29202-3201

Mercantile Bank
PO Box 100201
Columbia, SC 29202

Old Dominion Ins. Co.
4601 Touchstone Rd
Suite 3300
Jacksonville, FL 32246

Platinum Bank
802 W. Lumsden Rd.
Brandon, FL 33511

Portfolio Asset Group
c/o
Mercantile Adjustment Bureau
35A Rust Lane
Boerne, TX 78006-8202

Pushpin Holdings, LLC
1 Penn Plaza
Box 6255
New York, NY 10119

S.A. Aquisitions
c/o A. Christopher Kasten II
Bush Ross, PA
PO Box 3913
Tampa, FL 33601

San Francisco Dist. Center
Centerville Rd
Suite 400
Wilmington, DE 19808

Savannah Trust
Edgar L.T. Gay, Trustee
136 Habersham Street
Savannah, GA 31401

Wells Fargo Financial Ca
PO Box 14517
Des Moines, IA 50306

Wright Family Trust
2018 E. 7th Ave
Tampa, FL 33605

Wright Martino Partnersh
118 Martinique St.
Tampa, FL 33606

B6D (Official Form 6D) (12/07)

In re **Thomas Salvador Martino**, Debtor

Case No. **8:14-bk-13452**

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | Husband, Wife, Joint, or Community (H W J C) | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No. **xxxxx551R**<br>**Platinum Bank**<br>**802 W. Lumsden Rd.**<br>**Brandon, FL 33511** | **X** | **-** | **Secured by stock of Law Offices of Thomas S Martino PA**<br><br>**2010 Buick 4D Lacross**<br>**Vin No. 1G4GC5EG1AF206916**<br>Value $ **10,000.00** | | | | **53,000.00** | **43,000.00** |
| Account No.<br>**Platinum Bank**<br>**802 W. Lumsden Rd.**<br>**Brandon, FL 33511** | **X** | **-** | **Stock of Law Offices of Thomas S Martino PA & interest in Arrawana LLC**<br>Value $ **343,000.00** | | | | **342,000.00** | **0.00** |
| Account No.<br>**Savannah Capital**<br>**618 Broughton Street**<br>**Savannah, GA 31401** | | **-** | **Mortgage on Homestead**<br><br>**Homestead Property Located at 114 East Davis Blvd. #3, Tampa, FL 33605**<br>Value $ **450,000.00** | | | | **399,546.84** | **0.00** |
| Account No. | | | Value $ | | | | | |
| **0** continuation sheets attached | | | Subtotal (Total of this page) | | | | **794,546.84** | **43,000.00** |
| | | | Total (Report on Summary of Schedules) | | | | **794,546.84** | **43,000.00** |

APPENDIX PAGE 12

Software Copyright (c) 1996-2013 - Best Case, LLC - www.bestcase.com

Best Case Bankruptcy

B6F (Official Form 6F) (12/07)

In re **Thomas Salvador Martino**, Debtor

Case No. **8:14-bk-13452**

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | Husband, Wife, Joint, or Community (H W J C) | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. **xxxxxxxxxxx9126**<br>**Bank of America**<br>**PO Box 22021**<br>**Greensboro, NC 27420-2021** | | - | **Credit Card** | | | | **11,718.76** |
| Account No.<br>**Branch Banking and Trust**<br>**200 West Second St.**<br>**Winston Salem, NC 27101** | | - | **March 29, 2011**<br>**Judgment** | | | | **1,255,656.90** |
| Account No.<br>**Branch Banking and Trust**<br>**200 West Second St**<br>**Winston Salem, NC 27101** | | - | **July 26, 2010**<br>**Judgment** | | | | **176,133.47** |
| Account No.<br>**Bright House Networks**<br>**One Galleria Tower**<br>**13355 Noel Rd S.**<br>**Dallas, TX 75240** | | - | **March, 2009** | | | | **807.00** |

**4** continuation sheets attached

Subtotal (Total of this page) **1,444,316.13**

APPENDIX PAGE 13

B6F (Official Form 6F) (12/07) - Cont.

In re **Thomas Salvador Martino**, Debtor    Case No. **8:14-bk-13452**

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | Husband, Wife, Joint, or Community (H W J C) | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No.<br>**Callen Trust**<br>**P.O. Box 8747**<br>**Savannah, GA 31412** | | - | **Claims for monies owed and mismanagement** | X | X | X | **Unknown** |
| Account No.<br>**Capital One**<br>**PO Box 85147**<br>**Richmond, VA 23276** | | - | | | | | **40.00** |
| Account No.<br>**Deville Corp**<br>**2018 East 7th Ave**<br>**Tampa, FL 33605** | | - | **Loan** | | | X | **1,028,162.00** |
| Account No.<br>**Gold Standard Properties LLC**<br>**2018 East 7th Ave**<br>**Tampa, FL 33605** | | - | **Advances** | | | | **163,040.61** |
| Account No. **xxxx7460**<br>**Heritage Bank of Florida**<br>**fdic**<br>**550 17th Street NW**<br>**Washington, DC 20429** | | - | **August 14, 2012**<br>**Loan** | | | | **147,744.92** |

Sheet no. 1 of 4 sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal (Total of this page) **1,338,987.53**



Software Copyright (c) 1996-2013 - Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

B6F (Official Form 6F) (12/07) - Cont.

In re **Thomas Salvador Martino**, Debtor    Case No. **8:14-bk-13452**

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | Husband, Wife, Joint, or Community (H W J C) | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. **xxx4739**<br>**JH Portfolio Debt Equities**<br>**c/o Credit Control, LLC**<br>**5757 Phantom Dr.**<br>**Suite 330**<br>**Hazelwood, MO 63042** | | **-** | | | | | **11,908.43** |
| Account No.<br>**Les Fineman**<br>**Pensco Trust Company**<br>**fbo Leslie Fineman IRA**<br>**23420 Mirabella Circle South**<br>**Boca Raton, FL 33433** | | **-** | **Promissory Notes** | | | | **Unknown** |
| Account No. **xxxxxxxx5758**<br>**Medmarc Casualty Ins Co.**<br>**PO Box 10809**<br>**Chantilly, VA 20153** | | **-** | **Deductible Owed** | | | | **10,000.00** |
| Account No. **xxxxxx7282**<br>**Mercantile Bank**<br>**P.O. Box 100201**<br>**Columbia, SC 29202-3201** | | **-** | **Loan** | | | | **13,142.60** |
| Account No. **xxxxx4782**<br>**Mercantile Bank**<br>**PO Box 100201**<br>**Columbia, SC 29202** | | **-** | **Note** | | | | **18,229.59** |

Sheet no. 2 of 4 sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal (Total of this page) **53,280.62**



Software Copyright (c) 1996-2013 - Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

B6F (Official Form 6F) (12/07) - Cont.

In re **Thomas Salvador Martino**, Debtor

Case No. **8:14-bk-13452**

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | Husband, Wife, Joint, or Community (H W J C) | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No.<br>**Old Dominion Ins. Co.<br>4601 Touchstone Rd<br>Suite 3300<br>Jacksonville, FL 32246** | | - | **Personal Guarantee** | X | | | **50,000.00** |
| Account No.<br>**Platinum Bank<br>802 W. Lumsden Rd.<br>Brandon, FL 33511** | | - | **Personal Guaranty of Laon No. 1-949551R** | | | | **53,000.00** |
| Account No. **xxxx-xxxx-xxxx-4701**<br>**Portfolio Asset Group<br>c/o<br>Mercantile Adjustment Bureau<br>35A Rust Lane<br>Boerne, TX 78006-8202** | | - | **Credit Card** | | | | **11,908.43** |
| Account No.<br>**Pushpin Holdings, LLC<br>1 Penn Plaza<br>Box 6255<br>New York, NY 10119** | | - | **Equipment Lease** | | | | **1,848.09** |
| Account No.<br>**S.A. Aquisitions<br>c/o A. Christopher Kasten II<br>Bush Ross, PA<br>PO Box 3913<br>Tampa, FL 33601** | | - | **Judgment** | | | | **211,489.83** |

Sheet no. **3** of **4** sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal (Total of this page) **328,246.35**

Software Copyright (c) 1996-2013 - Best Case, LLC - www.bestcase.com



Best Case Bankruptcy

B6F (Official Form 6F) (12/07) - Cont.

In re **Thomas Salvador Martino**, Debtor    Case No. **8:14-bk-13452**

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | Husband, Wife, Joint, or Community (H W J C) | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No.<br>**San Francisco Dist. Center**<br>**Centerville Rd**<br>**Suite 400**<br>**Wilmington, DE 19808** | | - | **Possible Claim** | X | X | X | **Unknown** |
| Account No.<br>**Savannah Capital, LLC**<br>**P.O. Box 8747**<br>**Savannah, GA 31412** | | - | **Claims for monies owed and mismanagement** | X | X | X | **Unknown** |
| Account No.<br>**Wells Fargo Financial Cards**<br>**PO Box 14517**<br>**Des Moines, IA 50306** | | - | **Credit Card** | | | | **11,908.00** |
| Account No.<br>**Wright Family Trust**<br>**2018 E. 7th Ave**<br>**Tampa, FL 33605** | | - | **Notes/Advances** | | | X | **350,000.00** |
| Account No.<br>**Wright Martino Partnership**<br>**118 Martinique St.**<br>**Tampa, FL 33606** | | - | **Advances/Notes** | | | | **350,000.00** |

Sheet no. **4** of **4** sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal (Total of this page): **711,908.00**

Total (Report on Summary of Schedules): **3,876,738.63**

APPENDIX PAGE 17

Software Copyright (c) 1996-2013 - Best Case, LLC - www.bestcase.com Best Case Bankruptcy

B10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT Middle District of Florida | | PROOF OF CLAIM |
|---|---|---|
| Name of Debtor: Thomas Salvador Martino | Case Number: 8:14-bk-13452 | |
| NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.* | | |
| Name of Creditor (the person or other entity to whom the debtor owes money or property): Savannah Capital, LLC | | COURT USE ONLY |
| Name and address where notices should be sent: John A. Anthony, Esq./Allison C. Doucette, Esq. Anthony & Partners, LLC, 201 N. Franklin Street, Suite 2800 Tampa, Florida 33602<br>Telephone number: (813) 273-5616 email: janthony@anthonyandpartners.com | | ❒ Check this box if this claim amends a previously filed claim.<br>**Court Claim Number:**______ (*If known*)<br>Filed on:______ |
| Name and address where payment should be sent (if different from above):<br>Telephone number: email: | | ❒ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars. |

**1. Amount of Claim as of Date Case Filed:** $ 1,514,081.00 or greater, see POC attachment.

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

❒ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Monies Owed, Mismanagement
(See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor: | 3a. Debtor may have scheduled account as: | 3b. Uniform Claim Identifier (optional): |
|---|---|---|
| ______ | ______ (See instruction #3a) | ______ (See instruction #3b) |

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ❒ Real Estate ❒ Motor Vehicle ❒ Other
**Describe:**

**Value of Property:** $______

**Annual Interest Rate**______% ❒ Fixed or ❒ Variable
**(when case was filed)**

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:**
$______

**Basis for perfection:** ______

**Amount of Secured Claim:** $______

**Amount Unsecured:** $______

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

❒ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

❒ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

❒ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

❒ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

❒ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

❒ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

**Amount entitled to priority:**
$______

**Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "**redacted**".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction #8)

Check the appropriate box.

☐ I am the creditor. ☑ I am the creditor's authorized agent. ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.) ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: John A. Anthony
Title: Attorney
Company: Anthony & Partners, LLC
Address and telephone number (if different from notice address above):

/s/ John A. Anthony 05/01/2015
(Signature) (Date)

Telephone number: email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

**In re Thomas Salvador Martino**
**Chapter 7 Case No.: 8:14-bk-13452**
**Attachment to Savannah Capital, LLC's Proof of Claim**

As of November 14, 2014, the claim of Savannah Capital, LLC ("Savannah") was in the total amount of at least $1,514,081 (the "Claim").

**Note 1: Basis for Claim:**

The Claim is based upon the conduct of Thomas Salvador Martino (the "Debtor") acting as president of DeVille Corp. ("DeVille"). The Debtor, jointly with his spouse, and Savannah are each fifty percent (50%) shareholders of DeVille. The Debtor was formerly a relative by marriage of the equity interest holders of Savannah (the "Savannah Principals"). While a member of family of the Savannah Principals, the Debtor represented to the Savannah Principals that he was skilled and knowledgeable not only in law but in business administration and real estate management.

Savannah is owned by sixteen (16) children and stepchildren of Robinson Callen, one of whom is Pam Martino, the spouse of the Debtor (together, the "Callen Group"). The management of Savannah has been operated by Mr. Callen as managing member since 2012, with proper attention to the best interests of Savannah as a going concern. Given the family-related aspects of this project, this is not always a cut and dried objective. Upon information and belief, in connection with the formation of DeVille, the Callen Group and the Debtor agreed that the Callen Group, through a corporate entity, would own half of DeVille, and the Debtor and his wife, Pamela Martino, the then stepdaughter of Robinson Callen, would own the other half. However, it was also agreed that the Debtor would have ongoing responsibility for the management and control of DeVille by virtue of his superior business and legal skills, not only as a trusted lawyer but as a relative by marriage as well.

Significantly, at no point during the vernal stage of the parties' relationship did the Debtor disclose the existence of financial difficulty or an intent to utilize DeVille as his own personal source of investment or personal fund. Instead, the Debtor knowingly accepted all of the responsibilities and duties conferred upon him by the Savannah Principals. Upon effectively taking control of DeVille, the Debtor manipulated the business and financial activities of DeVille for his own personal lucre at the expense of Savannah and the former family members, who had trusted him.

While in de facto control of DeVille, the Debtor engaged in conduct that was improper (the "Actionable Misconduct"), that included the following:

a. funding a loan to himself for $1,028,162, through sporadic checks written out of the DeVille bank account by Martino to himself and related companies (the "Loan"), representative copies of which are attached hereto as Exhibit "A";
b. failing to account as requested in connection with the business and financial operations of DeVille;
c. permitting secured loans owed by DeVille to go into default in such a manner that valuable property located at 128-130 Second Avenue North, Nashville, Tennessee (the "Second Avenue Property") was lost at foreclosure thus diminishing the net worth of DeVille; and
d. failing to account to Savannah or DeVille for in the inappropriate actions

and lost opportunities resulting from the apparent bankruptcy of DeVille.

Attached hereto as Exhibit "B" is the warranty deed relating to the Second Avenue Property that the Debtor permitted to be foreclosed by secured creditors. These actions not only depleted the equity in DeVille by at least $2,000,000, but also enabled an entity related to the Debtor and his spouse to acquire the loan on the Second Avenue Property directly from the lender just prior to foreclosure for substantially less than fair value of the Second Avenue Property, and resell it for personal gain.

Notwithstanding efforts of the Debtor to frustrate the flow of information from DeVille to Savannah, Savannah was able to determine that there was no "loan" in any traditional sense by DeVille to Martino. There are no loan documents that have ever been produced, and the relevant records in Savannah's possession instead reflect use by the Debtor of Savannah as a personal source of funds for himself and his law firm. The Savannah Principals, individually and on behalf of Savannah, reposed unique trust and confidence in the Debtor in connection with all of his managerial responsibilities involving DeVille by virtue of his status and experience as a member of The Florida Bar. This was reflected in the degree of control he had over the business of DeVille. However, it became apparent that the Debtor had engaged in wrongful conduct toward Savannah regarding its investment in DeVille.

On August 27, 2014, Savannah initiated an action (the "Records Action") against DeVille in the Thirteenth Judicial Circuit in and for Hillsborough County, Florida (the "State Court"), styled Savannah Capital, LLC, v. DeVille Corp., Case No. 2014-CA-08669 (a) seeking determination that Savannah possesses a fifty percent (50%) equity interest in DeVille, (b) seeking access to records under Florida Statutes § 605.0410 and its predecessor statute. A copy of the complaint initiating the Records Action is attached hereto as Exhibit "C." Under the management of the Debtor, DeVille resisted the relief requested in the Records Action. In furtherance of a pattern of concealment, delay, and obfuscation consistent with a pattern of defrauding Savannah, the Debtor did not sufficiently comply with records requests in the context of the Records Action. This confirms legitimate suspicions by Savannah that its investment in DeVille has been and is being willfully dissipated by the Debtor; however, this pattern has made it difficult to know the exact circumstances of DeVille at present.

On November 14, 2014, the Debtor initiated this "Liquidation" by filing his voluntary petition for protection from creditors under Chapter 7 of the Bankruptcy Code. Although the scope and extent of the automatic stay imposed under Bankruptcy Code § 362(a) maybe perceived differently between Savannah and the Debtor, the pendency of the Liquidation may provide a more rapid alternative for Savannah to adjudicate some of the facts, issues, and controversies relating to DeVille. However, the Debtor's effort to escape liability to DeVille, the Savannah Principals, and Savannah in the context of this Liquidation is a further breach of his duties to DeVille and Savannah. On December 10, 2014, the Debtor filed his schedules and statement of financial affairs (collectively, the "Schedules") [Doc. 9]. The Debtor scheduled Savannah as both a secured and unsecured creditor on the Schedules, however, Savannah did not receive notice of the Debtor's Liquidation until service of the Schedules, after the initial 341 Meeting of Creditors.

In the 341 Meeting of Creditors held on February 11, 2015, the Debtor described the scheduled loan of DeVille as "bogus," and indicated that there was no documentation to support it. Contrary to the Debtor's assertions, his withdraw of over $1,000,000 from DeVille from its

formation to present is documented by his own handwriting, with "loan" noted on checks to the Debtor individually and scattered through DeVille's bank account statements, which are in the Debtor's possession and control. In addition, the Debtor signed tax returns on behalf of DeVille that included the Debtor's loan as an asset of DeVille in accordance with standard accounting principles. A copy of DeVille's 2006 tax return is attached hereto as Exhibit "D."

The accounting of the Loan is further evidenced by accounting records recently produced to the Trustee by the Debtor, showing, even under the Debtor's own records kept as president of DeVille, as of 2010, the Debtor owed at least $930,036.92 to DeVille. A copy of the "General Ledger Trial Balance" for 2010, page 004, is attached hereto as Exhibit "E." Following the initiation of the Liquidation, one of Savannah's attorneys, Allison C. Doucette, attempted without any success to schedule the examination of the Debtor under Federal Rule of Civil Procedure 2004. This has been received by Savannah as consistent with the Debtor's non-compliance in the Records Action, and the failure to provide notice to Savannah of the first meeting of creditors.

The Debtor is and has been hostile to Savanah and all of its principals other than his wife for some time. In a pleading filed by the Debtor in this Liquidation on April 24, 2015, the Debtor asserted that "The manager of Savannah, Mr. Martino's father-in-law, has vowed on more than one occasion, to destroy Mr. Martino…" The mischief of the Debtor in the handling of the Records Action and Liquidation-related efforts is reflective of the Debtor's belief that he is experiencing a vendetta scenario with Savannah and his in-laws. Upon information and belief, his own hostility toward his in-laws has been used by the Debtor as a justification for his fraud and subsequent concealment of fraud. Among the actions of the Debtor that are particularly reflective of hostility toward his in-laws is the fact that the Debtor consented in the context of this Liquidation to an extension of the deadline to object to dischargeability for another unscheduled creditor in this Liquidation, while on the same day filing a motion objecting to comparable relief for Savannah.

Savannah is a creditor of the Debtor, and its claim against the Debtor (the "Savannah Claim") is of an amount not less than $1,514,081, based upon the Actionable Misconduct, including one-half of the Loan and one-half of the equity lost in the Second Avenue Property. The exact amount of the Savannah Claim cannot be determined in light of the Debtor's conduct in the Records Action.

The Schedules list the Debtor as owning a fifty (50%) percent interest in DeVille by the entireties, valued at $0. The Schedules also list Savannah as a general unsecured creditor of the Debtor with a claim of indeterminate amount, for "claims for monies owed and mismanagement." Although scheduled, the Savannah Claim is listed as contingent, unliquidated, and disputed. Finally, the Schedules list DeVille as a creditor holding a claim against the Debtor for $1,028,162, for a "loan." When read together, Savannah views the Schedules as reflecting that the Debtor recognizes that he liable to Savannah for improperly utilizing the resources of DeVille to make an unauthorized loan from DeVille to himself personally in the minimum of $1,028,162. However, as reflected in the Records Action, Savannah believes that this is just the most flagrant of the Debtor's mismanagement activities. Upon information and belief, the Debtor continues to operate DeVille even following the initiation of the Liquidation, a task best left to a fiduciary in light of the legal, business, financial, and familial tensions involving DeVille. Accordingly, the amount of Savannah's Claim continues to augment during the pendency of the Liquidation.

**Note 2: The Claim Amount:**

As of November 14, 2014, Savannah's Claim is in the amount of at least $1,514,081, as described above. The Claim continues to increase during the pendency of the Liquidation, as the Debtor remains in control of DeVille. As the Debtor has precluded Savannah from ascertaining the full amount of its Claim, Savannah reserves its right to supplement or amend this Claim.

**Note 3: Reservation of Rights:**

Savannah reserves its right to amend or supplement this Proof of Claim as circumstances require. Savannah anticipates that discovery conducted in the Records Action and within the context of the simultaneously-filed adversary proceeding (the "Adversary Proceeding") will reveal additional claim amounts and Savannah expressly reserves the right to augment the Claim in light of ongoing discovery. Nothing in this Proof of Claim shall be taken to waive, release, or otherwise compromise any additional component of the Claim in the event that this becomes necessary to preserve or enforce any such claim or interest. Savannah reserves its rights thereunder in all respects.

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

In re:

THOMAS SALVADOR MARTINO, Chapter 7
Case No.: 8:14-bk-13452-KRM

Debtor.
_______________________________________/

**OBJECTION TO PROOF OF CLAIM OF SAVANNAH CAPITAL, LLC**

**COMES NOW** the Defendant, Thomas S. Martino (the "**Debtor**"), by and through his undersigned counsel, and pursuant to Fed. R. Bankr. P. 3007 hereby files this Objection to Claim of Savannah Capital, LLC (Claim No. 7-1) filed on May 1, 2015, and states as follows:

**BACKGROUND**

1. The Debtor filed a Petition for Relief under Chapter 7 of the Bankruptcy Code on November 14, 2014 (Doc. 1).

2. The Debtor and his non-filing spouse own an interest in DeVille Corp. ("**DeVille**"), a Florida corporation, as tenants by the entirety.

3. DeVille is an active for-profit corporation, organized under Florida law on March 21, 2003. The Debtor is the President of DeVille.

4. Savannah Capital, LLC ("**Savannah Capital**") claims to own 50% of DeVille Corporation (Claim No. 7-1).

5. Savannah Capital is owned by 16 children and stepchildren of Robinson Callen and Mr. Callen is the managing member of Savannah Capital. The Debtor's non-filing spouse, Pamela Cordell Martino (Mrs. Martino), was one of Mr. Callen's stepchildren, however, Mrs.

Jan Callen (Mrs. Martino's mother) passed away in 2009 and the Martinos are no longer relatives by marriage to Robinson Callen.

6. Since Mrs. Jan Callen's passing, Mr. Callen, through Savannah Capital, has attempted to obtain financial records and other confidential, internal documents of DeVille through the initiation of a records action in Hillsborough County Circuit Court in August 2014. The appropriate records required by the court have been supplied to date.

7. The Debtor listed Savannah Capital as a "creditor" on Schedule F characterizing Savannah Capital's claim as a contingent, unliquidated, disputed claim for an unknown amount (Doc. 9). Savannah Capital first appeared in this case in January 2015 (Doc. 19), but did not file its Proof of Claim until May 1, 2015, more than a month after the claims bar date on March 23, 2015 (Claim No. 7-1).

8. Savannah Capital was also untimely in objecting to the dischargeability of its claim. After receiving an extension of time to file a Complaint Objecting to the Debtor's Discharge or the Dischargeability of Certain Debts (Doc. 27), Savannah Capital filed its Second Motion to Extend Time on the date of expiration of the first extension the Court provided (Doc. 45).

9. The Debtor objected to: (i) Savannah Capital's Motion for Extension of Time to File Proof of Claim (Doc. 73); and (ii) Savannah Capital's Motion to Extend Time to Object to Discharge or the Dischargeability of Certain Debts (Doc. 73), based on the Debtor's position that Savannah Capital does not hold a claim against the Debtor and therefore lacks standing to object to the dischargeability of any debt (Doc. 72).

10. At a hearing on June 11, 2015, the Court granted both of Savannah Capital's motions to extend time and deemed its late filed Proof of Claim and Complaint objecting to discharge as timely filed. (Doc. 78, 83)

11. Now that Savannah Capital has filed a Proof of Claim, the Debtor hereby reasserts its position that Savannah Capital is not a creditor of the Debtor and formally objects to Savannah Capital's Proof of Claim.

**OBJECTION TO CLAIM**

12. Savannah Capital is not a creditor of DeVille.

13. In its Proof of Claim, Savannah Capital alleges that while in control of DeVille, the Debtor harmed Savannah Capital by:

a. Entering into loans with DeVille personally; and

b. Permitting a secured loan to go into default, resulting in the foreclosure on DeVille property.

14. Savannah Capital's allegations – making improper loans and permitting a default on a mortgage resulting in a subsequent foreclosure – both involve the improper use or depletion of the corporate assets of DeVille. If the Debtor misappropriated corporate assets, the remedy is for the Debtor to account to the corporation. However, Savannah Capital has no ownership in the corporation's assets; the assets belong to the corporation – DeVille. As such, the right to sue for return of the assets to the corporation belongs solely to DeVille.

15. Under well established law, a corporation holds property separate and apart from its owners and the right to (i) recover damages suffered by a corporation and (ii) enforce certain rights belongs to the corporation, not its shareholders. For a shareholder to maintain an action directly against another shareholder, officer, or director of a corporation, a shareholder must

allege a direct harm it suffered – rather than harm that residually flowed to the shareholder through its ownership in the corporation. *White v. Whittle (In re Whittle)*, 449 B.R. 427, 430 (Bankr. M.D. Fla. 2011); *Mann v. Kendall Props. & Invs., LLC (In re AS Mgmt. Svcs.)*, 2007 Bankr. LEXIS 2838 (Bankr. S.D. Fla. Aug. 16, 2007) ("A stockholder lacks standing to recover individually for injuries done to his corporation."); *In re Sunrise Sec. Litig.*, 916 F.2d 874 (3rd Cir. 1990) (applying Florida law); *Dinuro Investments, LLC* v. Camacho, 141 So. 3d 731, 735-36 (Fla. 3d DCA 2014); *Angelino v. Santa Barbara Enters., LLC*, 2 So. 3d 1100, 1104 (Fla. 3d DCA 2009); *Chaul v. Abu-Ghazaleh*, 994 So. 2d 465 (Fla. 3d DCA 2008); *Orlinsky v. Patraka*, 971 So. 2d 796, 801-802 (Fla. 3d DCA 2007); *Hill v. Brady*, 737 So. 2d 1243, 1244 (Fla. 5th DCA 1999); *Lincoln Oldsmobile, Inc. v. Branch*, 574 So. 2d 1111, 1114 (Fla. 2d DCA 1990).

WHEREFORE, the Debtor respectfully asks the Court to disallow the claim of Savannah Capital (Claim No. 7-1) and grant the Debtor any other relief the Court deems appropriate.

Dated: July 15, 2015.

D. LEE PITISCI, ESQUIRE
Florida Bar No.: 771650
Pitisci, Dowell & Markowitz
101 S. Moody Avenue
Tampa, FL 33609
Phone: (813) 228-9233 x 4
Fax: (813) 229-5979
Primary E-Mail: lpitisci@pdmmlaw.com
Secondary E-Mail: alutz@pdmmlaw.com
*Co-counsel for Debtor*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on July 15, 2015, I electronically filed a true and correct copy of the foregoing document with the Clerk of the United States Bankruptcy Court for the Middle District of Florida by using the CM/ECF system and I furnished a copy of the foregoing document to the parties in the manner of service indicated below.

D. LEE PITISCI, ESQUIRE
Florida Bar No.: 771650

**Via the CM/ECF system which will send a Notice of Electronic Filing to:**

A. Christopher Kasten, II, Esquire, Special Counsel for Trustee, Douglas N. Menchise
David W. Steen, Esquire, Co-Counsel for Debtor
Douglas N. Menchise, Chapter 7 Trustee
United States Trustee

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

In re: Case No.: 8:14-bk-13452

THOMAS SALVADOR MARTINO, Chapter 7

Debtor.
_________________________________/

**MOTION TO COMPROMISE CONTROVERSY WITH THOMAS SALVADOR MARTINO AND PAMELA CORDELL MARTINO**

COMES NOW Douglas N. Menchise, the Chapter 7 Trustee (the "**Trustee**"), for the bankruptcy estate of Thomas Salvador ("**Debtor**"), by and through the undersigned counsel and pursuant to Bankruptcy Rules 9019 and 2002(a)(3) and files this his Motion to Compromise Controversy with Thomas Salvador Martino and Pamela Cordell Martino (the "**Motion**") and requests the entry of an order approving this Motion and the Settlement Agreement (as defined herein) between the Trustee, the Debtor and Pamela Cordell Martino. As grounds for the Motion the Trustee states as follows:

**BACKGROUND**

1. On June 15, 2015, the Trustee filed a three-count Complaint against Thomas Salvador Martino Pamela Cordell Martino, Marcus Angelo Martino, and Lara Martino, arising out of transfers of Thomas Salvador Martino's ownership interest in Gold Standard Properties, LLC.

2. Count I was an avoidance of a fraudulent transfer pursuant to § 726.105(1)(a) against Thomas Salvador Martino, Marcus Martino and Lara Martino. Count I has previously been dismissed.

3. Count II was an action by the Trustee against Thomas Martino and Pamela Martino to avoid a fraudulent transfer pursuant to § 726.105(1)(a). This claim remains pending.

4. In Count III the Trustee sought the avoidance of a fraudulent transfer against Thomas Salvador Martino and Pamela Martino pursuant to § 726.106(1). This claim remains pending.

5. On January 22, 2016, pursuant to this Court's previous Order, the parties hereto mediated this adversary proceeding before the Honorable Caryl Delano.

6. An agreement was reached during the mediation to settle the matter as set forth herein.

## THE PROPOSED SETTLEMENT AGREEMENT

7. Thomas Salvador Martino and Pamela Cordell Martino have agreed to pay the Trustee the sum of $25,000.00 in cash or certified funds on the fifteenth day after an Order is entered by this Bankruptcy Court approving this proposed agreement which order is final and has not been appealed. Upon receipt of the funds, the Trustee has agreed to dismiss this Adversary Proceeding with prejudice ("**Settlement Agreement**").

## MEMORANDUM OF LAW

8. By this Motion, the Trustee respectfully requests that the Court enter an order approving the Settlement Agreement in its entirety, and retain sole and exclusive jurisdiction over same. Federal Rule of Bankruptcy Procedure 9019 provides in relevant part that "[o]n motion . . . and after a hearing on notice to creditors; the debtor . . . and to such other entities as the Court may designate, the Court may approve a compromise or settlement."

9. The Eleventh Circuit has announced that:

> [w]hen a bankruptcy court decides whether to approve or disapprove a proposed settlement, it must consider: (a) the

> probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544, 1549 (11th Cir. 1990).

10. The standards for approval are well-settled and require the Court to inquire into the reasonableness of the proposed settlement. *See, e.g., Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983); *Florida Trailer and Equip. Co. v. Deal*, 284 F.2d 567, 571 (5th Cir. 1960).

11. The decision to approve a compromise or settlement is within the sound discretion of the bankruptcy judge. *In re Woodson*, 839 F.2d 610 (9th Cir. 1988); *In re American Reserve Corp.*, 841 F.2d 159 (7th Cir. 1987). Because the bankruptcy judge is uniquely situated to consider the equities and reasonableness of a particular compromise, approval or denial of a compromise will not be disturbed on appeal absent a clear abuse of discretion. *Matter of Walsh Construction, Inc.*, 669 F.2d 1325, 1328 (9th Cir. 1982); *In re Batavia Metal Products, Inc.*, 166 F.2d 7 (7th Cir. 1948); *In the Matter of Energy Cooperative, Inc.*, 886 F.2d 921, 926 (7th Cir. 1989); *In re Bell & Beckwith*, 93 B.R. 569, 574 (Bankr. N.D. Ohio 1988).

12. Generally, because the bankruptcy court has broad discretion to approve settlements reached under Rule 9019, it need only satisfy itself that the settlement is "within the range of reasonableness." *In re Best Product Co., Inc.*, 68 F.3d 26, 33 (2d Cir. 1995). Therefore, the bankruptcy court's decision will be respected unless the settlement falls below the "lowest point in the range of reasonableness" (*In re Teletronics Services, Inc.*, 762 F.2d 185, 189 (2d Cir. 1985) (citation omitted)), and the court should give substantial deference to the business judgment of a bankruptcy trustee when deciding whether to approve a settlement. *In re Indian*

*Motorcycle, Inc.*, 289 B.R. 269, 283 (1st Cir. BAP 2003) ("Compromises are generally approved if they meet the business judgment of the trustee.").

13. Here, the relevant factors weigh in favor of approving the Settlement Agreement. The Trustee considered the *Justice Oaks* factors, and has determined, in his business judgment, that the Settlement Agreement is in the best interests of the estate and falls well above the lowest point of the range of reasonableness.

14. Indeed, a Chapter 7 trustee is required to reach an informed judgment, after diligent investigation, as to whether it would be prudent to eliminate the inherent risks, delays, and expense of prolonged litigation in an uncertain case. *See In re Vazquez,* 325 B.R. 30, 36 (Bankr. S.D. Fla. 2005). In *Vazquez*, the court stated:

> A chapter 7 trustee is entrusted to marshal an estate's assets and liabilities, and proceed in settling its accounts on whatever grounds he, in his informed discretion, believes will net the maximum return for the creditors (on whose behalf he toils). When augmentation of an asset involves protracted investigation or potentially costly litigation, with no guarantee as to the outcome, the trustee must tread cautiously—and an inquiring court must accord him wide latitude should he conclude that the game is not worth the candle.

*Id.*

15. Public policy also supports approval of compromises or settlements of controversies in bankruptcy cases. Pretrial settlements are favored in all types of litigation, but bankruptcy trustees are particularly encouraged to find alternative solutions to drawn-out litigation given the financial instability of a debtor. See, e.g., *In re Soderstorm*, 477 B.R. at 254: *In re Bicoastal Corp.*, 164 B.R. 1009 (Bank. M.D. Fla 1993) (stating that public policy strongly favors pretrial settlement in all types of litigation): *Matter of Munford, Inc.*, 97 F. 3d 449, 449(11th Cir. 1996) (explaining that litigation costs are particularly burdensome on a bankruptcy estate given the financial instability of the estate).

16. Based on the foregoing legal principles, the Trustee asserts that the Settlement Agreement falls well above the lowest range of reasonableness, and satisfies all of *Justice Oaks II* standards.

17. The Trustee submits that the compromise is in the best interest of the creditors and the estate because it avoids the time, expense, and uncertainty inherent in litigation of this type that would be required and in the collection of any judgment entered. Moreover, the compromise serves the best interest of the estate's creditors because there is a finite amount of funds available in the estate, and the cost of litigating the disputes between the parties would be substantial. As such, it is in the best exercise of the Trustee's business judgment to compromise this matter, as set forth above, and therefore this Settlement Agreement satisfies the factors set forth by the Eleventh Circuit in its Justice Oaks II, decision.

WHEREFORE, Douglas Menchise, Chapter 7 Trustee of the Estate of Thomas Salvador Martino, respectfully requests that this Court enter an order (i) approving the compromise; (ii) authorizing the Trustee to take such action as required to consummate the compromise; and (iii) granting such other additional relief as is necessary and appropriate under the circumstances.

Dated: Tampa, Florida
February 11, 2016

BUSH ROSS, P.A.
P.O. Box 3913
Tampa, FL 33601-3913
(813) 224-9255
(813) 223-9620 fax
*Special Counsel for Trustee,*
*Douglas N. Menchise*

By: /s/ A. Christopher Kasten, II
A. Christopher Kasten, II, Esquire
Florida Bar No. 771236
ckasten@bushross.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 11, 2016, I electronically filed a true and correct copy of the Motion to Compromise Controversy with Thomas Salvador Martino and Pamela Cordell Martino with the Clerk of the United States Bankruptcy Court for the Middle District of Florida by using the CM/ECF system and I furnished a copy of the foregoing document to the parties listed on the attached matrix by U.S. Mail.

*/s/ A. Christopher Kasten, II*
Attorney

ORDERED.

**Dated: March 10, 2016**

K. Rodney May
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
**www.flmb.uscourts.gov**

In re:

THOMAS SALVADOR MARTINO,

Debtor.
_______________________________________/

Chapter 7
Case No.: 8:14-bk-13452-KRM

**ORDER APPROVING THE COMPROMISE WITH THOMAS SALVADOR MARTINO AND PAMELA CORDELL MARTINO AND DOUGLAS N. MENCHISE**

**THIS CAUSE** having come before the Court upon the Motion to Approve Compromise of Controversy or Settlement Agreement, and states:

1. The Motion to Approve Compromise of Controversy or Settlement Agreement was served on February 11, 2016 upon all interested parties with the Local Rule 2002-4 negative notice legend informing the parties of their opportunity to respond within 21 days of the date of service (DOC 109 –main bankruptcy);

2. No party filed a response or objection within the time permitted; and

3. The Court therefore considers the matter to be unopposed.

The parties request that an Order be entered granting the Motion to Approve Compromise of Controversy or Settlement Agreement filed and served February 11, 2016. Accordingly, it is

**ORDERED:**

1. The Compromise and Settlement Agreement entered into between the Trustee and the Debtor, Thomas Martino and Pamela Cordell Martino is hereby approved.

**<u>Via the CM/ECF system which will send a Notice of Electronic Filing to:</u>**
A. Christopher Kasten, II, Esquire

*Attorney D. Lee Pitisci is directed to serve a copy of this order on interested parties and file a Proof of Service within 3 days of entry of the order.*

**IN THE UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

IN RE:

Case No. 8:14-BK-13452

THOMAS SALVADOR MARTINO, Chapter 7

Debtor.
________________________________/

**SAVANNAH'S OBJECTION TO "MOTION TO APPROVE COMPROMISE WITH <u>THOMAS SALVADOR MARTINO AND PAMELA CORDELL MARTINO" [DOC. 109]</u>**

Savannah Capital, LLC ("Savannah") hereby responds in opposition to the "Motion to Approve Compromise with Thomas Salvador Martino and Pamela Cordell Martino" (the "Compromise Motion") [Doc. No. 109] filed by Douglas N. Menchise, the Chapter 7 Trustee for the Estate of Thomas Salvador Martino (the "Trustee") on February 11, 2016.

1. The Debtor filed its voluntary Chapter 7 bankruptcy proceeding on November 14, 2014, thereby initiating this bankruptcy case (this "Liquidation").

2. Savannah is a major creditor in this Liquidation, having filed a proof of claim for $1,514,081 [Claim 7-1] on May 1, 2015.

3. The Compromise Motion calls for the compromise of controversy (the "Controversy") relating to an adversary proceeding (the "Adversary Proceeding") brought by the Trustee against Thomas Salvador Martino (the "Debtor") and Pamela Cordell Martino (together, the "Adversary Defendants"), based upon the Trustee's rights under Bankruptcy Code § 544(b) and relevant provisions of Florida's codification of the "Uniform Fraudulent Transfer Act" (the "UFTA"), <u>Florida Statutes</u> § 726.101 et seq.

4. In the Compromise Motion, the Trustee proposes to settle the causes of action that are the basis for the Controversy for the receipt of $25,000 from the Adversary Defendants (the "Compromise").

5. To approve the Compromise, this Court should consider (a) the likelihood of success of the Trustee in the Adversary Proceeding; (b) difficulties in collection in the event of a successful result; (c) complexity of the litigation and related expense and delay in administration of this Liquidation; and (d) paramount interest of creditors such as Savannah. See In re Justice Oaks II, Ltd., 898 F.2d 1544, 1549 (11th Cir. 1990).

6. Savannah objects to the Compromise Motion because it has determined that the Compromise falls well below the Justice Oaks standard referenced in the Compromise Motion. Specifically, the settlement consideration is quite small in light of the chances of success in pursuing claims under the UFTA against the Adversary Defendants, and the Trustee's claims asserted in the context of the Controversy are highly meritorious in terms of the relevant facts and law.

7. On even date herewith, Savannah determined that HIR University Investors LLC (the "Competing Bidder"), a business entity that is related to Savannah, is prepared to pay twice as much to the Trustee for an assignment of all right, title, and interest of the estate in the Controversy, and a substitution of the Competing Bidder as party plaintiff in the Adversary Proceeding.

8. The result provided in the Compromise therefor falls materially below the terms of the Compromise as set forth in the Compromise Motion.

9. To confirm feasibility of this alternative, the undersigned has received the sum of $50,000 in the Anthony & Partners, LLC fiduciary trust account to establish that the Competing Bidder's alternative is in the best interest of creditors, the paramount consideration under the Justice Oaks standard.

10. While the Court has broad authority in approving compromises or settlements, the Court should only approve settlements when they are fair and equitable and in the best interest of the estate. In re Bicoastal Corp., 164 B.R. 1009, 1016 (M.D. Fla. Bankr. 1993).

11. Moreover, relevant case law indicates that when the compromise of a controversy is effectively the purchase of claims that can be monetized, and multiple parties are available to acquire

the same, it is appropriate for an auction to occur. See In re Martin, 91 F.3d 389, 394-95 (3d Cir. 1996); In re Moore, 608 F.3d 253 (5th Cir. 2010); In re Mickey Thompson Entertainment Group, Inc., 292 B.R. 415 (BAP 9th Cir. 2003). In this case, the Competing Bidder is prepared to treat the $50,000 sum as an initial bid, provided that an adequate assignment document can be presented by the Trustee for approval in the context of any form of auction. Because the Trustee has received a higher and better offer for the claims underlying the Controversy, the entire transaction is governed by Bankruptcy Code § 363.

12. For all of the foregoing reasons, the Compromise is not in the best interest of the estate or its creditors, and higher and better alternatives are available.

WHEREFORE, Savannah respectfully requests that this Court:

a. deny the Compromise Motion; and

b. authorize and direct the Trustee to assign the estate's position in the Adversary Proceeding to the Competing Bidder for $50,000; or

c. conduct an auction for the estate to assign its position in the Adversary Proceeding to a winning bidder; and

d. grant such other and further relief as is equitable and just.

/s/ John A. Anthony

**JOHN A. ANTHONY, ESQUIRE**
Florida Bar No. 0731013
**STEPHENIE B. ANTHONY, ESQUIRE**
Florida Bar No. 0127299
ANTHONY & PARTNERS, LLC
201 North Franklin Street, Suite 2800
Tampa, Florida 33602
Telephone: (813) 273-5616
Telecopier: (813) 221-4113
Attorneys for Savannah Capital, LLC

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true copy of the foregoing has been furnished by electronic means and/or U.S. first class mail on the 11th day of March, 2016, to:

David W. Steen, Esquire
David W. Steen, P.A.
602 S. Boulevard
Tampa, Florida 33606
dwsteen@dsteenpa.com

Douglas N. Menchise, Esquire
2963 Gulf to Bay Boulevard, Suite 300
Clearwater, Florida 33759
dmenchise@verizon.net

A. Christopher Kasten, II, Esquire
Bush Ross, P.A.
Post Office Box 3913
Tampa, Florida 33601
ckasten@bushross.com

United States Trustee – TPA 7/13
Timberlake Annex, Suite 1200
501 E. Polk Street
Tampa, Florida 33602

/s/ John A. Anthony
**ATTORNEY**

**IN THE UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

IN RE:

THOMAS SALVADOR MARTINO,

Case No. 8:14-BK-13452
Chapter 7

Debtor.
________________________________/

**MOTION FOR RECONSIDERATION OF "ORDER APPROVING THE COMPROMISE WITH THOMAS SALVADOR MARTINO AND PAMELA CORDELL MARTINO AND DOUGLAS N. MENCHISE" [DOC. 110]**

Pursuant to Federal Rule of Civil Procedure 60, made applicable to this contested matter pursuant to Federal Rule of Bankruptcy Procedure 9024, Savannah Capital, LLC ("Savannah"), by and through its undersigned counsel, hereby files this motion (this "Rehearing Motion"), seeking reconsideration by this Court of the "Order Approving the Compromise with Thomas Salvador Martino and Pamela Cordell Martino and Douglas N. Menchise" [Doc. 110] (the "Compromise Order"), entered in the above-referenced bankruptcy case (this "Liquidation") of Thomas Salvador Martino (the "Debtor"), and in support thereof states as follows:

1. The Debtor filed the "Voluntary Petition" on November 14, 2014, thereby initiating this Liquidation.

2. Savannah is a major creditor in this Liquidation, having filed a proof of claim for $1,514,081 [Claim 7-1] on May 1, 2015.

3. On February 11, 2016, the Trustee filed a motion to compromise controversy (the "Compromise Motion") [Doc. 109], pertaining to the compromise of controversy (the "Controversy") relating to an adversary proceeding (the "Adversary Proceeding") brought by Douglas N. Menchise, the Chapter 7 Trustee (the "Trustee"), against the Debtor and his spouse, Pamela Cordell Martino (together, the "Adversary Defendants").

4. The Adversary Proceeding is predicated upon the Trustee's rights against the Adversary Defendants under Bankruptcy Code § 544(b) and relevant provisions of Florida's codification of the "Uniform Fraudulent Transfer Act" (the "UFTA"), found at Florida Statutes § 726.101, et seq.

5. In the Compromise Motion, the Trustee proposes to settle the causes of action that are the basis for the Controversy for the receipt of $25,000 from the Adversary Defendants (the "Compromise").

6. Factors impacting disposition of the Compromise Motion are the (a) likelihood of success of the Trustee in the Adversary Proceeding; (b) difficulties in collection in the event of a successful result; (c) complexity of the litigation and related expense and delay in administration of this Liquidation; and (d) paramount interest of creditors such as Savannah. See In re Justice Oaks II, Ltd., 898 F.2d 1544, 1549 (11th Cir. 1990).

7. By pleading dated March 11, 2016 (the "Compromise Objection") [Doc. 111], Savannah objected to the Compromise Motion because it had determined that the Compromise fell well below the Justice Oaks standard referenced in the Compromise Motion. Specifically, the settlement consideration is quite small in light of the chances of success in pursuing claims under the UFTA against the Adversary Defendants, and the highly meritorious claims asserted by the Trustee in the context of the Controversy.

8. Part of the basis for the position taken in the Compromise Objection was the fact that HIR University Investors LLC (the "Competing Bidder"), a business entity that is related to Savannah, was prepared to pay twice as much to the Trustee for an assignment of all right, title, and interest of the estate in the Controversy, and a substitution of the Competing Bidder as party plaintiff in the Adversary Proceeding. As of the date of this Rehearing Motion, Savannah has

confirmed the fact that the Competing Bidder still has on escrow the sum of $50,000, deposited into the Anthony & Partners, LLC fiduciary trust account, to close on a competing resolution that is in the best interest of creditors, the paramount consideration under the Justice Oaks standard. As stated in the Compromise Objection, this Court has broad authority in approving compromises or settlements, but this Court should only approve settlements when they are fair and equitable and in the best interest of the estate. In re Bicoastal Corp., 164 B.R. 1009, 1016 (M.D. Fla. Bankr. 1993).

9. Also as stated in the Compromise Objection, relevant case law indicates that when the compromise of a controversy is effectively the purchase of claims that can be monetized, and multiple parties are available to acquire the same, it is appropriate for an auction to occur. See In re Martin, 91 F.3d 389, 394-95 (3d Cir. 1996); In re Moore, 608 F.3d 253 (5th Cir. 2010); In re Mickey Thompson Entertainment Group, Inc., 292 B.R. 415 (BAP 9th Cir. 2003). In this case, the Compromise Objection noted that the Competing Bidder was (and is) prepared to treat the $50,000 sum as an initial bid, provided that an adequate assignment document can be presented by the Trustee for approval in the context of any form of auction as governed by Bankruptcy Code § 363.

10. The Compromise Order was entered actually prior to the filing of the Compromise Objection. Neither this Court nor the Trustee, nor other parties in interest, were aware of the Competing Bidder's interest in the Controversy with sufficient notice to object to the Compromise. The difference between the sum proposed by the Adversary Defendants and that of the Competing Bidder to address the Adversary Proceeding are materially different, and it would be in the best interest of creditors to either accept the proposal of the Competing Bidder or to conduct an auction. In either instance, relief is appropriate under Federal Rule of Civil

Case 8:16-cv-02105-VMC Document 8-4 Filed 10/11/16 Page 4 of 5 PageID 539

Procedure 60.

WHEREFORE, Savannah respectfully requests the order of this Court granting this Rehearing Motion, and upon reconsideration of the Compromise Order, vacating the same, considering the Compromise Motion on the merits, as well as considering the merits of the Compromise Objection, and for such other and further relief as deemed just and appropriate.

/s/ Stephenie Biernacki Anthony
**JOHN A. ANTHONY, ESQ.**
Florida Bar Number: 0731013
janthony@anthonyandpartners.com
**STEPHENIE BIERNACKI ANTHONY, ESQ.**
Florida Bar Number: 0127299
santhony@anthonyandpartners.com
**ALLISON C. DOUCETTE, ESQ.**
Florida Bar Number: 0085577
adoucette@anthonyandpartners.com
**ANTHONY & PARTNERS, LLC**
201 North Franklin Street, Suite 2800
Tampa, Florida 33602
Telephone: (813) 273-5616
Telecopier: (813) 221-4113
Attorneys for Savannah Capital, LLC

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via electronic means on this 14th day of March, 2016, to the following:

Thomas Salvador Martino
114 East Davis Blvd. #3
Tampa, Florida 33606
*Debtor*

David W. Steen, Esq.
David W. Steen PA
602 S Boulevard
Tampa, Florida 33606
dwsteen@dsteenpa.com
*Counsel for Debtor*

D. Lee Pitisci, Esq.
Pitisci, Dowell & Markowitz
101 S. Moody Avenue
Tampa, Florida 33609
lpitisci@pdmmlaw.com
*Counsel for Debtor*

Douglas N Menchise Esq.
Attorney for Chapter 7 Trustee
2963 Gulf to Bay Boulevard, Suite 300
Clearwater, Florida 33759
Dmenchise@verizon.net

Christopher Kasten, Esq.
Attorney for Chapter 7 Trustee
Bush Ross, P.A.
Post Office Box 3913
Tampa, Florida 33601-3913
ckasten@bushross.com

United States Trustee - TPA7/13
Timberlake Annex, Suite 1200
501 E Polk Street
Tampa, Florida 33602

Parties in Interest Matrix

/s/ Stephenie Biernacki Anthony
**ATTORNEY**

IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN RE:

THOMAS SALVADOR MARTINO,

Case No. 8:14-BK-13452
Chapter 7

Debtor.
_________________________________/

**NOTICE OF OPPORTUNITY TO**
**<u>OBJECT AND REQUEST FOR HEARING</u>**

**Pursuant to Local Rule 2002-4, the Court will consider this motion, objection, or other matter without further notice or hearing unless a party in interest files a response within 21 days from the date set forth on the proof of service attached to this paper plus an additional three days for service. If you object to the relief requested in this paper, you must file your response with the Clerk of the Court at Sam M. Gibbons United States Courthouse, 801 N. Florida Avenue, Suite 555, Tampa, Florida 33602, and serve a copy on the movant's attorney, A. Christopher Kasten, II, Esquire, Bush Ross, P.A. P.O. Box 3913, Tampa, FL 33601-3913, and any other appropriate persons within the time allowed.**

**If you file and serve a response within the time permitted, the Court may schedule and notify you of a hearing, or the Court may consider the response and may grant or deny the relief requested without a hearing. If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant the relief requested.**

**TRUSTEE'S MOTION TO SELL**
**<u>(AT AUCTION) PROPERTY OF THE ESTATE</u>**

Douglas N. Menchise, the Chapter 7 Trustee (the "**Trustee**"), for the bankruptcy estate of Thomas Salvador Martino ("**Debtor**"), by and through his undersigned counsel, files this Motion to Sell (at Auction) Property of the Estate (the "**Motion**") and respectfully states as follows:

The Trustee requests that the Court enter an order approving the Trustee's auction of the below-specified property of Debtor's estate in the following manner:

1. **<u>Property</u>**: All of the Debtor's estate's remaining fraudulent conveyance claims against Thomas Salvador Martino and Pamela Cordell Martino as set forth in pending in Adv. Pro. No.: 8:15-ap-00554-KRM. The Trustee is selling it claims

to the Debtor and Pamela Cordell Martino's 37.5% economic interest in Gold Standard Properties, LLC (the "**LLC**"). No actual economic interest is being sold at this auction, only the Trustee's claims against Thomas Salvador Martino and Pamela Cordell Martino. If the fraudulent conveyance claims are successful, the successful bidder or its assignee will own whatever interest in the LLC that the Debtor's estate might otherwise have had absent this auction.

2. **Date of Auction**: Within three (2) weeks of the Court's entry of an order approving the Motion.

3. **Manner of Auction**: A Trustee conducted auction.

4. **Place of Auction**: 1801 North Highland Avenue, Tampa, Florida 33602

5. **Trustee's Publication of Auction**: Upon the Court's entry of an order approving the Motion, the Trustee shall publish a notice of sale for seven (7) days in appropriate local publication(s).

6. **Terms of Sale**:

   a. **Payment**: Cash or cashier's check

   b. **Sale Price**: Highest and best bid

   c. **Initial Bid**: Savannah Capital, LLC of $50,000.00

   d. Subject to all liens and encumbrances, if any. No warranties of any kind.

WHEREFORE, the Trustee respectfully requests the Court enter an order (1) granting the Motion and (2) setting an auction for the sale of the Debtor's estate's 37.5% economic interest in the LLC in the manner set forth in the Motion.

Dated: Tampa, Florida
April 5, 2016

BUSH ROSS, P.A.
P.O. Box 3913
Tampa, FL 33601-3913
(813) 224-9255
(813) 223-9620 fax
*Special Counsel for Trustee,*
*Douglas N. Menchise*

By: */s/ A. Christopher Kasten, II, Esquire*
A. Christopher Kasten, II, Esquire
Florida Bar No. 771236
ckasten@bushross.com

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on April 5, 2016, I electronically filed a true and correct copy of the Trustee's Motion to Sell (at Auction) Property of the Estate with the Clerk of the United States Bankruptcy Court for the Middle District of Florida by using the CM/ECF system.

*<u>/s/ A. Christopher Kasten, II, Esquire</u>*
Attorney

**<u>Via the CM/ECF system which will send a Notice of Electronic Filing to:</u>**

- John A Anthony janthony@anthonyandpartners.com, efilings@anthonyandpartners.com
- Stephenie Biernacki Anthony santhony@anthonyandpartners.com, lwright@anthonyandpartners.com;efilings@anthonyandpartners.com
- Allison Doucette adoucette@anthonyandpartners.com, efilings@anthonyandpartners.com;rbrown@anthonyandpartners.com
- Douglas N Menchise Dmenchise@verizon.net, FL57@ecfcbis.com
- D Lee Pitisci lpitisci@pdmmlaw.com, alutz@pdmmlaw.com
- David W Steen dwsteen@dsteenpa.com, ssteen@dsteenpa.com;llints@dsteenpa.com;dcheviron@dsteenpa.com
- Scott A. Stichter sstichter.ecf@srbp.com, srbpecf@srbp.com
- United States Trustee - TPA7/13 USTPRegion21.TP.ECF@USDOJ.GOV
- Lori V Vaughan lvaughan@trenam.com, lkfloyd@trenam.com;jfollman@trenam.com

ORDERED.

**Dated: April 07, 2016**

K. Rodney May
United States Bankruptcy Judge

**IN THE UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

IN RE:

Case No. 8:14-BK-13452
Chapter 7

THOMAS SALVADOR MARTINO,

Debtor.
_________________________________/

**ORDER UPON CONSIDERATION OF COMPROMISE PLEADINGS**

THIS CASE came before this Court on March 24, 2016, to consider the following pleadings and papers relevant to the disposition of a contested matter involving this Court's "Order Approving the Compromise with Thomas Salvador Martino and Pamela Cordell Martino and Douglas N. Menchise" (the "Compromise Order") [Doc 110], entered on March 10, 2016, that relates to the "Motion to Approve Compromise with Thomas Salvador Martino and Pamela Cordell Martino" (the "Compromise Motion") [Doc. 109], filed by Douglas N. Menchise (the "Trustee"), and relating to the intended compromise of a controversy as between the Trustee and Thomas Salvador Martino and Pamela Cordell Martino (together, the "Adversary Defendants"),

that is currently postured in the context of an adversary proceeding pending before this Court, styled Douglas Menchise v. Thomas Salvador Martino, et al., Case No. 8:15-ap-00554-KRM (the “Adversary Proceeding”):

a. “Savannah’s Objection to ‘Motion to Approve Compromise with Thomas Salvador Martino and Pamela Cordell Martino’ [Doc. 109]” (the “Savannah Compromise Objection”) [Doc. 111], filed by Savannah Capital, LLC (“Savannah”) on March 11, 2016;

b. “Motion for Reconsideration of ‘Order Approving the Compromise with Thomas Salvador Martino and Pamela Cordell Martino and Douglas N. Menchise’ [Doc 110]” (the “Savannah Reconsideration Motion”) [Doc. 112], filed by Savannah on March 14, 2016;

c. “Joinder of Motion for Reconsideration of ‘Order Approving the Compromise with Thomas Salvador Martino and Pamela Cordell Martino and Douglas N. Menchise’ [Doc. 110]” (the “Trustee Reconsideration Joinder”) [Doc. 114], filed by the Trustee on March 15, 2016;

d. “Motion to Enforce the Settlement Agreement between Thomas Salvador Martino, Pamela Cordell Martino, and Douglas N. Menchise” (the “Adversary Defendants Enforcement Motion”) [Doc. 122 and 126], filed and refiled by the Adversary Defendants on March 23, 2016; and

e. “Response to Savannah Capital LLC’s Motion for Reconsideration of Order Approving the Compromise with Thomas Salvador Martino and Pamela Cordell Martino and Douglas N. Menchise (Doc. 112)” (the “Adversary Defendants Response”) [Doc. 123], filed by the Adversary Defendants on March 23, 2016.

At Court, the Adversary Defendants were represented by D. Lee Pitisci, Esquire, Thomas Salvador Martino (the "Debtor") was represented by David W. Steen, Esquire, the Trustee was represented by A. Christopher Kasten, II, Esquire, Savannah was represented by Stephenie B. Anthony, Esquire, and HIR University Investors LLC (the "Competing Bidder"), a business entity related to Savannah with a representative also present in Court, was represented by John A. Anthony, Esquire.

At hearing, the Court heard counsel for the Competing Bidder to articulate the Competing Bidder Offer as a proposal counter to the Adversary Defendants Offer. The Court also considered a number of issues presented in light of the procedural history. Based upon the record before this Court, and for reasons stated orally and reported in open Court, that shall constitute the decision of this Court, this Court has determined that the offer of the Competing Bidder (the "Competing Bidder Offer") is higher and better than the offer of the Adversary Defendants (the "Adversary Defendants Offer"), and that the terms of each are sufficiently clear and confirmed to enable this Court to rule as requested by the Trustee and Savannah. Accordingly, it is

**ORDERED:**

1. The Savannah Reconsideration Motion is granted.
2. The Trustee Reconsideration Joinder is granted.
3. The Compromise Order is vacated.
4. The Compromise Motion is denied.
5. The Savannah Compromise Objection is sustained.

6. The Adversary Defendants Enforcement Motion is denied.

7. The Adversary Defendants Response is overruled.

8. The Competing Bidder shall deliver the $50,000 Cash Deposit to the Trustee forthwith, to be held pending further order of this Court. Moreover, the Trustee shall file a motion or application either seeking approval of the Competing Bidder Offer, or motion to allow an auction to take place, within fifteen (15) days from the date of this order.

*Attorney John A. Anthony, Esquire, is directed to serve a copy of this Order on interested parties and file a proof of service within three (3) days of enter of the order.*

ORDERED.

**Dated: May 25, 2016**

K. Rodney May
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
**www.flmb.uscourts.gov**

IN RE:

Case No. 8:14-bk-13452-KRM
Chapter 7

THOMAS SALVADOR MARTINO,

Debtor.
_________________________________/

**ORDER CONFIRMING THE SALE OF**
**PROPERTY OF THE ESTATE**

THIS CASE came on before the Court, for an auction pursuant to this Court's previous Order Granting Trustee's Motion to Sell (at Auction) Property of the Estate (Doc. 177), and the Court, having conducted a final bidding session and being fully advised in the premises finds as follows:

1. An auction was held before the Honorable K. Rodney May in Courtroom 9B, Sam M. Gibbons United States Courthouse, 801 North Florida Avenue, Tampa, Florida 33602, on May 19, 2016 at 2:00 p.m**. ("Auction")**;

2. The Estate received an initial bid prior to the Auction from HIR University Investors, LLC in the amount of $50,000;

3. The Estate received an second bid from HIR University Investors, LLC prior to the Auction in the amount of $100,000;

4. At the auction the Court received verbal bids from HIR University Investors, LLC and The Callen Trust.

5. The winning bid was tendered by The Callen Trust in the amount of $480,000. At the Auction, The Callen Trust tendered a cashier's check to the Trustee's counsel, Chris Kasten, in the amount of $110,000 which was to be deposited into the Bush Ross, P.A. trust account.

6. The Debtor, Thomas Salvador Martino and Pamela Cordell Martino, his wife, have agreed to dismiss their appeal of the Order Upon Consideration of Compromise Pleadings, as referenced in the Notice of Appeal filed in this case (Doc.141).

7. Given the nature of the property being sold at the Auction:

   a. The notice of the Trustee's Motion to Sell (at Auction) Property of the Estate was adequate, sufficient, and appropriate under the circumstances of this Chapter 7 case and constitutes adequate, and timely notice in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**"), and otherwise satisfies the procedural requirements of due process;

   b. Any requirements for other notice are hereby waived and dispensed with pursuant to Bankruptcy Rules 2002, 6006, 9006, 9007, Rule 2002-1 of the Local Rules and Section 105(a) of the Bankruptcy Code.

8. The Callen Trust has acted in good faith in connection with the bids submitted to the Court during the Auction. The Court, having reviewed the affidavits filed by The Callen Trust and heard arguments of counsel, specifically finds that The Callen Trust has acted in good faith in pursuing this purchase and transaction for purposes of Section 363(m) of the Bankruptcy Code and is therefore entitled to the protection of those provisions, and no actions or conditions exist that would contemplate avoidance pursuant to Bankruptcy Code § 363(m).

The Court, having considered the Motion and the record, and having heard argument of counsel and being fully advised in the premises, and for the reasons announced on the record at the Auction and otherwise as stated in open court, which, together with this Order, shall constitute the findings of fact, conclusions of law, and decision of the Court, finds that the Auction was conducted in an appropriate manner and the Property was sold to The Callen Trust. Accordingly, it is

ORDERED:

1. The findings of fact set forth above are ratified and adopted as findings of this Court and are incorporated in this Order. To the extent that any of the findings of fact set forth in this Order are deemed to be conclusions of law, then such findings are confirmed as conclusions of law, and vice versa.

2. This Court hereby confirms the sale of the Property to The Callen Trust for $480,000.

3. The Callen Trust gave $110,000 to the Trustee after the Auction as a deposit on the winning bid. The balance of the purchase price shall be paid to the Trustee's counsel, by cashier's check or wire transfer not later than 5:00 p.m. on May 25, 2016.

4. Subject only to timely payment of the balance of the purchase price:

(a) The following Property is hereby sold, transferred and conveyed to The Callen Trust:

> All right, title, and interest or other beneficial claim under the Uniform Fraudulent Transfer Act of the Debtor's estate against Thomas Salvador Martino and Pamela Cordell Martino as exist in connection with the transfer of the 37.5% interest in Gold Standard Properties, LLC (the "**LLC**") that is the subject of Adv. Pro. No.: 8:15-ap-00554-KRM.

(b) The Property is transferred subject to all liens and encumbrances, if any, and with no warranties of any kind.

(c) The Trustee shall execute any instrument necessary to effectuate the transfer to the purchaser.

5. This Order is not stayed pursuant to Fed. R. Bankr. P. 6004, and is effective immediately.

6. Upon payment of the purchase price in full by The Callen Trust, Thomas Salvador Martino and Pamela Cordell Martino shall dismiss the appeal of the Order Upon Consideration of Compromise Pleadings, as referenced in the Notice of Appeal filed in this case (Doc.141).

7. The Motion to Stay Pending Appeal (Doc.145) is denied as moot.

8. The Debtor's Motion Pursuant to 11 U.S.C. § 502(C) to Estimate Claim of Savannah Capital, LLC (Doc. 170) is denied as moot.

9. The Defendant Thomas S. Martino and Pamela C. Martino's Motion for Approval of Tolling Agreement (Doc. 39) is denied as moot.

10. This Court shall reserve jurisdiction to construe, apply, and enforce the terms and conditions of this order, and any question, issue, or controversy related to the contemplated conveyance. No formal assignment document will be executed to effectuate the assignment of the Property. The scope and extent of the Property assigned will be subject to this Court's continuing jurisdiction.

Attorney A. Christopher Kasten, II is directed to serve a copy of this order on interested parties who are non-CM/ECF users and to file a proof of service within 3 days of entry of the order.

IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN RE:
THOMAS SALVADOR MARTINO : Case No. 8:14-bk-13452-KRM

Debtor : Chapter 7

- - - - - - - - - - - - - - - -
SAVANNAH CAPITAL, LLC : Adv. No. 8:15-ap-00418-KRM
Plaintiff

THOMAS SALVADOR MARTINO
Defendant
- - - - - - - - - - - - - - - -

U.S. Courthouse
801 North Florida Avenue
Tampa, Florida 33602
Held August 18, 2015

TRANSCRIPT OF HEARING

[Re: 8:14-bk-13452] 1-Amended Objection to Debtor's Claim of Exemptions, filed by A. Christopher Kasten II on behalf of Trustee Douglas N. Menchise (Doc. #62); Response by the Debtor (Doc. #66); 2-Motion for Summary Judgment by the Trustee (Doc. #48); 3-Amended Response and Cross Motion for Summary Judgment by the Debtor (Doc. #70)

[Re: 8:15-ap-00418] Continued Preliminary Hearing on Motion to Dismiss Adversary Proceeding, filed by D. Lee Pitisci on behalf of Defendant Thomas Salvador Martino (Doc. #3)

BEFORE THE HONORABLE K. RODNEY MAY
UNITED STATES BANKRUPTCY JUDGE

PROCEEDINGS DIGITALLY RECORDED BY COURT PERSONNEL
TRANSCRIPT PRODUCED BY COURT-APPROVED TRANSCRIPTION SERVICE

**JOHNSON TRANSCRIPTION SERVICE**
7702 Lake Cypress Drive
Odessa, Florida 33556
(813) 920-1466

APPEARANCES:

| | |
|---|---|
| For the Debtor | DAVID W. STEEN, Esquire<br>David W. Steen, P.A.<br>602 S. Boulevard<br>Tampa, Florida 33606<br>813-251-3000<br>DWSteen@dsteenpa.com |
| For Savannah Capital, LLC | STEPHENIE ANTHONY, Esq.<br>ALLISON C. DOUCETTE, Esquire<br>Anthony & Partners, LLC<br>201 N. Franklin Street<br>Suite 2800<br>Tampa, Florida 33602<br>813-273-5613<br>santhony@anthonyandpartners.com<br>adoucette@anthonyandpartners.com |
| For Mr. Martino, in the Adversary | D. LEE PITISCI, Esquire<br>Pitisci Dowell Markovitz Murphy<br>101 S. Moody Avenue<br>Tampa, Florida 33609-3333<br>813-228-9233<br>leepitisci@pdmmlaw.com |
| For Doug Menchise, Ch. 7 Trustee | A. CHRISTOPHER KASTEN, Esq.<br>Bush Ross P.A.<br>P.O. Box 3913<br>Tampa, Florida 33601-3913<br>813-224-9255<br>ckasten@bushross.com |
| Also present | Andre Callen |

THE COURT: But what's on your list? Firearms --

MR. KASTEN: Firearms --

THE COURT: -- bicycle --

MR. KASTEN: Golf clubs, two bicycles, guitar, and the firearms. There's three of them, a 270 Remington rifle, Beretta 44 revolver, a Derringer pistol. And I suspect we'll be able to sort this out and get it resolved.

THE COURT: Again, just to make sure I have the list. Three firearms, two bicycles, golf clubs and a guitar?

MR. KASTEN: Correct.

THE COURT: Okay. Okay.

MR. STEEN: I'll try to work with Mr. Kasten on that.

THE COURT: Right, thank you. Now, we have a continued hearing on the motion to dismiss. And this is Savannah Capital versus the Debtor. So --

MR. PITISCI: Right. Just to refresh the Court's recollection a little bit about the last hearing, there was an argument about extending the time to file a proof of claim and also a motion to extend the time to object to the dischargeability and file the adversary complaint. And that was a fairly hotly contested issue.

And in the end, you agreed that they could go ahead and file the proof of claim indicating that --

actually I think the way you ruled was that you indicated that it was -- it ended up being an informal proof of claim, but what we were coming back on was the standing issue on both -- whether Savannah Capital is a creditor or not, and whether their proof of claim should stand, or the adversary proceeding should stand, because of the standing issue.

THE COURT: All right.

MR. PITISCI: And I think the facts are agreed to that any claim that -- or any debt that is out there is the property of Deville Corporation, and the loan is from Mr. Martino and Deville as opposed to being a loan from the shareholder which is -- there's a 50 percent shareholder which is Savannah Capital.

We did not -- or Mr. Martino did not make a loan to Savannah Capital. The loan, if it's even valid, is a loan to Deville Corp. And the proper way to handle that is, one, in State Court, two, under a derivative claim for -- a shareholder derivative claim. And the case law is replete that it's the corporation's claim, as opposed to the shareholders' claim.

THE COURT: So they're owed how much?

MR. PITISCI: Excuse me?

THE COURT: How much was owed to Savannah Capital?

MR. PITISCI: Well, they're claiming -- well, nothing is owed to Savannah Capital. Deville Corp is who

the -- is who's owed the money.

THE COURT: Oh, okay.

MR. PITISCI: So it's Deville Corp. Deville Corp apparently made a loan, if it's valid, which we're disputing that. But they made a loan. Deville Corp. made a loan to Mr. Martino.

THE COURT: I see.

MR. PITISCI: And Mr. Martino is objecting to that. But Savannah Capital is a shareholder of Deville Corp. They own 50 percent. So they're not really the creditor here at all. And in order to make a proof of claim, they have to be the creditor. And in order to object to the discharge, they have to be the creditor.

You know, all of their rights flow from their derivative claim as being the shareholder. The complaint that they allege -- you know, admits that any misappropriation and anything was done would flow back to the corporation.

And so, you know, under the circumstances, you know, it's the corporation's derivative claim that should have been brought in this particular case. And they don't have standing -- and the Court, the last time we were here indicated there was two things that we needed to talk about. One was standing --

THE COURT: Right.

MR. PITISCI: -- and, two, whether it was an informal claim to even bring. And what you said was that: I'm going to allow the informal claim but I am not validating the proof of claim on the standing issue. And that is what's going to be continued here today. And we've objected -- you gave me 30 days to object to the claim and you also said we were going to -- that was going to dovetail into the adversary, you know, proceeding.

And the case law in this area is clear that it is a corporation's claim to bring this as a derivative claim as opposed to a shareholder. A shareholder does not have a direct harm for devaluation of stock. It's the corporation's claim. So there is no direct harm, and there's a litany cases that address that.

THE COURT: Absent bankruptcy, what would the next step be. Ms. Anthony, what would your client do? Go to State Court and have the corporation dissolved?

MS. ANTHONY: Your Honor, we have different State Court counsel, so I think that would probably have been something they would have discussed more thoroughly. But to respond to Mr. Pitisci, I'm ready to do that if --

THE COURT: Well, if he's finished.

MR. PITISCI: I mean, I can --

THE COURT: What's the -- what's the loan? What was the amount of the loan?

MR. PITISCI: Well, what was -- what they say it was, was $1,028,000. And we certainly dispute that. But there are -- you know, there is the Whittle case. In re Whittle indicates that there -- in that case, there's a 50 percent owner, or shareholder in that particular case.

And the Court -- it's in Orlando, a District case. And in that particular case, the Court disallows the shareholder from making a claim because there it's a -- it should be a derivative claim.

And it was the exact -- almost the exact same facts as here where they're alleging that Mr. Martino, who was a manger, did something wrong and the shareholders tried to bring an adversary proceeding. And the Court said: It's a derivative claim; it's the corporation's right to do that. You don't have standing to do that. And the Court dismissed it.

There's also a Dinuro case that -- where almost the same facts, where a mortgage -- or a note -- was foreclosed. And they're saying that there was a mortgage that was foreclosed. And somehow that devalued their stock.

And because of that, they brought a claim as a shareholder and the Court dismissed that claim as well, saying: It's a derivative claim and you should have brought that claim as a derivative claim in State Court. And, you know, they did not do that.

So, you know, the cases are almost exact here, that they are trying to somehow circumvent and allege misconduct or fraud in order to try to circumvent filing a derivative claim. And the cases -- there's even another case that said you can't sidestep a derivative claim by alleging fraud. You can't do that.

I mean, and that's what, you know -- from the complaint, that's what they're trying to do but the complaint does not allege any direct harm. All of their devaluation of their stock is a result -- you know, is an indirect harm. That is not a direct -- a devaluation of your stock is an indirect harm based upon the fact that you are a shareholder.

And so, you know, these cases are almost amazingly on -- I mean, almost exact. And I guess people -- you know, other parties have tried to do that and the courts have clearly said: We don't want shareholders able to sue a separate entity which is a corporation. We don't want a shareholder to be able to sue, you know, a fully functioning corporation or a director directly.

I mean, you can sue -- you can force a derivative suit on behalf of the corporation because it's a corporate asset. The asset is not these shareholders; it is a corporate asset. So whatever value there would be, would go back to the corporation, not to the shareholder. It

would actually go back for the benefit of all the shareholders.

So, I mean, you know, this has been attempted, it looks like many times, and the Courts are very, very consistent that you can't -- the proper avenue is a derivative suit on behalf of the corporation that the shareholder brings.

THE COURT: Well, the problem here is that you have a corporation that's owned by the Debtor, who would be the Defendant, who's trying to get a discharge of whatever he owes on his note --

MR. PITISCI: I mean, but they -- just so you know, Your Honor, they have been involved with this corporation since, I believe, 2006. They were actually running the books since 2006, so this has been on the books since 2006, number one.

Number two, in August of last year, they sued. They, Savannah Capital, in State Court, sued Deville. At that moment in time, if they had a question about this loan that was out there and they wanted to bring a derivative case, they could have at that point in State Court. They never did.

I mean, at this point, they're really, really late to the game, you know, where all of a sudden they're coming up with what is in bankruptcy to try to not get this thing

discharged.

So they are intimately involved and understand everything that has been going on since 2006. And they didn't bring a derivative claim when they should have, if they wanted to. They brought it against Savannah Capital versus Deville. They didn't attempt, I mean, any kind of a loan -- I mean, any kind of a derivative case at that point.

And, when this bankruptcy was filed, they obviously knew what was going on, and everybody was listed as a disputed claim in the schedules, and they could have filed a derivative claim here and they didn't.

THE COURT: All right. Mrs. Anthony?

MS. ANTHONY: Yes, Your Honor. At the last hearing, I know we did actually get into the motion to dismiss, and you did in fact dismiss Deville. So I understood that we were proceeding forward because I had cited a couple cases --

THE COURT: Well, you were using Deville in this case.

MS. ANTHONY: Yes, Your Honor. And we had counts in there for dissolution, and Your Honor, had -- Your Honor did, at the last hearing, dismiss Deville Corporation, the counts against Deville Corporation. I believe one was for an accounting and one was for dissolution.

And you asked me what cases I had with respect to

the standing argument, and I had cited In re Piper, which was a Paskay decision, stating that the Court recognizes where a corporate officer causes defalcation or fraud by the corporation, that the officer may be personally liable.

And then there's also the In re Phran (phonetic) case. It's a Seventh Circuit 2000 case. That went all the way up on appeal, overruling the lower courts stating that -- and finding standing, in that there was a fiduciary duty between the Debtor and Plaintiff shareholders where the Debtor had a concentration of power and access to information of the corporation, which is similar to what we have here, Your Honor.

So I think we've met the burden of the standard for motions to dismiss. And, although you technically didn't deny their motion to dismiss the complaint against Mr. Martino, I thought we were there and that you said, when they objected to our claim, that you ultimately allowed at the last hearing, that the adversary would track along with the claim objection because it all -- our claim obviously, and the objection to the claim, the same allegations would need to be determined in connection with the --

THE COURT: My question is what is the direct -- couple questions. If there's a promissory note that is owed -- if there's a debt on a note owed to Deville by Mr. Martino, did it arise from fraud or a false financial

statement under 523(a)(2)(A)? So that's Deville's claim.

Then the question is, what is the -- Mr. Pitisci has raised the proper question, and that is a derivative claim. I'm not sure exactly how that works in the context of 523(a), but there could well be a claim by a shareholder for some other damage.

Say, a minority shareholder might have a direct claim against a majority shareholder for conduct that maybe the majority shareholder goes in and privately increases the number of shares that they own. The dilution would be a direct injury caused by the majority shareholder.

Here, I'm really puzzled as to -- I mean, the initial dynamic is they own fifty-fifty of the stock, as I understand it, the Debtor and your client. What would have to be done legally for Deville to make a claim in this case? Will that never happen?

Do you have to have a State Court order dissolving the corporation? I'm not sure what has to be done. But Deville is not here. Deville is an entity, you know, that's -- well, that just isn't here. And it hasn't filed a proof of claim, I take it.

MS. ANTHONY: Your Honor, I know we're exploring other claims and the what-ifs, but I think if we keep it simple and look at -- we have a motion to dismiss. The standard is exceedingly low, to quote Judge Jennemann in

the Mirabilis case.

And then, you know, in Ashcroft, it sets forth what the current standard is, and that is that the relief is plausible on its face and it allows the Court to draw a reasonable inference that the Debtor is liable for alleged misconduct.

I think we've pled that. I think we've gotten over the low standard of a motion to dismiss. If the Debtor wants to come back and file, you know, summary judgment or something of that nature, then so be it. But the point is we're here on a motion to dismiss; the standard is exceedingly low. We have properly pled all of the allegations necessary to get over that burden.

THE COURT: All right. You basically alleged fraud. Now, you say (a)(2). I'm assuming that's (a)(2)(A).

MS. ANTHONY: We've got (a)(2)(A), (a)(4) and (a)(6).

THE COURT: By mismanaging -- by using basically the corporate instrument to defraud another shareholder. All right. And the misconduct has to do with what? Allowing any property to be foreclosed by making the loan?

MS. ANTHONY: The conduct has to do with Mr. Martino basically used the corporate accounts to write a series of checks for his personal benefit. And then also there was a property that secured a loan that was allowed to

Case 8:16-cv-02105-VMC Document 3-5 Filed 01/10/17 Page 73 of 146 PageID 1347


go into foreclosure.

And then his related entity -- actually related to him and I believe his wife -- purchased the interests of the other secured creditor, therefore benefiting, and depleted equity that Deville had in that property.

So we are stating that the Debtor -- the Debtor was running the books, unlike what has been represented since 2011, so we didn't have access to what was really going on with the bill. And the Debtor was a family member, he was trusted, he was an attorney.

And so then we allege that he abused his position within the family and his position with Deville involved -- and this is (a)(2) -- involved knowing misstatements of material fact made with the intent to induce reliance on Savannah, actual and reasonable reliance by Savannah on representations of the Debtor. They trusted him and --

THE COURT: Are they in the same family?

MS. ANTHONY: I believe his wife is related to our client by one of the marriages of the Callen patriarch.

THE COURT: The what?

MS. ANTHONY: The father had a couple of different kind of families, and Pam was one of -- the wife's daughter? Is that how it went? It's kind of hard to follow the family tree, Your Honor, but, yes --

THE COURT: Well, you alluded to --

MS. ANTHONY: -- it is a family dispute.

THE COURT: You alluded to a position in the family.

MS. ANTHONY: Yes. That's -- his father-in-law is related -- or his father-in-law is who we represent. Part of our entity.

THE COURT: I'm going to deny the motion to dismiss. It seems to me that in a closely-held corporation, unlike a corporation with lots of shareholders, that one shareholder who handles -- who has his hands on the control of the corporation, could directly injure the other shareholder by mismanaging the corporation. Now, whether that occurred here or not is another issue.

MR. PITISCI: Your Honor, could you at least take this under advisement. The cases are directly on point. Exactly that same thing that you're indicating would have occurred.

THE COURT: I'm going to require you to answer and we'll see where we go on summary judgment.

MS. ANTHONY: Thank you, Your Honor. Would you like me to prepare the order?

THE COURT: I would. The question, really, is whether under the Bankruptcy Code there is a debt that's owed for an injury to this creditor -- or to this party, let's put it that way, to Savannah Capital.

MR. PITISCI: Correct, Your Honor, and that's --

THE COURT: That is distinct from the debts owed to the corporation. And there's an overlay here of a closely-held corporation. Ms. Anthony has alleged and has suggested there's an overlay behind the scenes of a family nature. I'm not sure if that's alleged, but you've argued that.

And so for this purpose, I think that's sufficient to at least get past a motion to dismiss. Can one shareholder of a privately-held fifty-fifty corporation who has his hands on the management of a company, manage that company in such a way as to directly prejudice his other shareholder? And I think that's -- I think that can happen.

MR. PITISCI: Well, I think it can, but Deville did not file a claim, number one. Number two, it was incumbent upon them to file the derivative claim, and every single one of these cases address exactly what you're talking about.

And if I could just maybe brief that to you and show you that there's no way -- they can't get past a motion to dismiss because they don't have standing to make -- they don't -- the debt is not to them. The debt is to Deville Corp. It's not to Savannah Capital. They have to be a creditor in order to make the claim. They are not a

creditor. They are not Deville. They are not the creditor.

THE COURT: They're a creditor to the extent that they have been injured by the conduct of the other shareholders.

MR. PITISCI: That is not -- the creditor is Deville. The creditor is Deville. The creditor is not Savannah Capital. It is Deville. They cannot -- the shareholder cannot bring a claim. Every case gets dismissed. The shareholder is not allowed to bring a claim. And because they can't bring the claim, the creditor is Deville Corp, not Savannah -- not a shareholder.

I mean, I will concede the fact that a derivative claim on behalf of Deville in the party name of Deville can be brought, but they didn't do that, and they never did that. And the fact that they are now trying to do it in a Bankruptcy Court, you know, very, very late, is improper.

I mean, they're not a creditor, based on the allegations of their complaint. They allege no set of facts that the loan wasn't from Deville -- they admit in the complaint that the loan's from Deville to Tom Martino. And if that's the case, that's the creditor. They're not the creditor.

So that's what I'm saying. I mean, they're not the creditor. The creditor can certainly object and bring a claim; there's no question about that. But they have to --

they have to somehow say they're a creditor other than them just saying they're the creditor.

I mean, they admit that the loan was from Deville to Tom Martino, not -- Savannah Capital did not loan the money to Tom Martino.

MS. ANTHONY: Your Honor, I think you ruled, but one more point is they actually scheduled Savannah as a creditor --

MR. PITISCI: It's disputed.

MS. ANTHONY: -- and I did cite a couple cases on point, so I think his comment that all cases get dismissed is not well taken, because I've cited at least two cases where courts have found -- one, a Middle District Bankruptcy Court, one a Seventh Circuit court, found that you can go after a shareholder for fraud.

MR. PITISCI: They're creditors, Your Honor. I agree with that. They're creditors. But you have to -- you have to be able to prove that you're a creditor. And they don't allege -- I mean, their complaint does not allege they're a creditor -- they're not a creditor; they're a shareholder.

THE COURT: I've ruled. If you'd give me a form of order on that. Okay, thank you.

COURTROOM CLERK: And, judge, how long do parties have to answer?

THE COURT: 21 days.

COURTROOM CLERK: Thank you, sir.

THE COURT: 21 days.

(Proceedings concluded at 3:10 p.m.)

ORDERED.

**Dated: June 28, 2016**

K. Rodney May
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

In re:

Chapter 7

THOMAS SALVADOR MARTINO,

Case No.: 8:14-bk-13452-KRM

Debtor.
_______________________________________/

**ORDER SUSTAINING OBJECTION TO**
**PROOF OF CLAIM OF SAVANNAH CAPITAL, LLC**
(Doc. No. 91)

THIS CASE came before the Court for hearing on June 9, 2016 to consider Thomas Salvador Martino's Motion for Summary Judgment as to All Counts of the Complaint and as to His Objection to Savannah Capital's Proof of Claim for Lack of Standing (the "Motion for Summary Judgment") filed in Adversary Proceeding 15-00418-KRM (Doc. No. 56). The Motion for Summary Judgment pertained also to the Objection to Proof of Claim of Savannah Capital, LLC (the "Objection"), filed by Thomas Salvador Martino (the "Debtor") on July 15, 2015. (Doc. No. 91). The Court, having reviewed the Motion for Summary Judgment, the responses thereto and having considered the record and argument of counsel, finds that the Motion for Summary Judgment should be granted, and the Objection should be sustained. For reasons stated orally and recorded in open court that shall constitute the decision of the court, it is

**ORDERED** that:

1. The Motion for Summary Judgment as to the Objection is granted.

2. The Objection is sustained.

3. Claim 7-1 of Savannah Capital, LLC is hereby disallowed in its entirety.

****

Attorney Lori V. Vaughan is directed to serve a copy of this order on non-cm/ecf interested parties and file a proof of service within three days of entry of this order.

**IN THE UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

IN RE:

Case No. 8:14-BK-13452
Chapter 7

THOMAS SALVADOR MARTINO,

Debtor.
_________________________________/

SAVANNAH CAPITAL, LLC,

Plaintiff,

v.

THOMAS SALVADOR MARTINO, DEVILLE CORP.,

Defendants.
__________________________________________/

**COMPLAINT OBJECTING TO DISCHARGEABILITY**
**OF SAVANNAH CLAIM AND FOR OTHER RELATED RELIEF**

Plaintiff, Savannah Capital, LLC ("Savannah"), hereby sues Thomas Salvador Martino (the "Debtor"), and DeVille Corp. ("DeVille"), and alleges:

**A. Parties, Jurisdiction and Venue**

1. On November 14, 2014, the Debtor filed his voluntary Chapter 7 petition for protection from creditors (the "Petition") pursuant to Bankruptcy Code § 301 and other applicable law. The Petition was filed in the United States Bankruptcy Court for the Middle District of Florida, Tampa Division, and thereby initiated the bankruptcy case styled, In re Thomas Salvador Martino., Case No.: 8:14-bk-13452-CPM (this "Liquidation").

2. Savannah is and has at all times relevant hereto been a foreign limited liability corporation.

3. Deville is a Florida corporation.

4. This Court possesses "core" jurisdiction over this adversary proceeding pursuant to 28 U.S.C § 157(b)(2)(I), (O) and 28 U.S.C. § 1334, and related law.

5. Venue properly lies before this Court pursuant to 28 U.S.C. § 1409 and other applicable law.

**B. <u>Background Allegations</u>**

6. Since July 26, 1985, the Debtor has been a member of The Florida Bar in good standing. All times relevant hereto, the Debtor has been engaged in the private practice of law.

7. The Debtor was formerly a relative by marriage of the equity interest holders of Savannah (the "Savannah Principals"). While a member of family of the Savannah Principals, the Debtor represented to the Savannah Principals that he was skilled and knowledgeable not only in law but in business administration and real estate management.

8. Savannah is owned by sixteen (16) children and stepchildren of Robinson Callen, one of whom is Pam Martino, the spouse of the Debtor (together, the "Callen Group"). The management of Savannah has been operated by Mr. Callen as managing member since 2012, with proper attention to the best interests of Savannah as a going concern. Given the family-related aspects of this project, this is not always a cut and dried objective.

9. Upon information and belief, in connection with the formation of DeVille, the Callen Group and the Debtor agreed that the Callen Group, through a corporate entity, would own half of DeVille, and the Debtor and his wife, Pamela Martino, the then stepdaughter of Robinson Callen, would own the other half. However, it was also agreed that the Debtor would have ongoing responsibility for the management and control of DeVille by virtue of his superior business and legal skills, not only as a trusted lawyer but as a relative by marriage as well.

10. Significantly, at no point during the vernal stage of the parties' relationship did the Debtor disclose the existence of financial difficulty or an intent to utilize DeVille as his own personal source of investment or personal fund. Instead, the Debtor knowingly accepted all of the responsibilities and duties conferred upon him by the Savannah Principals.

11. Upon effectively taking control of DeVille, the Debtor manipulated the business and financial activities of DeVille for his own personal lucre at the expense of Savannah and the former family members, who had trusted him.

12. While in de facto control of DeVille, the Debtor engaged in conduct that was improper (the "Actionable Misconduct"), that included the following:

a. funding a loan to himself for $1,028,162, through sporadic checks written out of the DeVille bank account by Martino to himself and related companies (the "Loan"), representative copies of which are attached hereto as Exhibit "A";

b. failing to account as requested in connection with the business and financial operations of DeVille;

c. permitting secured loans owed by DeVille to go into default in such a manner that valuable property located at 128-130 Second Avenue North, Nashville, Tennessee (the "Second Avenue Property") was lost at foreclosure thus diminishing the net worth of DeVille; and

d. failing to account to Savannah or DeVille for in the inappropriate actions and lost opportunities resulting from the apparent bankruptcy of DeVille.

13. Attached hereto as Exhibit "B" is the warranty deed relating to the Second Avenue Property that the Debtor permitted to be foreclosed by secured creditors. These actions not only

depleted the equity in DeVille by at least $2,000,000, but also enabled an entity related to the Debtor and his spouse to acquire the loan on the Second Avenue Property from the lender just prior to foreclosure for substantially less than fair value of the Second Avenue Property, and resell it for personal gain.

14. Notwithstanding efforts of the Debtor to frustrate the flow of information from DeVille to Savannah, Savannah was able to determine that there was no "loan" in any traditional sense by DeVille to Martino. There are no loan documents that have ever been produced, and the relevant records in Savannah's possession instead reflect use by the Debtor of Savannah as a personal source of funds for himself and his law firm.

15. The Savannah Principals, individually and on behalf of Savannah, reposed unique trust and confidence in the Debtor in connection with all of his managerial responsibilities involving DeVille by virtue of his status and experience as a member of The Florida Bar. This was reflected in the degree of control he had over the business of DeVille. However, it became apparent that the Debtor had engaged in wrongful conduct toward Savannah regarding its investment in DeVille.

16. On August 27, 2014, Savannah initiated an action (the "Records Action") against DeVille in the Thirteenth Judicial Circuit in and for Hillsborough County, Florida (the "State Court"), styled Savannah Capital, LLC, v. DeVille Corp., Case No. 2014-CA-08669 (a) seeking determination that Savannah possesses a fifty percent (50%) equity interest in DeVille, (b) seeking access to records under Florida Statutes § 605.0410 and its predecessor statute. A copy of the complaint initiating the Records Action is attached hereto as Exhibit "C." Under the management of the Debtor, DeVille resisted the relief requested in the Records Action.

17. In furtherance of a pattern of concealment, delay, and obfuscation consistent with a pattern of defrauding Savannah, the Debtor did not sufficiently comply with records requests in the

context of the Records Action. This confirms legitimate suspicions by Savannah that its investment in DeVille has been and is being willfully dissipated by the Debtor; however, this pattern has made it difficult to know the exact circumstances of DeVille at present.

18. On November 14, 2014, the Debtor initiated this "Liquidation" by filing his voluntary petition for protection from creditors under Chapter 7 of the Bankruptcy Code. Although the scope and extent of the automatic stay imposed under Bankruptcy Code § 362(a) maybe perceived differently between Savannah and the Debtor, the pendency of the Liquidation may provide a more rapid alternative for Savannah to adjudicate some of the facts, issues, and controversies relating to DeVille. However, the Debtor's effort to escape liability to DeVille, the Savannah Principals, and Savannah in the context of this Liquidation is a further breach of his duties to DeVille and Savannah.

19. On December 10, 2014, the Debtor filed his schedules and statement of financial affairs (collectively, the "Schedules") [Doc. 9]. The Debtor scheduled Savannah as both a secured and unsecured creditor on the Schedules, however, Savannah did not receive notice of the Debtor's Liquidation until service of the Schedules, after the initial 341 Meeting of Creditors.

20. In the 341 Meeting of Creditors held on February 11, 2015, the Debtor described the scheduled loan of DeVille as "bogus," and indicated that there was no documentation to support it. Contrary to the Debtor's assertions, his withdraw of over $1,000,000 from DeVille from its formation to present is documented by his own handwriting, with "loan" noted on checks to the Debtor individually and scattered through DeVille's bank account statements, which are in the Debtor's possession and control.

21. In addition, the Debtor signed tax returns on behalf of DeVille that included the Debtor's loan as an asset of DeVille in accordance with standard accounting principles. A copy of DeVille's 2006 tax return is attached hereto as Exhibit "D."

22. The accounting of the Loan is further evidenced by accounting records recently produced to the Trustee by the Debtor, showing, even under the Debtor's own records kept as president of DeVille, as of 2010, the Debtor owed at least $930,036.92 to DeVille. A copy of the "General Ledger Trial Balance" for 2010, page 004, is attached hereto as Exhibit "E."

23. Following the initiation of the Liquidation, one of Savannah's attorneys, Allison C. Doucette, attempted without any success to schedule the examination of the Debtor under Federal Rule of Civil Procedure 2004. This has been received by Savannah as consistent with the Debtor's non-compliance in the Records Action, and the failure to provide notice to Savannah of the first meeting of creditors.

24. The Debtor is and has been hostile to Savanah and all of its principals other than his wife for some time. In a pleading filed by the Debtor in this Liquidation on April 24, 2015, the Debtor asserted that "The manager of Savannah, Mr. Martino's father-in-law, has vowed on more than one occasion, to destroy Mr. Martino…" The mischief of the Debtor in the handling of the Records Action and Liquidation-related efforts is reflective of the Debtor's belief that he is experiencing a vendetta scenario with Savannah and his in-laws. Upon information and belief, his own hostility toward his in-laws has been used by the Debtor as a justification for his fraud and subsequent concealment of fraud.

25. Among the actions of the Debtor that are particularly reflective of hostility toward his in-laws is the fact that the Debtor consented in the context of this Liquidation to an extension of the deadline to object to dischargeability for another unscheduled creditor in this Liquidation, while on the same day filing a motion objecting to comparable relief for Savannah.

26. Savannah is a creditor of the Debtor, and its claim against the Debtor (the "Savannah Claim") is of an amount not less than $1,514,081, based upon the Actionable Misconduct, including

one-half of the Loan, and one-half of the equity lost in the Second Avenue Property. The exact amount of the Savannah Claim cannot be determined in light of the Debtor's conduct in the Records Action.

27. The Schedules list the Debtor as owning a fifty (50%) percent interest in DeVille by the entireties, valued at $0. The Schedules also list Savannah as a general unsecured creditor of the Debtor with a claim of indeterminate amount, for "claims for monies owed and mismanagement." Although scheduled, the Savannah Claim is listed as contingent, unliquidated, and disputed. Finally, the Schedules list DeVille as a creditor holding a claim against the Debtor for $1,028,162, for a "loan."

28. When read together, Savannah views the Schedules as reflecting that the Debtor recognizes that he liable to Savannah for improperly utilizing the resources of DeVille to make an unauthorized loan from DeVille to himself personally in the minimum of $1,028,162. However, as reflected in the Records Action, Savannah believes that this is just the most flagrant of the Debtor's mismanagement activities.

29. Upon information and belief, the Debtor continues to operate DeVille even following the initiation of the Liquidation, a task best left to a fiduciary in light of the legal, business, financial, and familial tensions involving DeVille.

30. Out of concern that efforts be made to resolve the disputes involving the Debtor and his in-laws relating to Savannah and DeVille, the undersigned endeavored over a series of months to discuss alternative dispute resolution and mediation in particular, with the consent and approval of Savannah. It was not until the days leading up to a hearing on a motion to extend time for Savannah to file a proof of claim in this Liquidation that the Debtor definitively slammed the door on any such dialogue, as evidenced by the timing set forth in the e-mail string attached as Exhibit "F."

31. All conditions precedent to the bringing of this adversary proceeding have been satisfied by Savannah, have been waived by the Defendants, or have occurred.

**Count I: Objection to Dischargeability of a Debt Pursuant to Section 523(a)(2)**

32. This is an action to determine the dischargability of the amounts owing by the Debtor to Savannah, that being the Savannah Claim pursuant to Section 523(a)(2).

33. Savannah realleges and incorporates the allegations in paragraphs 1 through 31 as though fully set forth herein. The Debtor's conduct in abusing his position within the family of the Savannah Principals, and his position with DeVille, involved knowing misstatements of material fact made with the intent to induce the detrimental reliance of Savannah, coupled with the actual and reasonable reliance by Savannah on the representations of the Debtor, with the knowledge of the Debtor, and with the Debtor's intentional breach of his obligations and representations to the Savannah Principals regarding DeVille, such that Savannah has been harmed to the extent of one half of the damage caused by the Debtor to DeVille.

34. Pursuant to Bankruptcy Code § 523(a)(2), the foregoing indicates that the Savannah Claim is non-dischargeable by reason of the Actionable Misconduct as defined above in the preceding paragraph hereof.

WHEREFORE, Savannah respectfully requests that this Court:

a. determine that the Savannah Claim is non-dischargeable as against the Debtor;

b. enter a judgment in favor of Savannah and against the Debtor for the amount of the Savannah Claim; and

c. grant to Savannah any other relief measurable as permitted pursuant to the Actionable Misconduct.

Case 8:16-cv-02105-VMC Document 15-6 Filed 01/20/17 Page 89 of 193 PageID 1083

**Count II: Objection to Dischargeability of a Debt Pursuant to Section 523(a)(4)**

35. This is an action to determine the dischargability of the amounts owing by the Debtor to Savannah, that being the Savannah Claim pursuant to Section 523(a)(4).

36. Savannah realleges and incorporates the allegations in paragraphs 1 through 31 as though fully set forth herein. The Debtor's conduct in abusing his position within the family of the Savannah Principals, and his position with DeVille, involved fraud and defalcation while acting in a fiduciary capacity for DeVille, embezzlement involving assets of DeVille used to fund what was charitably described in the Schedules as a "loan" to the Debtor, and larceny, such that Savannah has been harmed to the extent of one half of the damage caused by the Debtor to DeVille.

37. Pursuant to Bankruptcy Code § 523(a)(4), the foregoing indicates that the Savannah Claim is non-dischargeable by reason of the Actionable Misconduct as defined above in the preceding paragraph hereof.

WHEREFORE, Savannah respectfully requests that this Court:

a. determine that the Savannah Claim is non-dischargeable as against the Debtor;

b. enter a judgment in favor of Savannah and against the Debtor for the amount of the Savannah Claim; and

c. grant to Savannah any other relief measurable as permitted pursuant to the Actionable Misconduct..

**Count III: Objection to Dischargeability of a Debt Pursuant to Section 523(a)(6)**

38. This is an action to determine the dischargability of the amounts owing by the Debtor

to Savannah, that being the Savannah Claim pursuant to Section 523(a)(6).

39. Savannah realleges and incorporates the allegations in paragraphs 1 through 31 as though fully set forth herein. The Debtor's conduct reflects his willful and malicious injury to Savannah's investment in DeVille, such that Savannah has been harmed to the extent of one half of the damage caused by the Debtor to DeVille.

40. Pursuant to Bankruptcy Code § 523(a)(6), the foregoing indicates that the Savannah Claim is non-dischargeable by reason of the Actionable Misconduct as defined above in the preceding paragraph hereof.

WHEREFORE, Savannah respectfully requests that this Court:

a. determine that the Savannah Claim is non-dischargeable as against the Debtor;

b. enter a judgment in favor of Savannah and against the Debtor for the amount of the Savannah Claim; and

c. grant to Savannah any other relief measurable as permitted pursuant to the Actionable Misconduct.

**Count IV: Judicial Dissolution of DeVille**

41. This is an action for judicial dissolution of DeVille pursuant to Florida Statutes § 617.1430.

42. Savannah realleges and incorporates the allegations in paragraphs 1 through 31 as though fully set forth herein.

43. The assets of DeVille are being misappropriated and wasted by the Debtor, as evidenced by the Actionable Misconduct.

44. As a result, it is in the best interests of DeVille and its shareholders if DeVille is

judicially dissolved.

45. The Debtor, as 50% shareholder along with his spouse, will not consent to voluntary dissolution of DeVille, therefore making it necessary to judicially dissolve the corporation.

WHEREFORE, Savannah requests the judicial dissolution of DeVille in order to discontinue the waste and misappropriation of DeVille's assets, attorneys' fees and costs, and for such additional relief that this Court deems just and proper.

**Count V: Accounting**

46. This is an action for accounting against the Debtor and DeVille.

47. Savannah realleges and incorporates the allegations in paragraphs 1 through 31 as though fully set forth herein.

48. The assets of DeVille are being misappropriated and wasted by the Debtor, as evidenced by the Actionable Misconduct.

49. The Debtor shares a fiduciary relationship with DeVille and Savannah by virtue of his position as president of DeVille.

50. An accounting is necessary to identify and quantify the exact amount of funds diverted by the Debtor from DeVille, and other expenditures directed by the Debtor as president of DeVille, in furtherance of the Actionable Conduct.

51. Savannah lacks an adequate remedy at law with respect to its request for an accounting.

WHEREFORE, Savannah requests an accounting of all DeVille's assets, liabilities,

Case 8:16-cv-02105-VMC Document 15-3 Filed 01/17/17 Page 12 of 113 PageID 1406

payments, and other expenditures, and for such additional relief that this Court deems just and proper.

/s/ John A. Anthony
**JOHN A. ANTHONY, ESQUIRE**
Florida Bar Number: 0731013
janthony@anthonyandpartners.com
**ALLISON C. DOUCETTE, ESQUIRE**
Florida Bar Number: 0085577
Anthony & Partners, LLC
201 N. Franklin Street, Suite 2800
Tampa, Florida 33602
Telephone: 813/273-5616
Attorneys for Savannah Capital, LLC

# Exhibit "A"

ACCOUNT: [redacted]






# Posted 7/03/07 $14,106.22




# Posted 7/09/07 $24,894.81




#1061 Posted 7/02/07 $15,005.97




#1062 Posted 7/10/07 $5,000.00




#1063 Posted 7/17/07 $21,212.95




#1064 Posted 7/24/07 $15,005.97




#1066 Posted 7/30/07 $2,500.00

ACCOUNT: [redacted]



DEVILLE CORP.
DEPOSIT TICKET
PLATINUM BB Bank.
29,519.81
[redacted]

# ✓ Posted 2/01/08 $29,519.81

DEVILLE CORP.
2-7-08
DEPOSIT TICKET
PLATINUM BB Bank.
14,106.22
[redacted]

# ✓ Posted 2/07/08 $14,106.22

001-17929

Savannah Capital

DEVILLE CORP.
DEPOSIT TICKET
PLATINUM BB Bank.
562,500.00
[redacted]

# ✓ Posted 2/22/08 $562,500.00

4101.00
15 441.39

DEVILLE CORP.
PLATINUM BB Bank.
[redacted]

#1096 ✓ Posted 2/12/08 $19,542.39

001-14860-

DEVILLE CORP.
PLATINUM BB Bank.
[redacted]

#1097 ✓ Posted 2/19/08 $3,677.23

Roof repair Broadway
404-56240

DEVILLE CORP.
PLATINUM BB Bank.
[redacted]

#1098 ✓ Posted 2/20/08 $2,700.00

DEVILLE CORP.
PLATINUM BB Bank.
[redacted]

#1099 ✓ Posted 2/19/08 $15,005.97

DEVILLE CORP.
2-22-08
$ 562,500.00
PLATINUM BB Bank.
[redacted]

#1100 ✓ Posted 2/25/08 $562,500.00

001-12320-96

P 4556.86
I 10449.11

4

ACCOUNT: [redacted] PAGE : 3 of 4

Broadway
400-30125 12,043.83
400-30430 2,042.39

2nd Ave
400-30125 30,725.00
400-30430 1,644.81

| Check | Posted | Amount | Notes |
|---|---|---|---|
| # | Posted 4/01/08 | $46,476.03 | Deposit ticket, Platinum Bank |
| # | Posted 4/03/08 | $125,625.00 | Savannah Capital; 001-17929-00 |
| # | Posted 4/17/08 | $2,850.00 | 400-30125 2nd Ave |
| #1103 | Posted 4/02/08 | $1,154.19 ✓ | 002-23490 |
| #1104 | Posted 4/15/08 | $450.00 ✓ | 414-545 20; Florida Dept of State |
| #1105 | Posted 4/08/08 | $13,590.00 ✓ | 002-23490 |
| #1106 | Posted 4/10/08 | $3,677.23 ✓ | 002-21605 |
| #1107 | Posted 4/07/08 | $25.00 ✓ | 412-56860 |
| #1109 | Posted 4/08/08 | $129.28 ✓ | 404-53180 |
| #1110 | Posted 4/16/08 | $15,752.96 ✓ | P 002-25005 4101.00; I 416-54180 11651.96 |
| #1111 | Posted 4/11/08 | $125,625.00 ✓ | 001-12320-90 |
| #1112 | | | 404-53180 |

DEVILLE CORP.
PLATINUM Bank

Feb 11, 2015 13:35 | Deville Corporation | Page: 0007

## General Ledger Trial Balance

| Account No / Description | Beginning Balance | | Total | Net Change | Ending Balance | Budget | Prior Year |
|---|---|---|---|---|---|---|---|

[redacted]
Prepaid Rent

| Trx Date | DR Amount | CR Amount | Runng Bal | Source | Reference |
|---|---|---|---|---|---|
| 09/30/08 | | 14,106.22 | -14,106.22 | 09-09 | PREPAID OCT RENT BROADWAY |
| 09/30/08 | | 29,519.81 | -43,626.03 | 09-10 | PREPAID OCT RENT 2ND AVENUE |
| 10/31/08 | 29,519.81 | | -14,106.22 | 10-01 | RENT & INS 2ND AVENUE |
| 10/31/08 | 14,106.22 | | .00 | 10-01 | RENT & INS BROADWAY |
| 10/31/08 | | 14,106.22 | -14,106.22 | 10-09 | PREPAID RENT BROADWAY NOVEMBER |
| 11/30/08 | 29,519.81 | | 15,413.59 | 11-01 | RECORD RENT & INSUR 2ND AVE |
| 11/30/08 | 14,106.22 | | 29,519.81 | 11-01 | RECORD RENT & INSUR BROADWAY |
| 11/30/08 | | 29,519.81 | .00 | 11-01 | RECORD RENT 2ND AVENUE |
| 12/31/08 | | 2,850.00 | -2,850.00 | 12-01 | RECORD RENT 2ND AVENUE |

| Account No / Description | Beginning Balance | | Total | Net Change | Ending Balance | Budget | Prior Year |
|---|---|---|---|---|---|---|---|
| [redacted] | .00 | Debit | .00 | -2,850.00 | -2,850.00 | | |
| Security Dep Tenants | | Credit | 2,850.00 | | | | |

| Trx Date | DR Amount | CR Amount | Runng Bal | Source | Reference |
|---|---|---|---|---|---|
| 04/30/08 | | 2,850.00 | -2,850.00 | 04-11 | RECL SEC DEP-MAC PRESENTS-BRWY |

| Account No / Description | Beginning Balance | | Total | Net Change | Ending Balance | Budget | Prior Year |
|---|---|---|---|---|---|---|---|
| [redacted] | -2,900,773.08 | Debit | 53,877.42 | 49,212.00 | -2,851,561.08 | | 1,975,356 |
| Platinum/Grandbridge | | Credit | 4,665.42 | | | | |

| Trx Date | DR Amount | CR Amount | Runng Bal | Source | Reference |
|---|---|---|---|---|---|
| 01/31/08 | 4,101.00 | | -2,896,672.08 | 01-07 | CK 1092 REGIONS BANK |
| 02/29/08 | 4,101.00 | | -2,892,571.08 | 02-07 | CK 1096 REGIONS BANK |
| 03/31/08 | 4,101.00 | | -2,888,470.08 | 03-08 | CK 1101 REGIONS BANK |
| 04/30/08 | 4,101.00 | | -2,884,369.08 | 1110 | REGIONS BANK |
| 05/31/08 | 4,101.00 | | -2,880,268.08 | 1121 | REGIONS BANK |
| 06/30/08 | 4,101.00 | | -2,876,167.08 | 06-11 | RECLASS MORTGAGE PAYMENTS |
| 06/30/08 | | 4,665.42 | -2,880,832.50 | 06-11 | RECLASS MORTGAGE PAYMENTS |
| 06/30/08 | 4,665.42 | | -2,876,167.08 | 1133 | PINNACLE BANK |
| 07/31/08 | 4,101.00 | | -2,872,066.08 | 07-13 | CK 1134 REGIONS BANK |
| 08/31/08 | 4,101.00 | | -2,867,965.08 | 1140 | REGIONS BANK |
| 09/09/08 | 4,101.00 | | -2,863,864.08 | 1145 | REGIONS BANK |
| 10/31/08 | 4,101.00 | | -2,859,763.08 | 1152 | REGIONS BANK |
| 11/30/08 | 4,101.00 | | -2,855,662.08 | 1161 | REGIONS BANK |
| 12/10/08 | 4,101.00 | | -2,851,561.08 | 1175 | REGIONS BANK |

| Account No / Description | Beginning Balance | | Total | Net Change | Ending Balance | Budget | Prior Year |
|---|---|---|---|---|---|---|---|
| [redacted] | -1,871,369.67 | Debit | 57,087.43 | 52,986.43 | -1,818,383.24 | | -1,871,369 |
| Mortgage Loan | | Credit | 4,101.00 | | | | |

| Trx Date | DR Amount | CR Amount | Runng Bal | Source | Reference |
|---|---|---|---|---|---|
| 01/31/08 | 4,531.50 | | -1,866,838.17 | 01-08 | CK 1091 PINNACLE BANK |
| 02/29/08 | 4,556.86 | | -1,862,281.31 | 02-08 | CK 1099 PINNACLE BANK |
| 03/31/08 | 5,254.86 | | -1,857,026.45 | 03-09 | CK 1102 PINNACLE BANK |
| 04/30/08 | 4,611.78 | | -1,852,414.67 | 1114 | PINNACLE BANK |
| 05/31/08 | 4,972.06 | | -1,847,442.61 | 1123 | PINNACLE BANK |
| 06/30/08 | 4,665.42 | | -1,842,777.19 | 06-11 | RECLASS MORTGAGE PAYMENTS |
| 06/30/08 | | 4,101.00 | -1,846,878.19 | 06-11 | RECLASS MORTGAGE PAYMENTS |
| 06/30/08 | 4,101.00 | | -1,842,777.19 | 1131 | REGIONS BANK |
| 07/31/08 | 5,024.26 | | -1,837,752.93 | 07-10 | WIRE PINNACLE BANK |
| 08/31/08 | 4,719.66 | | -1,833,033.27 | 1142 | PINNACLE BANK |
| 09/17/08 | 4,746.08 | | -1,828,287.19 | 1150 | PINNACLE NATIONAL BANK |
| 10/31/08 | 5,102.75 | | -1,823,184.44 | 1155 | PINNACLE NATIONAL BANK |
| 11/30/08 | 4,801.20 | | -1,818,383.24 | 1170 | PINNACLE NATIONAL BANK |

| Account No / Description | Beginning Balance | | Total | Net Change | Ending Balance | Budget | Prior Year |
|---|---|---|---|---|---|---|---|
| [redacted] | .00 | Debit | .00 | -846,059.85 | -846,059.85 | | |
| Mortgage Loan | | Credit | 846,059.85 | | | | |

| Trx Date | DR Amount | CR Amount | Runng Bal | Source | Reference |
|---|---|---|---|---|---|
| 10/31/08 | | 846,059.85 | -846,059.85 | 10-11 | RECLASS SAVANNAH CAPITAL I/C |

| Account No / Description | Beginning Balance | | Total | Net Change | Ending Balance | Budget | Prior Year |
|---|---|---|---|---|---|---|---|
| [redacted] | .00 | Debit | .00 | .00 | .00 | | 25,000 |
| Loans from Shareholders | | Credit | .00 | | | | |
| [redacted] | -13,875.00 | Debit | 14,312.50 | 13,875.00 | .00 | | -13,875 |
| Due to Thomas Martino | | Credit | 437.50 | | | | |

| Trx Date | DR Amount | CR Amount | Runng Bal | Source | Reference |
|---|---|---|---|---|---|
| 01/31/08 | | 62.50 | -13,937.50 | 01-17 | RECORD INTEREST SHAREHOLDERS |
| 02/29/08 | | 62.50 | -14,000.00 | 02-14 | RECORD INT SHAREHOLDERS |
| 03/31/08 | | 62.50 | -14,062.50 | 03-10 | RECORD INT SHAREHOLDER LOANS |
| 04/30/08 | | 62.50 | -14,125.00 | 04-09 | RECORD SHAREHOLDER INTEREST |
| 05/31/08 | | 62.50 | -14,187.50 | 05-08 | RECD INT SHAREHOLDER LOANS |
| 06/30/08 | | 62.50 | -14,250.00 | 06-08 | RECORD INTEREST |
| 07/31/08 | | 62.50 | -14,312.50 | 07-07 | RECORD INT SHAREHOLDER LOAN |
| 08/31/08 | 14,312.50 | | .00 | 08-09 | MV SHAREHOLDER LOAN TO RECV |

ACCOUNT: [redacted]



400-30125 2nd Ave

DEVILLE CORP
DEPOSIT TICKET
DATE 10-3-08
$ 2,850.00
PLATINUM BANK
[redacted]

# Posted 10/03/08 $2,850.00

001-17929 Savannah Cap.

DEVILLE CORP.
DEPOSIT TICKET
$ 50,000.00
PLATINUM BANK
[redacted]

# Posted 10/27/08 $50,000.00

400-30125 Broadway

DEVILLE CORP.
DEPOSIT TICKET
DATE 10-28-08
$ 2,850.00
PLATINUM BANK
[redacted]

# Posted 10/28/08 $2,850.00

Broadway Nor
002-23530

DEVILLE CORP.
DEPOSIT TICKET
DATE 10-30-08
$ 14,106.22
PLATINUM BANK
[redacted]

# Posted 10/30/08 $14,106.22

002-25005
4101.00
416-54180
10273.76

DEVILLE CORP
10-3-08
Regions $14,374.76
Fourteen thousand three hundred seventy four and 76/100
PLATINUM BANK
[redacted]

#1152 ✓ Posted 10/07/08 $14,374.76

002-20200

DEVILLE CORP.
10-7-08
Travelers Cas & Surety Co. $1,292.11
One thousand two hundred ninety two and 11/100
PLATINUM BANK
[redacted]

#1153 ✓ Posted 10/14/08 $1,292.11

404-53680

DEVILLE CORP
10-9-08
Bobby Duncan Construction & Restoration $485.00
Four hundred eighty five and 00/100
PLATINUM BANK
Bobby's Spirit Bar
[redacted]

#1154 ✓ Posted 10/28/08 $485.00

~~002-25010~~
~~9903.22~~
5102.75
416-54180
9903.22

DEVILLE CORP.
10-15-08
Pinnacle National Bank $15,005.97
Fifteen thousand five and 97/100
PLATINUM BANK
[redacted]

#1155 ✓ Posted 10/21/08 $15,005.97

002-21605

DEVILLE CORP.
Metropolitan Trustee
three thousand six hundred seventy seven
PLATINUM BANK
407 Broadway
[redacted]

#1156 ✓ Posted 10/28/08 $3,677

~~404~~ 002-21605

DEVILLE CORP.
10-21-08
Metropolitan Trustee $524.14
Five hundred twenty four and 14/100
PLATINUM BANK
406 Broadway
[redacted]

#1157 ✓ Posted 10/28/08 $524.14

404-53180

DEVILLE CORP.
10-21-08
Nashville Machine Elevator Co. Inc. $129.21
One hundred twenty nine and 21/100
PLATINUM BANK
407 Broadway
[redacted]

✓

001-12320-90

DEVILLE CORP.
1160
Thomas S. Martin
$ 50,000.00
Fifty thousand and no/100
PLATINUM BANK
Loan
[redacted]

APPENDIX PAGE 95

ACCOUNT: [redacted] PAGE : 2 of 2

Broadway




# Posted 5/06/09 $2,850.00

Broadway




# Posted 5/06/09 $14,106.22

2nd Ave




# Posted 5/06/09 $29,519.81




#1219 Posted 5/05/09 $137.68




#1220 Posted 5/11/09 $9,823.18




#1221 Posted 5/08/09 $2,500.00




#1223 Posted 5/26/09 $15,005.97

8

**PLATINUM Bank**

PAGE: 1
ACCOUNT: [redacted]
DOCUMENTS: 11

DEVILLE CORP
2018 EAST 7TH AVENUE SUITE 101
TAMPA FL 33605

30
3
8

PLATINUM PERFORMANCE ACCOUNT [redacted]

| DESCRIPTION | DEBITS | CREDITS | DATE | BALANCE |
|---|---|---|---|---|
| BALANCE LAST STATEMENT ............................... | | | 07/31/09 | 7,474.42 |
| CHECK # 1237 | 529.03 | | 08/03/09 | 6,945.39 |
| CHECK # 1236 | 4,312.00 | | 08/04/09 | 2,633.39 |
| DEPOSIT | | 2,850.00 | 08/05/09 | 5,483.39 |
| DEPOSIT | | 13,086.53 | 08/05/09 | 18,569.92 |
| DEPOSIT | | 29,519.81 | 08/05/09 | 48,089.73 |
| CHECKING ACCOUNT TRANSFER TRANSFER TO GOLD STANDARD (LOAN) | 1,000.00 | | 08/05/09 | 47,089.73 |
| CHECKING ACCOUNT TRANSFER TRANSFER TO GOLD STANDARD PROP (LOAN) | 1,000.00 | | 08/06/09 | 46,089.73 |
| CHECKING ACCOUNT TRANSFER TRANSFER TO GOLD STANDARD PROP (LOAN) | 1,000.00 | | 08/07/09 | 45,089.73 |
| CHECKING ACCOUNT TRANSFER FROM GOLD STANDARD PER TOM MARTINO (Repay above loans) | | 3,000.00 | 08/10/09 | 48,089.73 |
| Regions Bank swap pmt | 12,117.57 | | 08/10/09 | 35,972.16 |
| CHECK # 1238 | 100.00 | | 08/10/09 | 35,872.16 |
| REDEPOSIT RTCB | | 2,85 | 08/11/09 | 38,722.16 |
| RTCB - MAC PRESENTS - NSF | 2,850.00 | | 08/11/09 | 35,872.16 |
| CHECKING ACCOUNT TRANSFER TO GOLD STANDARD PROPER' (LOAN) | 10,000.00 | | 08/14/09 | 25,872.16 |
| CHECKING ACCOUNT TRANSFER TRANSFER TO GOLD STANDA PER TOM (LOAN) | 10,000.00 | 9 | 08/17/09 | 15,872.16 |
| CHECK # 1241 | 372.24 | | 08/18/09 | 15,499.92 |
| CHECK # 1242 | 9,545.18 | | 08/18/09 | 5,954.74 |
| CHECK # 1240 | 1,714.00 | | 08/20/09 | 4,240.74 |
| CHECK # 1243 | 15,005.97 | | 08/25/09 | 10,765.23- |
| CHECKING ACCOUNT TRANSFER TRANSFER THOMAS MARTINO ACCT 001-12320-90 | | 11,000.00 (LOAN) | 08/26/09 | 234.77 |
| Paid Overdraft Item Fee | 30.00 | | 08/26/09 | 204.77 |
| CHECK # 1239 | 153.00 | | 08/26/09 | 51.77 |
| BALANCE THIS STATEMENT ............................... | | | 08/31/09 | 51.77 |

| | | | | |
|---|---|---|---|---|
| TOTAL CREDITS | (6) | 62,306.34 | AVG AVAILABLE BALANCE | 13,950.47 |
| TOTAL DEBITS | (16) | 69,728.99 | | |

* * * C O N T I N U E D * * *

FDIC

ACCOUNT: [redacted] 



\# Posted 10/02/09 $29,519.81



\# Posted 10/05/09 $16,956.22

002-25005 4101.00




#1256 Posted 10/09/09 ✓ $9,270.86




#1257 Posted 10/14/09 ✓ $137.68




#1258 Posted 10/14/09 ✓ $150.42




#1259 Posted 10/15/09 ✓ $1,714.00




#1260 Posted 10/14/09 ✓ $1,437.33




#1262 Posted 10/14/09 ✓ $5,000.00

10



#1264 Posted 10/19/09 ✓ $1,500.00

TS martino

001-12320-90

ACCOUNT: [redacted]






\# Posted 11/02/09 $14,106.22




\# Posted 11/03/09 $2,850.00




\# Posted 11/03/09 $29,519.81




\# Posted 11/25/09 $2,850.00

002-25010 5435.50
002-21305 9570.47




\#1261 Posted 11/04/09 $15,005.97

Gold Std 001-17590




\#1265 Posted 11/02/09 $960.00




\#1266 Posted 11/03/09 $757.60




\#1267 Posted 11/10/09 $137.68




\#1268 Posted 11/04/09 $669.42




\#1269 Posted 11/05/09 $346.00

404-53680






: [redacted]



DEVILLE CORP. — DEPOSIT TICKET — PLATINUM BB Bank — CHECKS $47,267.34 — [redacted]

\# Posted 2/04/10 $47,267.34

DEVILLE CORP. — DEPOSIT TICKET — PLATINUM BB Bank — DATE 2-16-10 — CHECKS $2,850.00 — [redacted]

\# Posted 2/16/10 $2,850.00

DEVILLE CORP. — DEPOSIT TICKET — PLATINUM BB Bank — DATE 2-22-10 — $2,850.00 — [redacted]

\# Posted 2/23/10 $2,850.00

412-41400

DEVILLE CORP. 1293 — DATE 2-6-10 — PAY TO THE ORDER OF BlueCross Blueshield of Florida $1,714.00 — One thousand Seven hundred fourteen and 00/100 DOLLARS — PLATINUM BB Bank — [redacted]

\#1293 Posted 2/16/10 $1,714.00

404-53180

DEVILLE CORP. 1294 — DATE 1-30-10 — PAY TO THE ORDER OF Nashville Machine Elevator $137.68 — One-hundred thirty Seven and 68/100 DOLLARS — PLATINUM BB Bank — FOR 25864 — [redacted]

\#1294 Posted 2/05/10 $137.68

412-54480

DEVILLE CORP. 1295 — DATE 2-4-10 — PAY TO THE ORDER OF Golson Legal P.A. $1,428.00 — One thousand four hundred twenty eight and 00/100 DOLLARS — PLATINUM BB Bank — [redacted]

\#1295 Posted 2/10/10 $1,428.00

002-25005 5056.00
416-54180 4636.22

DEVILLE CORP. 1296 — DATE 2-4-10 — PAY TO THE ORDER OF Regions $9,692.22 — Nine thousand six hundred ninety two and 22/100 DOLLARS — PLATINUM BB Bank — FOR 53-0001068770 — [redacted]

\#1296 Posted 2/09/10 $9,692.22

002-20200

DEVILLE CORP. 1297 — DATE 2-6-10 — PAY TO THE ORDER OF Travelers $1,437.34 — One thousand four hundred thirty Seven and 34/100 DOLLARS — PLATINUM BB Bank — FOR 4827Y6117 — [redacted]

\#1297 Posted 2/16/10 $1,437.34

412-54480 001-12320-90

DEVILLE CORP. 1298 — DATE 2-10-10 — PAY TO THE ORDER OF Law Offices of Thomas Mc... P.A. Trust Account $2,000.00 — Two thousand and 00/100 DOLLARS — PLATINUM BB Bank — [redacted]

\#1298 Posted 2/10/10 $2,000.00

002-20200

DEVILLE CORP. 1300 — DATE 2-22-10 — PAY TO THE ORDER OF Premium Assignment Corporation $650.97 — Six hundred fifty and 97/100 DOLLARS — PLATINUM BB Bank — FOR 704674 — [redacted]

\#1300 Posted 2/26/10 $650.97

404-53180

DEVILLE CORP. 1301 — DATE 2-22-10 — PAY TO THE ORDER OF Nashville Machine Elevator Co. Inc. $137.68 — One hundred thirty seven and 68/100 DOLLARS — PLATINUM BB Bank — [redacted]

\#1301 Posted 2/26/10 $137.68

#1319 Posted 5/11/10 $9,556.56 [redacted]

#1320 Posted 5/19/10 $250.43

Pinnacle Bank

00225010 5641.46
416-54180 9364.51

DEVILLE CORP — 1321 — PLATINUM BB Bank

[redacted]

Premium Assignment Corp

002-20200 650.97
412-54220 32.55

DEVILLE CORP — 1322 — PLATINUM BB Bank

650.97
32.55

[redacted]

#1321 Posted 5/25/10 $15,005.97

#1322 Posted 5/21/10 $683.52

Nashville Machine Elevator

404-53180
54220

DEVILLE CORP — 1323 — $137.68 — PLATINUM BB Bank

[redacted]

412-55660

Barney Frank

DEVILLE CORP — 1324 — Barney Frank — $10,000.00 — PLATINUM BB Bank

[redacted]

#1323 Posted 5/24/10 $137.68

#1324 Posted 5/25/10 $10,000.00

Thomas Martino 001-12320-90

DEVILLE CORP — 1325 — PLATINUM BB Bank

[redacted]

The UPS Store

412-5550

DEVILLE CORP — 1326 — 5-17-10 — The UPS Store — $43.47 — Forty-three and 47/100 — PLATINUM BB Bank

[redacted]

#1325 Posted 5/19/10 $16,826.00

DELUXE CORP 1+800-328-0304

1325

5-18-10

Thomas Martino

LOAN

| | DEPOSITS |
|---|---|
| | 5-19 16,826.00 |
| TOTAL | |
| THIS CHECK | 16,826.00 |
| OTHER | |
| BALANCE | (8,000.00) |

13

DELUXE CORP 1+800-328-0304

1326

UPS UPS

| | DEPOSITS |
|---|---|
| TOTAL | |
| THIS CHECK | 43.47 |
| OTHER | |

REGIONS

Regions Bank
Nashville TN Main
315 Deaderick Street
Nashville, TN 37201

[redacted]

00069413 01 AT 0.365 001
DEVILLE CORP
OPERATING ACCOUNT
2018 E 7TH AVE STE 101
TAMPA FL 33605-3902

[redacted]

ACCOUNT # [redacted]

| | |
|---|---|
| | 053 |
| Cycle | 26 |
| Enclosures | 1 |
| Page | 1 of 2 |

## COMMERCIAL REAL ESTATE CHECKING PACKAGE

April 22, 2011 through May 31, 2011

### SUMMARY

| | | | | |
|---|---|---|---|---|
| **Beginning Balance** | **$0.00** | | Minimum Balance | $0 |
| Deposits & Credits | $21,834.00 | + | | |
| Withdrawals | $21,430.25 | - | | |
| Fees | $0.00 | - | | |
| Automatic Transfers | $0.00 | + | | |
| Checks | $0.00 | - | | |
| **Ending Balance** | **$403.75** | | | |

#14

### DEPOSITS & CREDITS

| | | | |
|---|---|---|---|
| 05/19 | Deposit - Thank You | Loan from TSM (WAO, Sve.) | ✓ 10,917.00 |
| 05/19 | Deposit - Thank You | Loan from Allen CRC Trust | ✓ 10,917.00 |
| | | Total Deposits & Credits | $21,834.00 |

### WITHDRAWALS

| | | | |
|---|---|---|---|
| 05/20 | Regn Loan Trans | Loan extended to 3/12 | 13,564.00 |
| 05/20 | Bank Debit | Loan costs | 7,866.25 |
| | | Total Withdrawals | $21,430.25 |

### DAILY BALANCE SUMMARY

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 05/19 | 21,834.00 | 05/20 | 403.75 | | |

**You may request account disclosures containing terms, fees, and rate information (if applicable) for your account by contacting any Regions office.**

For all your banking needs, please call 1-800-REGIONS (734-4667).
or visit us on the internet at www.regions.com.

Thank You For Banking With Regions!

PLATINUM Bank

MAY 2011

PAGE: 1
ACCOUNT: [redacted] 05/31/2011
DOCUMENTS: 20

5-20-11 ck 1574 to Deville Corp. for $ 10,917 from TBM Escrow Acct. } Deposited into Regions Bank checking account

need May Stmt

DEVILLE CORP 30
2018 EAST 7TH AVENUE SUITE 101 6
TAMPA FL 33605 14

001-10363-00

PLATINUM PERFORMANCE ACCOUNT [redacted]

| DESCRIPTION | DEBITS | CREDITS | DATE | BALANCE |
|---|---|---|---|---|
| BALANCE LAST STATEMENT ........ | | | 04/29/11 | 1,532.49 |
| DEPOSIT | Rent-Graham 2nd Ave | 10,000.00 | 05/02/11 | 11,532.49 |
| DEPOSIT | Rent, Bailey Broadway | 14,467.53 | 05/03/11 | 26,000.02 |
| CHECK # 1460 | 54.72 | | 05/03/11 | 25,945.30 |
| CHECK # 1459 | 3,042.00 | | 05/03/11 | 22,903.30 |
| CHECK # 1465 | 32.80 | | 05/06/11 | 22,870.50 |
| CHECK # 1462 | 275.36 | | 05/06/11 | 22,595.14 |
| CHECK # 1458 | 600.00 | | 05/06/11 | 21,995.14 |
| DEPOSIT | Rent - Broadway Ave | 1,250.00 | 05/09/11 | 23,245.14 |
| CHECK # 1463 | 66.00 | | 05/09/11 | 23,179.14 |
| FLATIRON CAPITAL InsPremium | 731.68 | | 05/10/11 | 22,447.46 |
| CHECK # 1468 | 3,131.65 | | 05/10/11 | 19,315.81 |
| DEPOSIT | Gold Standard LLC - loan repay | [illegible]00 | 05/11/11 | 23,315.81 |
| CHECK # 1461 | 365.85 (001-17590) | | 05/11/11 | 22,949.96 |
| CHECK # 1466 | 1,521.00 | | 05/11/11 | 21,428.96 |
| CHECK # 1469 | 50.34 | | 05/12/11 | 21,378.62 |
| CHECK # 1464 | 7,337.38 | | 05/12/11 | 14,041.24 |
| DEPOSIT | Rent- 3rd floor Broadway Bldg | [illegible].00 | 05/16/11 | 15,791.24 |
| CHECK # 1467 | 62.50 | | 05/16/11 | 15,728.74 |
| CHECK # 1470 | 18,864.84 | | 05/16/11 | 3,136.10- |
| Paid Overdraft Item Fee | 33.00 | | 05/17/11 | 3,169.10- |
| OVERDRAFT CHARGE | 10.00 | | 05/17/11 | 3,179.10- |
| DEPOSIT | Loan from Thomas Martino | 3,500.00 | 05/18/11 | 320.90 |
| CHECK # 1472 | 50.34 (001-18380-90) | | 05/19/11 | 270.56 |
| BALANCE THIS STATEMENT ........ | | | 05/31/11 | 270.56 |

| | | | | |
|---|---|---|---|---|
| TOTAL CREDITS | (6) | 34,967.53 | AVG AVAILABLE BALANCE | 7,609.44 |
| TOTAL DEBITS | (17) | 36,229.46 | | |

* * * CONTINUED * * *

ck # 7519
10329201 TBM Law office

FDIC

APPENDIX PAGE 103

ACCOUNT: [redacted]



DEPOSIT TICKET
NAME Deville Corp
ACCOUNT NO. [redacted]
CASH 3059 — 500 00
SUB TOTAL 500 00
$ 500.00
PLATINUM Bank.
[redacted]

\# Posted 2/11/13 $500.00

DEPOSIT TICKET
NAME Deville Corp
ACCOUNT NO. [redacted]
15,223.01
SUB TOTAL 15,223 01
$ 15,223.01
PLATINUM Bank.
[redacted]

\# Posted 2/13/13 $15,223.01

DEPOSIT TICKET
NAME Deville Corp.
ACCOUNT NO. [redacted]
500 00
SUB TOTAL 500 00
$ 500.00
PLATINUM Bank.
[redacted]

\# Posted 2/19/13 $500.00

DEPOSIT TICKET
NAME Deville Corp
ACCOUNT NO. [redacted]
24 — 3,675 00
SUB TOTAL 3,675 00
$ 3,675.00
PLATINUM Bank.
[redacted]

\# Posted 2/22/13 $3,675.00

DEVILLE CORP. — 1805
DATE 1-4-13
PAY TO THE ORDER OF Florida Dept. of State $ 150.00
one hundred fifty and 00/100 DOLLARS
PLATINUM Bank.
FOR P030000 33091
[redacted]

\#1805 Posted 2/05/13 $150.00
Administrative

DEVILLE CORP. — 1808
DATE 2-1-13
PAY TO THE ORDER OF Tennessee B&E Division $ 120.00
one hundred twenty and 00/100 DOLLARS
PLATINUM Bank.
FOR # 547635 Graham Shelton
[redacted]

\#1808 Posted 2/07/13 $120.00
Licensing

DEVILLE CORP. — 1809
DATE 2-5-13
PAY TO THE ORDER OF Law Offices of Thomas Machno, P.A. $ 1,700.00
one thousand seven hundred and 00/100 DOLLARS
PLATINUM Bank.
FOR loan repayment
[redacted]

\#1809 Posted 2/05/13 $1,700.00
Attorney fees

DEVILLE CORP. — 1810
DATE 2-12-13
PAY TO THE ORDER OF Pinnacle Bank $ 12,624.36
twelve thousand six hundred twenty four and 36/100 DOLLARS
PLATINUM Bank.
FOR 1815963
[redacted]

\#1810 Posted 2/20/13 $12,624.36
Mortgage

DEVILLE CORP. — 1811
DATE 2-12-13
PAY TO THE ORDER OF Blue Cross Blue Shield of Florida Ins. $ 2,724.00
two thousand seven hundred twenty four and 00/100 DOLLARS
PLATINUM Bank.
821413 081004 106 H53351622006
FOR H53351622
[redacted]

\#1811 Posted 2/19/13 $2,724.00
Health Ins

DEVILLE CORP. — 1812
DATE 2-22-13
PAY TO THE ORDER OF Thomas S. Machno $ 1,000.00
one thousand and 00/100 DOLLARS
PLATINUM Bank.
FOR loan repayment
[redacted]

\#1812 Posted 2/22/13 $1,000.00
Repay Loan

DEVILLE CORP. — 1813
DATE 2-22-13
PAY TO THE ORDER OF Nashville Machine Elevator Co. $ 146.63
one hundred forty six and 63/100 DOLLARS
PLATINUM Bank.
FOR TOM or 3 1141 201245
[redacted]

\#1813 Posted 2/26/13 $146.63
Maintenance

DEVILLE CORP. — 1814
DATE 2-22-13
PAY TO THE ORDER OF APS/TBEX Financial Services Inc. $ 816.90
eight hundred sixteen and 90/100 DOLLARS
PLATINUM Bank.
FOR TBX-265242-2
[redacted]

\#1814 Posted 2/26/13 $816.90

ACCOUNT: [redacted] 




Posted 10/02/13 $1,250.00




Posted 10/02/13 $1,402.63




Posted 10/15/13 $6,196.12




Posted 10/30/13 $1,250.00




Posted 10/30/13 $15,223.01




Posted 10/31/13 $1,892.63




#1844 Posted 10/15/13 $750.00




#1845 Posted 10/18/13 $41.78




#1846 Posted 10/21/13 $877.35




#1847 Posted 10/22/13 $146.63




#1848 Posted 10/29/13 $375.00

APPENDIX PAGE 105

ACCOUNT: [redacted] PAGE : 3 of 3


DEPOSIT TICKET
NAME Deville Corp
ACCOUNT NO. [redacted]
DATE 10-31-13
15223.01
PLATINUM Bank
$ 15223.01
[redacted]

\# Posted 11/01/13 $15,223.01


DEPOSIT TICKET
NAME Deville Corp
ACCOUNT NO. [redacted]
DATE 11-26-13
1,250.00
1,250.00
PLATINUM Bank
$ 1,250.00
[redacted]

\# Posted 11/27/13 $1,250.00


DEVILLE CORP. 1849
DATE 10-28-13
PAY TO THE ORDER OF Blue Cross Blue Shield of Florida, Inc $ 3,246.00
Three thousand two hundred forty six and 00/100 DOLLARS
PLATINUM Bank
[redacted]

\#1849 Posted 11/04/13 $3,246.00
Health Insurance


DEVILLE CORP. 1850
DATE 10-29-13
PAY TO THE ORDER OF Mid-South Maintenance of TN Inc $ 221.23
two hundred twenty one and 23/100 DOLLARS
PLATINUM Bank
[redacted]

\#1850 Posted 11/04/13 $221.23
Repairs


DEVILLE CORP. 1851
DATE 10-28-13
PAY TO THE ORDER OF Pinnacle Bank $ 12,624.36
twelve thousand six hundred twenty four and 36/100 DOLLARS
PLATINUM Bank
FOR 1215962
[redacted]

\#1851 Posted 11/05/13 $12,624.36
Mortgage


DEVILLE CORP. 1852
DATE 11-6-13
PAY TO THE ORDER OF Metro Water Services $ 510.00
five hundred ten and 00/100 DOLLARS
PLATINUM Bank
[redacted]

\#1852 Posted 11/13/13 $510.00
Utilities


DEVILLE CORP. 1853
DATE 11-6-13
PAY TO THE ORDER OF Pinnacle Bank $ 12,624.36
twelve thousand six hundred twenty four and 36/100 DOLLARS
PLATINUM Bank
FOR 1215962
[redacted]

\#1853 Posted 11/13/13 $12,624.36
Mortgage


DEVILLE CORP. 1854
DATE 11-1-13
PAY TO THE ORDER OF Gold Standard Properties LLC $ 10,000.00
ten thousand and 00/100 DOLLARS
PLATINUM Bank
FOR repay loan
[redacted]

\#1854 Posted 11/07/13 $10,000.00
Loan repayment


DEVILLE CORP. 1855
DATE 11-13-13
PAY TO THE ORDER OF APS / IBEX Financial Services Inc $ 835.57
eight hundred thirty five and 57/100 DOLLARS
PLATINUM Bank
FOR IBX-292594-7
[redacted]

\#1855 Posted 11/20/13 $835.57
Property Insurance


DEVILLE CORP. 1856
DATE 11-26-13
PAY TO THE ORDER OF Law Offices of Thomas Macchione P.A. $ 575.00
five hundred seventy five and 00/100 DOLLARS
PLATINUM Bank
FOR Collections - rent
[redacted]

\#1856 Posted 11/27/13 $575.00
Attorney Fees

ACCOUNT: [redacted] PAGE : 3 of 3

THE IMAGE OF THIS ITEM IS CURRENTLY UNAVAILABLE. IF YOU REQUIRE A COPY OF THIS ITEM PLEASE CONTACT YOUR BANK.

# Posted 12/05/13 $1,892.63

DEPOSIT TICKET
NAME Deville Corp
ACCOUNT NO. [redacted]
DATE 12/10/13
PLATINUM Bank
15,617.83
$ 15,617.83
[redacted]

# Posted 12/10/13 $15,617.83

DEPOSIT TICKET
NAME Deville Corp
ACCOUNT NO. [redacted]
DATE 12/26/13
347.80
650.00
PLATINUM Bank
$ 997.80
[redacted]

# Posted 12/26/13 $997.80

DEPOSIT TICKET
NAME Deville Corp
ACCOUNT NO. [redacted]
PLATINUM Bank
1,892.63
1,250.00
3,142.63
$ 3,142.63
[redacted]

# Posted 12/31/13 $3,142.63

DEVILLE CORP. 1857
DATE 12-5-13
PAY TO THE ORDER OF Pinnacle Bank $ 12,624.36
twelve thousand six hundred twenty four and 36/100 DOLLARS
PLATINUM Bank
FOR 1215463
[redacted]

#1857 Posted 12/12/13 $12,624.36

DEVILLE CORP. 1858
DATE 12-4-13
PAY TO THE ORDER OF Blue Cross and Blue Shield of Florida, Inc. $ 3,246.00
three thousand two hundred forty six and 00/100 DOLLARS
PLATINUM Bank
FOR Thomas S Martino Sr.
[redacted]

#1858 Posted 12/17/13 $3,246.00

DEVILLE CORP. 1859
DATE 12-13-13
PAY TO THE ORDER OF AES / IBEX Financial Services Inc. $ 835.57
eight hundred thirty five and 57/100 DOLLARS
PLATINUM Bank
FOR IBX-
[redacted]

#1859 Posted 12/24/13 $835.57

DEVILLE CORP. 1860
DATE 12-18-13
PAY TO THE ORDER OF Nashville Machine Elevator Co. $ 153.08
one hundred fifty three and 8/100 DOLLARS
PLATINUM Bank
FOR 219437 1491
[redacted]

#1860 Posted 12/24/13 $153.08

DEVILLE CORP. 1861
DATE 12-18-13
PAY TO THE ORDER OF Nashville Machine Elevator Co. $ 153.08
one hundred fifty three and 8/100 DOLLARS
PLATINUM Bank
FOR 221118 1491
[redacted]

#1861 Posted 12/24/13 $153.08

DEVILLE CORP. 1862
DATE 12-10-13
PAY TO THE ORDER OF Gold Standard Properties LLC $ 7,500.00
Seven thousand five hundred and 00/100 DOLLARS
PLATINUM Bank
FOR 1 qtr loan
[redacted]

#1862 Posted 12/24/13 $7,500.00

ACCOUNT: [redacted] PAGE : 3 of 3




\# Posted 1/07/14 $15,617.83




\# Posted 1/31/14 $1,250.00




\#1863 Posted 1/07/14 $2,500.00




\#1864 Posted 1/14/14 $12,624.36

Mortgage




\#1865 Posted 1/14/14 $30.00

Utilities




\#1866 Posted 1/28/14 $153.08

Maintenance




\#1867 Posted 1/29/14 $835.57

Insurance

ACCOUNT: [redacted] PAGE : 3 of 3




# Posted 7/02/14 $15,617.83




# Posted 7/30/14 $15,617.83




#1888 Posted 7/09/14 $15,464.54

Mortgage




#1889 Posted 7/07/14 $30,000.00

Repay Loan




#1890 Posted 7/24/14 $3,065.13

Insurance




#1891 Posted 7/22/14 $30.00

Utilities




#1892 Posted 7/22/14 $153.08

Maintenance

PLATINUM Bank

Account: [redacted]
Page: 2




08/07/2014 1893 $12,624.36

Mortgage




08/25/2014 1894 $5,000.00

Repay Loan




08/26/2014 1895 $153.08

Maintenance

00001202-0002945-0002-0002-FIMR6006720 2300(00001202)-00002947

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

THOMAS SALVADOR MARTINO,

Debtor.
_____________________________________/

Chapter 7
Case No.: 8:14-bk-13452-KRM

SAVANNAH CAPITAL, LLC,

Plaintiff,

v.

THOMAS SALVADOR MARTINO,

Defendant.
_____________________________________/

Adversary Proceeding
Case No.: 8:15-ap-00418-KRM

## MOTION TO DISMISS AND STRIKE

COMES NOW the Defendant, Thomas S. Martino ("**Defendant**" or "**Debtor**"), by and through his undersigned counsel, and pursuant to Fed. R. Civ. P. 12(b)(6) and 12(f) as made applicable by Fed. R. Bankr. P. 7012(c) hereby files this Motion to Strike and Dismiss Savannah Capital, LLC's ("**Plaintiff**" or "**Savannah Capital**") Complaint Objecting to Dischargeability of Savannah's Claim and for Other Related Relief (Doc. 1 – the "**Complaint**") and states as follows:

## BACKGROUND

1. The Debtor filed a Petition for Relief under Chapter 7 of the Bankruptcy Code on November 14, 2014.

2. The Debtor listed Savannah Capital as a "creditor" on Schedule F, characterizing the claim as a "contingent, unliquidated, disputed claim for an unknown amount."

3. Savannah Capital entered an appearance in the case in January 2015, missed the first meeting of creditors pursuant to Section 341 of the Bankruptcy Code, attended the second 341 meeting, and once again did not appear at the third 341 meeting or the Trustee's 2004 Examination of the Debtor. Savannah Capital filed a motion to conduct its own 2004 Examination of the Debtor, but never set it.

4. The bar date for filing a Proof of Claim was March 23, 2015. Savannah Capital filed a Motion to Extend Time to file a claim on the bar date, March 23, 2015.

5. The deadline to object to the Debtor's discharge was originally February 17, 2015.

6. On February 10, 2015, the Trustee filed a Motion to Extend Time for All Creditors to Object to the Debtor's Discharge. The Trustee's motion was granted on February 11, 2015, extending the deadline to object to discharge to April 18, 2015.

7. On February 16, 2015, Savannah Capital filed its own Motion to Extend Time to Object to Discharge on February 16, 2015. The Court granted Savannah Capital's motion on February 18, 2015, extending its deadline another 60 days. Again, Savannah Capital filed another Motion to Extend Time to Object to Discharge on April 16, 2015.

8. The Debtor filed its Response to and Objection to Savannah Capital's Motion to Extend Time to File a Proof of Claim on April 24, 2015.

9. Savannah Capital's Motion to Extend Time to File a Proof of Claim and to Object to Discharge were upon consideration by Judge Catherine P. McEwen on April 27, 2015. The result of that hearing was Judge McEwen's recusal, disqualification, and the reassignment of the case to Your Honor, Judge K. Rodney May. Judge McEwen did not grant Savannah Capital's requests to extend its deadlines to file a Proof of Claim or Objection to Discharge.

10. Without the Court's grant of such extension, Savannah Capital filed its Complaint Objecting to Dischargeability of Savannah Claim initiating this instant adversary proceeding.

## MOTION TO DISMISS

11. Savannah Capital initiated this adversary proceeding against the Debtor and DeVille without leave of court or an extension granted by the court.

12. Plaintiff has no standing to maintain this proceeding.

13. "Standing is a threshold question which must be addressed prior to and independent of the merits of a party's claims." *Dillard v. Baldwin Cnt'y Comm'rs*, 225 F.3d 1271, 1275 (11th Cir. 2000). Absent a showing of standing, "a court is not free to opine in an advisory capacity about the merits of a plaintiff's claim." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005); see also *AT&T Mobility, LLC v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 494 F.3d 1356, 1360 (11th Cir. 2007).

14. Plaintiff alleges that it owned and still owns 50% of stock in DeVille Corp. (the "**non-debtor entity**") with the Defendant and his non-filing spouse owning the other 50% of the stock in Deville Corp.

15. Plaintiff alleges that while in control of the non-debtor entity, Deville Corp., the Defendant, Thomas S. Martino, damaged Plaintiff by depleting the corporate funds and assets of the non-debtor entity, Deville Corp. Plaintiff seeks the entry of a non-dischargeable money judgment against the Defendant, Thomas S. Martino, an accounting from the non-debtor entity, Deville Corp., and judicial dissolution of the non-debtor entity, Deville Corp.

16. Under well established law, a corporation holds property separate and apart from its owners and the right to (i) recover damages suffered by a corporation and (ii) enforce certain

rights belongs to the corporation, not its shareholders. For a shareholder to maintain an action directly against another shareholder, officer, or director of a corporation, a shareholder must allege a direct harm it suffered. *White v. Whittle (In re Whittle)*, 449 B.R. 427, 430 (Bankr. M.D. Fla. 2011) ("This argument fails because it disregards the fact that [the entity] is a separate legal entity created pursuant to Florida statutes."); *Mann v. Kendall Props. & Invs., LLC (In re AS Mgmt. Svcs.)*, 2007 Bankr. LEXIS 2838 (Bankr. S.D. Fla. Aug. 16, 2007) ("A stockholder lacks standing to recover individually for injuries done to his corporation."); *In re Sunrise Sec. Litig.*, 916 F.2d 874 (3rd Cir. 1990) (applying Florida law); *Dinuro Investments, LLC* v. Camacho, 141 So. 3d 731, 735-36 (Fla. 3d DCA 2014); Angelino *v. Santa Barbara Enters., LLC*, 2 So. 3d 1100, 1104 (Fla. 3d DCA 2009); *Chaul v. Abu-Ghazaleh*, 994 So. 2d 465 (Fla. 3d DCA 2008); *Orlinsky v. Patraka*, 971 So. 2d 796, 801-802 (Fla. 3d DCA 2007); *Hill v. Brady*, 737 So. 2d 1243, 1244 (Fla. 5th DCA 1999); *Lincoln Olsmobile, Inc. v. Branch*, 574 So. 2d 1111, 1114 (Fla. 2d DCA 1990).

17. Defendant, Thomas S. Martino's, alleged misconduct, if taken as true, only amounts to damage that the Defendant, Thomas S. Martino's, allegedly caused to the non-debtor entity, Deville Corp. As alleged, the Plaintiff, as shareholders of the non-debtor entity were indirectly damaged. It is the non-debtor entity, Deville Corp., if anybody, who was allegedly injured by the allegations set forth in the complaint and who has standing to assert a direct action against the Defendant, Thomas S. Martino.

18. Accordingly, the Plaintiff cannot state a claim upon which relief can be granted.

19. The Debtor retained counsel to defend this suit and is obligated to pay counsel reasonable attorney's fees and costs. The Defendant requests that the Court grant judgment in

favor of the Debtor for a reasonable attorney's fee and for the costs of defending this suit pursuant to 11 U.S.C. § 523(d).

WHEREFORE, the Defendant respectfully asks the Court to dismiss the Complaint with prejudice and assess attorney's fees, costs, and interests against the Plaintiff.

**MOTION TO STRIKE ANY CLAIM AGAINST DEVILLE CORP.**

20. Deville Corp. is a non-debtor in this case.

WHEREFORE, the Defendant respectfully asks the Court to strike any and all allegations against Deville Corp. as immaterial, impertinent, and scandalous to a Section 523 action and assess attorney's fees, costs, and interest against the Plaintiff.

Dated: May 20, 2015.

D. LEE PITISCI, ESQUIRE
Florida Bar No.: 771650
Pitisci, Dowell & Markowitz
101 S. Moody Avenue
Tampa, FL 33609
Phone: (813) 228-9233 x 4
Fax: (813) 229-5979
Primary E-Mail: lpitisci@pdmmlaw.com
Secondary E-Mail: alutz@pdmmlaw.com
*Co-counsel for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 20, 2015, I electronically filed a true and correct copy of the foregoing document with the Clerk of the United States Bankruptcy Court for the Middle District of Florida by using the CM/ECF system and I furnished a copy of the foregoing document to the parties in the manner of service indicated below.

D. LEE PITISCI, ESQUIRE
Florida Bar No.: 771650

**Via the CM/ECF system which will send a Notice of Electronic Filing to:**

John A. Anthony, Esquire, Counsel for Savannah Capital, LLC
David W. Steen, Esquire, Co-Counsel for Defendant
Douglas N. Menchise, Chapter 7 Trustee
United States Trustee

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

In re:

THOMAS SALVADOR MARTINO,

Debtor.
_______________________________________/

Chapter 7
Case No.: 8:14-bk-13452-KRM

SAVANNAH CAPITAL, LLC,

Plaintiff,

v.

THOMAS SALVADOR MARTINO,
DEVILLE CORPORATION

Defendants.
_______________________________________/

Adversary Proceeding
Case No.: 8:15-ap-00418-KRM

**MOTION TO DISMISS DEFENDANT DEVILLE CORP. AS A PARTY**

COMES NOW the Defendant, DeVille Corp., a Florida Corporation ("**DeVille**"), by and through its undersigned counsel, and pursuant to *Fed. R. Civ. P. 21* as made applicable by *Fed. R. Bankr. P. 7021,* and hereby files this Motion to Drop DeVille as a Party to the Adversary Proceeding initiated by the filing of Savannah Capital, LLC's ("**Savannah Capital**") Complaint Objecting to Dischargeability of Savannah's Claim and for Other Related Relief (Doc. 1 – the "**Complaint**") and states as follows:

1. The Debtor, Thomas S. Martino (the "**Debtor**"), filed a Petition for Relief under Chapter 7 of the Bankruptcy Code on November 14, 2014.

2. Savannah Capital alleges that it is a shareholder and owner of 50% of DeVille with the Debtor and his non-filing spouse owning the other 50% of the stock in the corporation.

3. Savannah Capital initiated this adversary proceeding against the Debtor and DeVille without leave of court or an extension granted by the court.

4. The basis of Savannah Capital's Complaint is that while in control of DeVille, the Debtor damaged Savannah Capital by depleting the corporate funds and assets of DeVille. Based what it deems as "Actionable Misconduct" by the *Debtor* that caused indirect harm to Savannah Capital solely by virtue of its ownership in DeVille, Savannah Capital seeks the entry of a non-dischargeable judgment in its favor and an accounting from the Debtor to DeVille. Further, based on the allegation that "[t]he assets of DeVille are being misappropriated and wasted by the Debtor," Savannah Capital seeks judicial dissolution of DeVille Corp., a Florida Corporation.

5. Taking all of the allegations as true, a plain reading of Savannah Capital's Complaint makes it clear that if anything, DeVille,and not Savannah Capital, LLC, would be the appropriate *Plaintiff* in the instant action. The Debtor's alleged "Actionable Misconduct" caused DeVille direct harm that allegedly caused indirect harm to Savannah Capital. It is DeVille who was directly injured by the allegations set forth in the Complaint and therefore, Deville Corp., a Florida Corporation, is who would have standing to assert a direct action against the Debtor.

6. Under well established law, a corporation holds property separate and apart from its owners and the right to (i) recover damages suffered by a corporation and (ii) enforce certain rights belongs to the corporation, not its shareholders. For a shareholder to maintain an action directly against another shareholder, officer, or director of a corporation, a shareholder must allege a direct harm it suffered. *White v. Whittle (In re Whittle)*, 449 B.R. 427, 430 (Bankr. M.D. Fla. 2011) ("This argument fails because it disregards the fact that [the entity] is a separate legal entity created pursuant to Florida statutes."); *Mann v. Kendall Props. & Invs., LLC (In re AS*

*Mgmt. Svcs.)*, 2007 Bankr. LEXIS 2838 (Bankr. S.D. Fla. Aug. 16, 2007) ("A stockholder lacks standing to recover individually for injuries done to his corporation."); *In re Sunrise Sec. Litig.*, 916 F.2d 874 (3rd Cir. 1990) (applying Florida law); *Dinuro Investments, LLC* v. Camacho, 141 So. 3d 731, 735-36 (Fla. 3d DCA 2014); Angelino *v. Santa Barbara Enters., LLC*, 2 So. 3d 1100, 1104 (Fla. 3d DCA 2009); *Chaul v. Abu-Ghazaleh*, 994 So. 2d 465 (Fla. 3d DCA 2008); *Orlinsky v. Patraka*, 971 So. 2d 796, 801-802 (Fla. 3d DCA 2007); *Hill v. Brady*, 737 So. 2d 1243, 1244 (Fla. 5th DCA 1999); *Lincoln Olsmobile, Inc. v. Branch*, 574 So. 2d 1111, 1114 (Fla. 2d DCA 1990).

**NO SUBJECT MATTER JURISDICTION OVER NON-DEBTORS**

7. Again under well established law, a bankruptcy court must establish subject matter jurisdiction over the parties against whom relief is sought. Under the current circumstances and facts of the case at hand, in the absence of any direct effect on the debtor's estate, a bankruptcy court is without authority to act against a non-debtor. Any claim by Savannah Capital, LLC only benefits Savannah Capital, LLC as opposed to the estate. If there is no impact or benefit to the estate, the claim is not viable in a Bankruptcy proceeding.

8. At present, there is a State court action involving Savannah Capital, LLC, against Deville Corp., which is currently pending. The appropriate claim, if any, should be made in Florida State Court, noting Deville Corp., is a Florida Corporation and a lawsuit is currently pending. Any action for Judicial Dissolution and Accounting must be brought in the Circuit Court.

9. Pursuant to Fla. Statute sec. 607.1431(1), Venue for a proceeding under s. 607.1430(judicial dissolution) lies in the circuit court of the county where the corporation's principal office is. Plaintiff is attempting to bring a judicial dissolution claim in the underlying

bankruptcy proceeding against a non-debtor knowing the proper venue is in circuit court and there is a current lawsuit pending in that court. Accordingly, pursuant to Fla. Statute sec. 607.1431(4) if the court determines that any party has commenced, continued, or participated in any action under s. 607.1430(judicial dissolution) and has acted arbitrarily, frivolously, vexatiously, or not acted in good faith, the court may….. award attorney fees and other reasonable expenses…..In this case, the court should award attorney's fees and costs.

10. DeVille retained counsel to defend this suit and is obligated to pay counsel reasonable attorney's fees and costs. DeVille requests that the Court grant judgment in favor of DeVille for a reasonable attorney's fee and for the costs of defending this suit pursuant to 11 U.S.C. § 523(d).

WHEREFORE, DeVille respectfully asks the Court to dismiss DeVille as a Defendant and assess attorney's fees, costs, and interests against the Plaintiff.

Dated: May 20, 2015.

D. LEE PITISCI, ESQUIRE
Florida Bar No.: 771650
Pitisci, Dowell & Markowitz
101 S. Moody Avenue
Tampa, FL 33609
Phone: (813) 228-9233 x 4
Fax: (813) 229-5979
Primary E-Mail: lpitisci@pdmmlaw.com
Secondary E-Mail: alutz@pdmmlaw.com
*Co-counsel for Defendant*

# CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on May 20, 2015, I electronically filed a true and correct copy of the foregoing document with the Clerk of the United States Bankruptcy Court for the Middle District of Florida by using the CM/ECF system and I furnished a copy of the foregoing document to the parties in the manner of service indicated below.

D. LEE PITISCI, ESQUIRE
Florida Bar No.: 771650

**Via the CM/ECF system which will send a Notice of Electronic Filing to:**

John A. Anthony, Esquire, Counsel for Savannah Capital, LLC
David W. Steen, Esquire, Co-Counsel for Defendant
Douglas N. Menchise, Chapter 7 Trustee
United States Trustee

IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| THOMAS SALVADOR MARTINO | : | Case No. 8:14-bk-13452-KRM |
| Debtor | : | Chapter 7 |
| - - - - - - - - - - - - - - - - - | x | |
| SAVANNAH CAPITAL, LLC | : | Adv. No. 8:15-ap-00418-KRM |
| Plaintiff | : | |
| v. | : | |
| THOMAS SALVADOR MARTINO | : | |
| Defendant | : | |
| - - - - - - - - - - - - - - - - - | x | |

U.S. Courthouse
801 North Florida Avenue
Tampa, Florida 33602
Held June 11, 2015

TRANSCRIPT OF HEARING

[Re: 8:14-bk-13452]
1-Motion to Extend Time to File Proof of Claim, filed by Allison Doucette on behalf of Creditor Savannah Capital, LLC (Doc. #38); Response and Objection filed by the Debtor (Doc. #50); 2-Motion to Extend Time to File Complaint, filed by John A. Anthony on behalf of Creditor Savannah Capital, LLC (Doc. #45); 3-Amended Objection to Debtor's Claim of Exemptions, filed by A. Christopher Kasten II on behalf of Trustee Douglas N. Menchise (Doc. #62); Response by the Debtor (Doc. #66)
*[FULL NATURE OF PROCEEDINGS CONTINUED ON NEXT PAGE]*

BEFORE THE HONORABLE K. RODNEY MAY
UNITED STATES BANKRUPTCY JUDGE

PROCEEDINGS DIGITALLY RECORDED BY COURT PERSONNEL
TRANSCRIPT PRODUCED BY COURT-APPROVED TRANSCRIPTION SERVICE

---

**JOHNSON TRANSCRIPTION SERVICE**
7702 Lake Cypress Drive
Odessa, Florida 33556
(813) 920-1466

*[FULL NATURE OF PROCEEDINGS CONTINUED FROM PREVIOUS PAGE]*

[Re: 8:15-ap-00418]
1-Preliminary Hearing on Motion to Dismiss Adversary Proceeding, filed by D. Lee Pitisci on behalf of Defendant Thomas Salvador Martino (Doc. #3);
2-Preliminary Hearing on Motion to Dismiss Party Defendant, Deville Corp., filed by D. Lee Pitisci on behalf of Defendant Deville Corp. (Doc. #4)

APPEARANCES:

For Savannah Capital, LLC
STEPHENIE ANTHONY, Esq.
ALLISON C. DOUCETTE, Esquire
Anthony & Partners, LLC
201 N. Franklin Street
Suite 2800
Tampa, Florida 33602
813-273-5613
santhony@anthonyandpartners.com
adoucette@anthonyandpartners.com

For Mr. Martino and Deville Corp.
D. LEE PITISCI, Esquire
Pitisci Dowell Markovitz Murphy
101 S. Moody Avenue
Tampa, Florida 33609-3333
813-228-9233
leepitisci@pdmmlaw.com

For Doug Menchise, Ch. 7 Trustee
A. CHRISTOPHER KASTEN, Esq.
Bush Ross P.A.
P.O. Box 3913
Tampa, Florida 33601-3913
813-224-9255
ckasten@bushross.com

For the Debtor
DAVID W. STEEN, Esquire
David W. Steen, P.A.
602 S. Boulevard
Tampa, Florida 33606
813-251-3000
DWSteen@dsteenpa.com

Also present
Mr. Martino
Andre Cowen
Dan McBreen

THE COURT: All right.

MR. KASTEN: -- subject to whatever objections.

THE COURT: All right. I will grant the motion. You've asserted you're a creditor in a pleading filed before the deadline. I'll allow you to file the claim. And anyone with standing has the right to object to it.

I'm not validating the claim, which is probably your primary concern. It's not allowing the claim. I'm allowing the claim to be filed, all right?

And if you wish to object to it, which you may well do -- object to the allowance of the claim, I'll give you 30 days to do that, and then your objection will travel with what's left of the adversary proceeding. Okay?

If you'll give me a motion -- or not motion. A form of order granting your motion for the reasons I've just stated on the record in open court.

MS. ANTHONY: Thank you, Your Honor.

THE COURT: And now we have Mr. Kasten's issue, I guess, as to objections -- I mean, exemptions, is what I meant to say.

MR. KASTEN: Thank you, Your Honor. I looked at the hearing and it appeared to me that this was set for a pretrial conference. Although we have filed a motion for summary judgment on the issue of the tenancy by the entireties, it does not appear to me that that's set

ORDERED.

**Dated: September 04, 2015**



K. Rodney May
United States Bankruptcy Judge

**IN THE UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

IN RE:

THOMAS SALVADOR MARTINO,

Case No. 8:14-BK-13452
Chapter 7

Debtor.
_________________________________/

SAVANNAH CAPITAL, LLC,

Plaintiff,

v.

Adv. Pro. No. 8:15-ap-00418-KRM

THOMAS SALVADOR MARTINO,

Defendant.
__________________________________________/

**ORDER DENYING MOTION TO DISMISS AND STRIKE [DOC. 3]**

THIS CASE came on before the Court on August 18, 2015, for consideration on of the "Motion to Dismiss and Strike" (the "Motion to Dismiss") [Doc. No. 3], filed on behalf of Thomas Martino (the "Debtor"). For the reasons stated orally on the record, the Court finds the Motion to Dismiss is not well taken.

Accordingly, it is **ORDERED**:

1. The Motion to Dismiss is DENIED.

2. The Debtor shall answer the “Complaint Objecting to Dischargeability of Savannah’s Claim and for Other Relief” [Doc. 1] within twenty-one (21) days.

*Notice.* Attorney, Allison Doucette, is directed to serve a copy of this order on interested parties who are non-CM/ECF users and file a proof of service within 3 days of entry of the order.

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

THOMAS SALVADOR MARTINO,

Debtor.
_____________________________________/

Chapter 7
Case No.: 8:14-bk-13452-KRM

SAVANNAH CAPITAL, LLC,

Plaintiff,

v.

THOMAS SALVADOR MARTINO,

Defendant.

Adversary Proceeding
Case No.: 8:15-ap-00418-KRM

**ANSWER AND AFFIRMATIVE DEFENSES**

COMES NOW the Defendant, THOMAS S. MARTINO (hereinafter "the Debtor"), by and through his undersigned counsel, and files this his Answer and Affirmative Defenses to Plaintiff's Complaint Objecting to Dischargeability of Savannah Claim and for Other Related Relief (Doc. 1), and states as follows:

**ANSWER**

**A. Parties, Jurisdiction, and Venue**

1. Admitted.
2. Admitted.
3. Admitted.
4. Admitted for jurisdictional purposes only, otherwise denied.
5. Admitted.

## B. Background Allegations

6. Admitted.

7. Admitted that Robinson Callen ("Callen"), the managing member of Plaintiff Savannah Capital, LLC ("Savannah Capital"), was formerly married to the Debtor's wife's mother making Mrs. Martino Callen's stepdaughter and the Debtor his stepson-in-law; otherwise denied.

8. Without knowledge and therefore denied.

9. Denied.

10. Denied.

11. Denied.

12. Denied.

13. Exhibit B speaks for itself; otherwise denied.

14. Denied.

15. Denied.

16. Admitted that Savannah Capital initiated a records action against DeVille in state court and that Exhibit C is the Complaint filed by Savannah Capital; otherwise denied.

17. Denied.

18. Admitted that the Debtor filed a voluntary petition for bankruptcy relief under Chapter 7 of the Bankruptcy Code on November 14, 2014; otherwise denied.

19. Denied.

20. The Debtor admits his statement and maintains his position that the DeVille loan is "bogus"; otherwise these allegations are denied.

21. Denied.

22. Denied.

23. Denied.

24. Denied.

25. Admitted that the Debtor objected to Savannah Capital's Second Motion to Extend Time to Object to Discharge/Dischargeability; otherwise denied.

26. Denied.

27. Admitted. The DeVille debt was also categorized as disputed.

28. Denied.

29. Admitted that the Debtor is the President of DeVille; otherwise denied.

30. Exhibit F speaks for itself; otherwise denied.

31. Denied.

**Count I: Objection to Dischargeability of a Debt Pursuant to Section 523(a)(2)**

32. Admitted.

33. The Debtor repeats and realleges his response to paragraphs 1 through 31 above as though fully set forth herein. Plaintiff's allegations are denied.

34. Denied.

**Count II: Objection to Dischargeability of a Debt Pursuant to Section 523(a)(4)**

35. Admitted.

36. The Debtor repeats and realleges his response to paragraphs 1 through 31 above as though fully set forth herein. Plaintiff's allegations are denied.

37. Denied.

**Count III: Objection to Dischargeability of a Debt Pursuant to Section 523(a)(6)**

38. Admitted.

39. The Debtor repeats and realleges his response to paragraphs 1 through 31 above as though fully set forth herein. Plaintiff's allegations are denied.

40. Denied.

**Count IV: Judicial Dissolution of DeVille**

41 – 45. Because the Court dismissed all counts as they relate to DeVille, the Debtor will not answer this count.

**Count V: Accounting**

46. Because the Court dismissed all counts as they relate to DeVille, this count should be limited to an accounting as against the Debtor.

47. The Debtor repeats and realleges his response to paragraphs 1 through 31 above as though fully set forth herein.

48. Denied.

49. Denied.

50. Denied.

51. Denied.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

52. Savannah Capital only recently acquired an interest in DeVille by issue of a declaratory judgment in state court on November 21, 2014. In the state court litigation referenced in the Complaint (Savannah Capital, LLC v. DeVille Corp., Case No. 14-CA-008669), Savannah Capital not only sought the production of records from DeVille, but the core of that suit was Savannah Capital's plea for a judicial determination that it held an interest in DeVille. Savannah Capital was not an original shareholder of DeVille, nor did it subscribe to the stock; rather, Savannah Capital claims to have acquired the interest in DeVille through the purchase of stock from Miami Springs Resorts, Inc. The dates of the alleged misconduct all pre-date the date in which Savannah Capital established its ownership in DeVille. Accordingly, at all relevant times hereto, no fiduciary relationship existed between the parties.

### Second Affirmative Defense

53. The "loan" transactions that Savannah Capital contests and the evidence it offers in support thereof (see Exhibit A of Savannah Capital's Complaint) are transactions that occurred in July 2007. The foreclosure transaction that Savannah Capital also alleges as wrongful occurred in 2005 (see Exhibit B of Savannah Capital's Complaint). Under Florida's Statute of Limitations contained in § 95.11 of the Florida Statutes, an action challenging such transactions is barred by the statute of limitations.

Case 8:16-cv-02105-VMC Document 18-7 Filed 01/20/17 Page 136 of 193 PageID 1450

### Third Affirmative Defense

54. Savannah Capital initiated the state court action to determine its shareholder status on August 27, 2014, claiming that it acquired an interest in DeVille at some point prior thereto. It was not until May 1, 2015, that Savannah Capital raised these claims against the Debtor in its Proof of Claim and Complaint Objecting to Dischargeability that initiated the instant proceeding. Savannah Capital's omission and neglect in asserting its rights as a 50% shareholder in DeVille, taken in conjunction with the lapse of time from the alleged wrongdoing and Savannah Capital's acquisition of the DeVille interest years after the disputed transactions make the prosecution of this action inequitable and unjust.

### Fourth Affirmative Defense

55. There has never been a Debtor-Creditor relationship between the Debtor and Savannah Capital and therefore Savannah Capital has no standing to pursue an exception to discharge suit.

### Fifth Affirmative Defense

56. Further, Savannah Capital had ample opportunity to raise such claims against the Debtor in the related state court action after it was determined that Savannah Capital was a shareholder in DeVille. Savannah Capital's failure to raise such claims in the prior action should estop Savannah Capital raising these claims in the instant proceeding.

### Sixth Affirmative Defense

57. The Debtor has no duty or obligation to provide an accounting to Savannah Capital. However, assuming arguendo that Savannah Capital is determined to possess any accounting

rights, such rights should only be afforded during the period of time in which (i) Savannah Capital possessed an ownership interest in DeVille and (ii) the date that the Debtor filed his petition for bankruptcy relief.

**Reservation of Right to Raise Additional Affirmative Defenses**

58. The Debtor reserves the right to raise additional affirmative defenses as warranted by discovery or other developments in this action.

Dated: September 25, 2015.

D. LEE PITISCI, ESQUIRE
Florida Bar No.: 771650
Pitisci, Dowell & Markowitz
101 S. Moody Avenue
Tampa, FL 33609
Phone: (813) 228-9233 x 4
Fax: (813) 229-5979
Primary E-Mail: lpitisci@pdmmlaw.com
Secondary E-Mail: alutz@pdmmlaw.com
*Co-counsel for Defendant*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 25, 2015, I electronically filed a true and correct copy of the foregoing document with the Clerk of the United States Bankruptcy Court for the Middle District of Florida by using the CM/ECF system and I furnished a copy of the foregoing document to the parties in the manner of service indicated below.

D. LEE PITISCI, ESQUIRE
Florida Bar No.: 771650

**Via the CM/ECF system which will send a Notice of Electronic Filing to:**
John A. Anthony, Esquire, Counsel for Savannah Capital, LLC
Stephenie B. Anthony, Esquire, Counsel for Savannah Capital, LLC
Allison Doucette, Esquire, Counsel for Savannah Capital, LLC
Douglas N. Menchise, Chapter 7 Trustee
United States Trustee

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

In re:

THOMAS SALVADOR MARTINO,

Debtor.
______________________________________/

Chapter 7

Case No.: 8:14-bk-13452-KRM

SAVANNAH CAPITAL, LLC,

Plaintiff,

v.

THOMAS SALVADOR MARTINO,

Defendant.
______________________________________/

Adversary Proceeding
Case No.: 8:15-ap-00418-KRM

**THOMAS SALVADOR MARTINO'S MOTION FOR SUMMARY JUDGMENT AS TO ALL COUNTS OF THE COMPLAINT AND AS TO HIS OBJECTION TO SAVANNAH CAPITAL'S PROOF OF CLAIM FOR LACK OF STANDING**

COMES NOW, the defendant, Thomas S. Martino (the "Debtor"), by and through his undersigned counsel, and pursuant to Federal Rule of Bankruptcy Procedure 7056, hereby moves for summary judgment against Plaintiff, Savannah Capital, LLC ("Savannah Capital"), on all counts of the complaint filed herein as well as the allowance of Savannah Capital's Proof of Claim, Claim No. 7-1, and in support thereof states as follows:

**PRELIMINARY STATEMENT**

This adversary proceeding was initiated to determine the dischargeability of Savannah Capital's claim, based on Savannah Capital's Proof of Claim, Claim No. 7-1, filed on May 1, 2015. While the Court allowed Savannah Capital to file its late Proof of Claim and initiate this

instant adversary proceeding, the Court has yet to determine whether a debt between Savannah Capital and the Debtor exists. Savannah Capital claims a debt owed by Debtor to Savannah Capital does exist, and it premises its Claim on its status as a shareholder of DeVille Corp. ("DeVille"). Savannah Capital's position is that by virtue of its 50% stake in DeVille, it is entitled to directly recover 50% of the damage the Debtor allegedly caused to DeVille through misuse and misappropriation of DeVille's assets by Debtor. Savannah Capital's Claim fails to recognize a basic tenant of corporate law; i.e., a corporation is a legal entity separate and apart from its owners and as such, may hold property and rights individually. As such, it is the corporation, Deville Corp., not an individual shareholder (Savannah Capital) that may have a claim against the Debtor. Therefore, Debtor asks the Court to disallow Savannah's Capital's Claim as, on the face of its Proof of Claim and supporting instruments, no debt exists between Debtor and Savannah Capital.

**UNDISPUTED FACTS**

1. The Debtor and Savannah Capital are both shareholders of DeVille, an active for-profit corporation organized under Florida law on March 21, 2003.

2. The Debtor is an original shareholder of DeVille and, since its incorporation, has served as its President.

3. Savannah Capital was not an original shareholder of DeVille, nor did it subscribe to the stock; instead, Savannah Capital claims to have acquired the interest through the purchase of stock from Miami Springs Resorts, Inc. (Doc. 29, Claim No. 7-1).

4. Savannah Capital's claim to possession of a legal interest in DeVille was given legal effect by the issuance of a declaratory judgment by a state court on November 21, 2014. (Doc. 29).

5. Savannah Capital has made no assertion that Debtor borrowed monies or received monies directly from Savannah Capital.

## PROCEDURAL BACKGROUND

6. The Debtor filed a voluntary petition for Chapter 7 relief on November 14, 2014.

7. On December 10, 2014, the Debtor filed his schedules and statement of financial affairs. Though the Debtor contests that it owes Savannah Capital any debt, the Debtor listed Savannah Capital as a "creditor" on Schedule F in accordance with bankruptcy rules, characterizing the claim as a contingent, unliquidated, disputed claim for an unknown amount. (Main Doc. 9).

8. On December 18, 2014, the Trustee gave notice of recovery of assets and the need to file proof of claims to all creditors and parties in interest and requested the Court to set a claims bar date (Main Doc. 12). The deadline to object to the Debtor's discharge was set as February 17, 2015 and the claims bar date was set as March 23, 2015.

9. Savannah Capital failed to file a proof of claim or an objection to the Debtor's discharge within the time provided, giving rise to the first wave of litigation on Savannah Capital's claim and nondischargeability complaint (Main Docs. 38, 45, 50, 72, & 73).

10. On May 1, 2015, Savannah Capital filed its Proof of Claim, Claim. No. 7-1 (the "Claim"). The Claim states Savannah Capital is owed "$1,514,018.00 or greater" from the Debtor "based upon the Actionable Misconduct". The "Actionable Misconduct" is described as

Case 3:16-cv-02155-MMC Document 15-2 Filed 01/17/17 Page 14 of 19 PageID 1546

improper conduct that the Debtor engaged in while in control of DeVille, specifically: "(a) funding a loan to himself for $1,028,162, through sporadic checks written out of the DeVille bank account . . . (b) failing to account as requested in connection with the business and financial operation of DeVille; (c) permitting secured loans owed by DeVille to go into default in such a manner that valuable property located at 128-130 Second Avenue North, Nashville, Tennessee (the "Second Avenue Property") was lost at foreclosure thus diminishing the net worth of DeVille; and (d) failing to account to Savannah or DeVille for the inappropriate actions and lost opportunities resulting from the apparent bankruptcy of DeVille." (Claim 7-1 , pp. 3-4).

11. At a hearing held on June 11, 2015, the Court deemed Savannah Capital's late-filed Claim as timely, but reserved ruling on the allowance of the Claim. *See* Transcript of June 11, 2015 Hearing (Doc. 16, p. 28) ("I'm not validating the claim, which is probably your primary concern. It's not allowing the claim. I'm allowing the claim to be filed, all right? And if you wish to object to it, which you may well do – object to the allowance of the claim, I'll give you 30 days to do that, and then your objection will travel with what's left of the adversary proceeding.").

12. On July 15, 2015, the Debtor filed its objection to the allowance of Savannah Capital's Claim (the "Objection"). (Main Case Doc. No. 91).

13. The Court has not ruled on the Debtor's Objection.

14. The Debtor reaffirms its position taken in its Objection and asks that this Court to dismiss the complaint for lack of standing and disallow Savannah Capital's Claim as a matter of law.

## APPLICABLE LAW

### A. Summary Judgment Standard

15. Pursuant to Federal Rule of Bankruptcy Procedure 7056(c), summary judgment shall be rendered when the moving party demonstrates that no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law. Fed. R. Bankr. P. 7056(c). *See also Celotex v. Catrett*, 477 U.S. 317, 322 (1986). The purpose of summary judgment is to determine if there are genuine issues for trial. *Banco Latino International v. Gomez Lopez*, 95 F.Supp.2d 1327, 1332 (S.D. Fla. 2000); *Mulhall v. Advance Security, Inc.*, 19 F.3d 586, 590 (11th Cir. 1994).

16. To defeat a motion for summary judgment, the opposing party must do more than simply show that there is some doubt as to the facts of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986). The party opposing the motion must establish (a) the existence of a genuine issue of material fact and may not rest upon its pleadings or mere assertions of disputed facts to defeat the motion, and (b) that the movant is not entitled to judgment as a matter of law. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

### B. Savannah Capital Lacks Standing to Bring these Claims

***Savannah Capital Cannot Establish the Existence of a Debt***

17. Before a debt can be determined dischargeable, "a plaintiff must establish that the debtor owes him a debt." *Brown v. Vega (In re Vega)*, 2014 Bankr. LEXIS 2612 at *4 (Bankr. M.D. Fla. June 2, 2014). A "debt" is a liability on a claim. 11 U.S.C. § 101(12). A "claim" is a "right to payment, whether such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."

11 U.S.C. § 101(5). "The plain meaning of a 'right to payment' is nothing more nor less than an enforceable obligation." *Pennsylvania Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 559 (1990) *superseded by statute on other grounds*.

***Savannah Capital's Alleged Claims Belong to the Corporation***

18. Under well-established law, a corporation is a distinct legal entity and holds property separate and apart from its owners. According to the Florida Business Corporation Act, a Florida corporation by default "has the same powers as an individual to do all things necessary or convenient to carry out its business and affairs," including the right to sue and be sued, the right to acquire or dispose of a legal or equitable interest in property, and to lend money. Fla. Stat. § 607.0302.

19. A corporation's property includes the right to be repaid when a shareholder, officer, or director causes a wrongful distribution of corporate assets or where a director breaches a fiduciary duty owed to the corporation. *See*, *e.g.,* Fla. Stat. § 607.0834 ("A director who votes for or assets to a distribution made in violation of s. 607.06401 or the articles of incorporation <u>is personally liable to the corporation</u> for the amount of the distribution that exceeds what could have been distributed without violating s. 607.06401 or the articles of incorporation if it is established that the director did not perform his or her duties in compliance with s. 607.0830) (emphasis added); Fla. Stat. § 607.0831.

20. Accordingly, when a shareholder, officer, or director dissipates, misappropriates, or otherwise misuses a corporation's assets, it is only the corporation who is individually injured and only the corporation who is entitled to recover damages directly from the wrongful actor.

*White v. Whittle (In re Whittle)*, 449 B.R. 427, 430 (Bankr. M.D. Fla. 2011) (holding the same to be true with respect to Florida limited liability corporations and its members).

> An action brought by a stockholder is derivative if the gravamen of the complaint is injury to the corporation or to the whole body of its stock or property and not injury to the plaintiff's individual interests as a stockholder. … Conversely, direct action, or as some prefer, individual action, is a suit by a stockholder to enforce a right of action existing in him. What these definitions attempt to convey is that a stockholder may bring suit in his own right to redress an injury sustained directly by him, and which is separate and distinct from that sustained by other stockholders. If, however, the injury is primarily against the corporation, or the stockholders generally, then the cause of action is in the corporation and the individual's right to bring it is derived from the corporation.

*Alario v. Miller*, 354 So.2d 925, 926 (Fla. 2d DCA 1978) (holding no individual action exists if damages are only indirectly sustained by shareholders as a result of injury to corporation).

21. Where a shareholder institutes a suit directly against another shareholder, officer, or director for an alleged injury directly tied to corporate losses, courts are quick to dismiss the suit for lack of standing. *See, e.g.*, *Mann v. Kendall Props. & Invs., LLC (In re AS Mgmt. Svcs.)*, 2007 Bankr. LEXIS 2838 (Bankr. S.D. Fla. Aug. 16, 2007) ("A shareholder lacks standing to recover individually for injuries done to his corporation."), *citing Schaffer v. Universal Rundle Corp.*, 397 F.2d 893, 896 (5th Cir. 1968).

22. Here, this "actionable misconduct" described in Savannah Capital's Claim and repeated in the complaint asserts injuries that directly affect the corporation and only indirectly touch Savannah Capital. Such injuries are derivative in nature. *See Hodges v. Buzzeo*, 193 F. Supp. 2d 1279, 1289 (M.D. Fla. 2002) (counterclaim for breach of fiduciary duty brought as direct claim dismissed because factual allegations supporting claim showed no direct injury to minority shareholder).

Case 8:16-cv-02155-VMC Document 13-8 Filed 10/17/16 Page 145 of 193 PageID 1069

23. Because the Claim and complaint have been brought against the Debtor in bad faith–in order to harass the Debtor and to gain an advantage against the Debtor in his bankruptcy case–the Debtor asserts that sanctions should be awarded in accordance with the Court's inherent power, which is separate and distinct from Rule 11. *See Peer v. Lewis*, 606 F.3d 1306, 1308 (11th Cir. 2010).

**WHEREFORE**, the Debtor respectfully requests that this Court (a) grant Summary Judgment in favor of Debtor, (b) dismiss the Complaint; (c) disallow Savannah Capital's Claim 7-1, (d) award sanctions under its inherent powers, and (e) grant such other and further relief as the Court deems appropriate.

Dated: May 17, 2016.

Respectfully Submitted,

/s/ Lori V. Vaughan
LORI V. VAUGHAN
Florida Bar No. 0154921
lvaughan@trenam.com
TRENAM, KEMKER, SCHARF, BARKIN,
FRYE, O'NEILL & MULLIS, P.A.
101 E. Kennedy Blvd., Suite 2700
Bank of America Plaza
Tampa, Florida 33602
Post Office Box 1102
Tampa, Florida 33601-1102
Telephone: (813) 223-7474

*Co-Counsel to Thomas S. Martino*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 17, 2016 a true and correct copy of the foregoing DEBTOR'S MOTION FOR SUMMARY JUDGMENT AS TO ALL COUNTS OF COMPLAINT AND AS TO HIS OBJECTION TO SAVANNAH CAPITAL'S PROOF OF CLAIM FOR LACK OF STANDING has been furnished by electronic (CM/ECF) to all registered **CM/ECF recipients**.

/s/ Lori V. Vaughan
Attorney

IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| IN RE: | |
| THOMAS SALVADOR MARTINO<br>Debtor | Case No. 8:14-bk-13452-KRM<br>Chapter 7 |
| SAVANNAH CAPITAL, LLC<br>Plaintiff | Adv. No. 8:15-ap-00418-KRM |
| vs. | |
| THOMAS SALVADOR MARTINO<br>DEVILLE CORP.<br>Defendants | |

U.S. Courthouse
801 North Florida Avenue
Tampa, Florida 33602
Held June 9, 2016

TRANSCRIPT OF HEARING
[Re: 8:14-bk-13452]
Objection to Claim #7-1 of Savannah Capital, LLC, filed by the Debtor (Doc. #91) (for tracking only with AP 15-418)

[Re: 8:15-ap-00418]
1-Motion for Summary Judgment as to All Counts of the Complaint and as to Objection to Savannah Capital's Proof of Claim for Lack of Standing, filed by Lori Vaughan on behalf of Defendant Thomas Salvador Martino (Doc. #56); Response filed by Stephenie Biernacki Anthony on behalf of the Plaintiff, Savannah Capital, LLC (Doc. #58); 2-Continued Pretrial on Complaint by Savannah Capital, LLC against Thomas Salvador Martino, Deville Corp.

BEFORE THE HONORABLE K. RODNEY MAY
UNITED STATES BANKRUPTCY JUDGE

PROCEEDINGS DIGITALLY RECORDED BY COURT PERSONNEL
TRANSCRIPT PRODUCED BY COURT-APPROVED TRANSCRIPTION SERVICE

---

**JOHNSON TRANSCRIPTION SERVICE**
7702 Lake Cypress Drive
Odessa, Florida 33556
(813) 920-1466

APPEARANCES:

| | |
|---|---|
| For Savannah Capital, LLC | STEPHENIE ANTHONY, Esquire<br>DOMINIC A. ISGRO, Esquire<br>Anthony & Partners, LLC<br>201 N. Franklin Street<br>Suite 2800<br>Tampa, Florida 33602<br>813-273-5613<br>santhony@anthonyandpartners.com<br>disgro@anthonyandpartners.com |
| For the Debtor Thomas Martino | D. LEE PITISCI, Esquire<br>Pitisci Dowell Markovitz Murphy<br>101 S. Moody Avenue<br>Tampa, Florida 33609-3333<br>813-228-9233<br>leepitisci@pdmmlaw.com |
| For the Debtor Thomas Martino (as special counsel) | LORI V. VAUGHAN, Esquire<br>Trenam Law<br>101 E. Kennedy Boulevard<br>Suite 2700<br>Tampa, Florida 33602<br>813-223-7474<br>lvaughan@trenam.com |

P R O C E E D I N G S

(Proceedings commenced at 2:04 p.m.)

COURTROOM CLERK: Case No. 14-13452, Thomas Salvador Martino, and Adversary Proceeding 15-418.

THE COURT: All right. Appearances?

MR. VAUGHAN: Good afternoon, Your Honor. Lori Vaughan here on behalf of the Debtor, Thomas Martino, as special counsel.

MR. PITISCI: And Lee Pitisci here on behalf of Thomas Martino as well.

THE COURT: Thank you.

MS. ANTHONY: Good afternoon, Your Honor. Stephenie Anthony for Savannah Capital, LLC.

MR. ISGRO: Good afternoon, Your Honor. Dominic Isgro, also for Savannah Capital.

THE COURT: Thank you. How do you spell your name?

MR. ISGRO: It's I-s-g-r-o.

THE COURT: Thank you. All right, we have a motion by Ms. Vaughan.

MS. VAUGHAN: Yes, Your Honor. We were here, I think it's been a couple of weeks now, Your Honor, and we talked about the Savannah Capital claim.

THE COURT: Uh-huh.

MS. VAUGHAN: That was with respect to the auction

that Your Honor conducted. And we made several arguments at that hearing why we believed Savannah Capital doesn't actually have a claim in this bankruptcy case.

Today though, Your Honor, based on our summary judgment motion, we're actually here only arguing one of those legal issues, which is the standing issue. And in doing that, I just want to make it clear. We're not conceding any of those other issues.

We truly believe there's really no merit to the allegations of the claim and that is for the bases that we brought forth before. However, those are not the subject of our motion for summary judgment.

What we're here on, though, is a threshold issue that we thought appropriate to bring at this time, which is whether the claims that Savannah Capital has brought in this case and, accordingly, the complaint for nondischargeability actually belong to Savannah Capital or belong, instead, to Deville Corp.

And, Your Honor, this is an important issue. This is an issue that we think needs to be decided early in the case, should be decided before discovery proceeds.

And that is because -- and we think it's appropriate to decide this before discovery proceeds because, Your Honor, the issue isn't whether Savannah Capital can assert a claim against the Debtor or could

assert a claim against the Debtor with the right allegations, but the issue is: Have they asserted a claim and have they asserted that they have standing to bring that claim.

So let me address, first, the issue that I believe Savannah Capital is going to argue, and they've raised in their papers, to say that this issue has already been decided by Your Honor. With respect, Your Honor, I believe that is not accurate.

Now, Your Honor has heard this argument two times; I admit that. Your Honor heard it with respect to the request for an extension of time to bring the nondischargeability action, and then again with respect to a motion to dismiss that cause of action.

And at that hearing, Your Honor -- and the transcript has been filed with the Court, I believe it was filed last night, a copy of it, by Savannah Capital -- counsel argued, Ms. Anthony argued that there's a very low standard to overcome a motion to dismiss. And Your Honor ruled that you would allow the case to go forward, require us to answer, but you didn't rule really on the derivative standing issue, whether the claim belongs to Savannah Capital or to the Deville Corp.

And actually Your Honor said that we could revisit the issue at summary judgment. Counsel even conceded that

issue in the transcript. You can see this.

And just for the record, Your Honor, there's a quote from Your Honor at page 40 of the transcript where you said we could bring this issue up at summary judgment. And then at page 38 of the transcript where Ms. Anthony says, you know, the standard is low but if they want to come back and argue this at summary judgment, then so be it. So that's why we're here today.

THE COURT: I remember that.

MS. VAUGHAN: Yeah, okay.

THE COURT: And even in the corporate context, if one shareholder has a direct claim against another shareholder for anything -- running them over with a car or anything that they can bring -- I didn't want to foreclose that at the dismissal stage.

But now that we've framed the issues and the facts are out in the open, the question is whether the claim, reading the four-corners of the complaint, whether the claim alleged is a claim of the corporation versus the shareholder.

And so I'm not going -- I certain don't feel bound by any decisions that I made at the dismissal stage.

MS. VAUGHAN: Okay. Thank you, Your Honor. So, again, I submit the question, Your Honor, as I think you just stated, which is not whether they could assert a claim

but whether they actually have asserted a claim, and whether Savannah Capital has standing to bring that claim.

And, Your Honor, we cited case law in our motions that tells us that the Court should look at the four corners of the complaint, as you pointed out. We cited the Culverhouse v. Paulson decision, which is a recent -- a 2016 decision from the Eleventh Circuit. It's at tab 12 of our binder, Your Honor, 813 F.3d 991, that says that you have to look at the -- you look at the allegations in the complaint and decide whether there's standing.

We also cited the case of Alario v. Miller, which is found at tab 5 of our binder. And that's a Second DCA opinion, Your Honor, 354 So.2d 925. At page 2 of that decision, the Court said you look at the body of the complaint to decide whether there's standing. And, Your Honor, both of those cases are cases that dealt with the issue of derivative claims versus direct claims.

So in this case, Your Honor, we have to look at the complaint, but we also have to look at the proof of claim, and we are tracking those together in this adversary proceeding. But the reason is, Your Honor, if there's no claim to begin with, then Savannah Capital doesn't have the standing to bring the nondischargeability action.

So the complaint, Your Honor, and the proof of claim are largely identical. So if you look at the

allegations, you'll see that the claims there, they set them out --

THE COURT: Is the complaint in your binder?

MS. VAUGHAN: It is, Your Honor, actually. I apologize. It is at the end. It is -- the complaint is tab 16.

THE COURT: 16.

MS. VAUGHAN: And the claim --

THE COURT: And the claim is 17.

MS. VAUGHAN: The claim is 17, Your Honor.

THE COURT: Thank you.

MS. VAUGHAN: Your Honor, the claim seems to be -- the language in the proof of claim seems to be a little bit more developed, so I typically refer to that. But I believe if you look at -- it's page 3 of 6 of the proof of claim, you'll see there an a, b, c, d. That is actually repeated in the complaint and that's kind of the basis -- the overall basis for the claims that they're alleging.

And, Your Honor, those are claims that are based on fraud as they allege. One dealing with what they call loans or checks that were from Deville Corp to Martino. The second allegation is with respect to a piece of property that Deville Corp owned and then an allegation that Mr. Martino improperly allowed that property to be foreclosed upon.

And then, Your Honor, there's a really undetailed allegation about failure to provide documents, but there's no allegation as to what documents we're talking about, when they were requested, or anything of that nature.

Your Honor, so why do we contend that these are Deville Corp's claims and not direct claims by Savannah Capital? Well, first, it's because these loans, and the checks and the property that they're talking about, these are all assets of Deville Corp, not assets of Savannah Capital.

But, Your Honor, the most telling part of their claim is when you come to how they calculate the damages. And if you look at -- this is at tab 17, again, behind the proof of claim.

If you look at page 5 of 6, the third full paragraph down that starts with, "Savannah is a creditor," in there you'll see how they calculate their damages.

And the calculation, Your Honor, is that they believe that the property had a value of about -- I'm sorry, about 2 million, and that there was about 1 million worth of checks to Mr. Martino. And it says specifically in that paragraph, "One half of the loan and one half of the equity lost in the property." That's how they come up with this claim of $1.5 million.

They don't allege any direct loss to them but

they're basically saying, "The damage to Deville was $3 million, Your Honor. We own half of Deville so the damage to us is 1.5."

Your Honor, that's the most telling part of their claim that tells you that this is not a claim for direct damage, but damage to the company that they say indirectly damages them.

So under Florida law, Your Honor -- and I'll get to the cites here in a minute -- the standard is if the damages that are alleged by a shareholder are only indirectly sustained as a result of an injury to the corporation, then that is not a direct claim. And that's exactly what we have in this case, Your Honor.

I think the most telling case or the most on-point case that we've cited is a case called White v. Whittle, which is at tab 4 of your binder, Your Honor. And this is a case that we believe is directly on point. In that case, you have two 50 percent owners, 50 percent members of an LLC.

THE COURT: Uh-huh.

MS. VAUGHAN: One member was in bankruptcy; the other 50 percent member brought a claim and then sued in the Bankruptcy Court to have that claim declared nondischargeable.

The claims are actually very similar to the claims

here. The claimant alleged that the Debtor received excessive payments from the LLC and the claimant also claimed that the Debtor hid the fact of those payments by not providing financial information to the other member.

In that case -- it's a Judge Jennemann case -- and I realize I didn't cite it here. It's 449 B.R. 427 from 2011. Judge Jennemann ruled that the claims belonged to the LLC and not the member. The member wasn't actually owed the debt. The LLC was owed the debt, so if there was any damage to the member, it was only indirectly as a result of the damage to the LLC. And the Court ruled in that case that because there was no debt, there was no claim that the member could assert and therefore the dischargeability action had to be dismissed.

The second case I would cite, Your Honor, that's also mentioned in our moving papers, is the Hodges v. Buzzeo case, which is found at tab 8 of our binder. This is a case from the District Court in Tampa, 193 F.Supp. 2d 1279, decided in 2002.

In that case, Your Honor, this was a closely-held corporation. There were three shareholders. One minority shareholder filed suit against two majority shareholders and alleged in that case that the majority shareholder stripped the company of its assets, took company assets for their own benefit.

And the Court in that case ruled, again, that those were not direct claims; that those were derivative claims. That the harm that was felt in that case was an injury to the corporation, and the injury was only felt by the shareholders as a result of their equity interest in the company.

And so, Your Honor, those are the reasons that we assert these are derivative claims. They're not direct claims, they're not claims held by Savannah Capital. There was no -- there's no allegation of any loans or any money going directly from Savannah Capital to the Debtor.

So we think it's appropriate, Your Honor, to dismiss the cause of action.

THE COURT: All right. Thank you. Why shouldn't I do that and disallow the claim?

MS. VAUGHAN: And disallow the claim, too, yes.

MS. ANTHONY: Your Honor, with respect to the objection to the claim, the Debtor doesn't actually have standing to object to the claim in this Chapter 7 case. And I would cite for Your Honor, In re Costello at 184 B.R. 166. That's a Middle District bankruptcy case from 1995. Also, In re Stanley, 114 B.R. 777, also a Middle District bankruptcy case of 1990.

The standing is that of the Chapter 7 Trustee, so I'm happy to provide Your Honor with copies of those cases.

MS. VAUGHAN: Are there copies? Because that wasn't argued in the briefs, so I don't know if you have copies today to look at. I haven't had a chance to look at those cases.

MS. ANTHONY: Your Honor, I might have -- (locating documents.) Apparently I have the only copies of those cases, Your Honor.

Now, with respect to the argument on standing in the adversary proceeding, we believe that Your Honor was correct in the hearing at the motion to dismiss. You stated -- and we have highlighted copies of the transcript if that's helpful.

"It seems to me that in a closely-held corporation, unlike a corporation with lots of shareholders, that one shareholder who handles -- who has his hands on the control of the corporation, could directly injure the other shareholder buy mismanaging the corporation."

And Mr. Pitisci argued, you know, over and over that -- asking Your Honor to take it under advisement. And you said, "I think it's sufficient to....get past a motion to dismiss." And we would agree that you did say that they could revisit this come summary judgment but --

THE COURT: Yeah, we're going to do that. I don't feel bound by that at all.

MS. ANTHONY: But my point is, Your Honor, you

were correct. There are cases that provide --

THE COURT: Well, no, I wasn't correct. What I was saying was that I could conceive of that kind of situation. I could conceive of it, and I'm going to let you have a chance to develop it. And we're there now.

MS. ANTHONY: Your Honor, we actually aren't there because we have not been able to do any discovery because counsel said: Well, no, we think that this should be a matter for summary judgment and you don't need any discovery to get this back in front of the Court.

So basically nothing has happened since you said: No, we're going to make you answer and you can pick this back up at discovery, or pick this back up for summary judgment. They haven't let us conduct any discovery.

So, Your Honor, I would cite to the Eleventh Circuit cases on point that summary judgment here is premature. Snook v. Trust Company of Georgia Bank of Savannah, N.A., at 859 F.2d 865. That's a 1988 case. Also Booher v. Turtle Cove Marina Condo Association, Inc., and that's a 2015 case, Middle District of Florida.

Both said: "Summary judgment should not be granted until the party opposing the motion has had an adequate opportunity for discovery." "Summary judgment is inappropriate when the party opposing it has been unable to obtain responses to discovery requests."

Your Honor, it was conceded at prior hearings that discovery -- this case was in the infancy stage. And that it was going to be litigated hard and would go on for a long time. And that was mentioned by Ms. Vaughan at the hearing when we were here talking about -- it was in connection with the auction.

Let's see. It was from the May 12th, 2016 hearing, page 23, line 16 through 22. She states, "The other lawsuit in the 523 action, which discovery hasn't even started. We haven't even had a Rule 26 conference. Nothing's been scheduled. There's still a long time to go in that action. They're accusing our client of fraud for, I think, over a million dollars, and we're going to fight that pretty vigorously."

So, Your Honor, they have conceded that no discovery happened. They're making the same argument that they did in the motion to dismiss hearing, and we have not been able to develop the facts of the case. Our position is basically that summary judgment should be denied as premature.

Now, we do have some cases, Your Honor, that state positions that we believe are helpful to us. In the Hantz v. Belyew case, it's an Eleventh Circuit case from 2006, it says --

THE COURT: What's the citation?

MS. ANTHONY: Oh, I'm sorry. 194 Fed. Appx. 897. Now, in that case, the Court found that claims were based on misbehavior detrimental to a bunch of shareholders and not just the plaintiff. So the plaintiffs did not have standing.

Now, that's not the situation we have here. We have the 50 percent interest holder and the one that had control of the company injured the other one, our client.

In the Hantz case it says: The state law determines whether the cause of action is derivative and in Florida courts use the gravamen test to determine whether the suit is direct or derivative in nature. And under the gravamen test a stockholder may bring a suit in his own right to redress an injury sustained directly by him and which is separate and distinct from that sustained by other stockholders. And then if, however, the injury is primarily against the corporation or the stockholders generally, then the cause of action is in the corporation, and the individual's right to bring it is derived from the corporation.

But then look at some of the other cases I have that are more on point, In re Phillips at 185 B.R. 121. That's a bankruptcy case from the Eastern District of New York, 1995. And it says: To determine whether an action sets forth a derivative claim or a direct claim, a court

will usually look to whether it was the corporation or the individual that sustained the direct injury. And where -- now, this is a 50/50 case. Also Chapter 7 Debtor was alleged to have done the wrongdoing.

The court says: Where, as in this case, the matter concerns a closely-held corporation in which all ownership is vested in the two parties to the lawsuit, there can be little doubt that any injury to the corporation caused by one 50-percent owner is, in fact, a direct injury to the other owner. Therefore, the plaintiff's injury is direct whether he sues directly or as an individual, or as a shareholder. So, Your Honor --

THE COURT: And which case was that?

MS. ANTHONY: That is In re Phillips at 185 B.R. 121. It's an Eastern District of New York bankruptcy case from --

THE COURT: I'm sorry, 185 B.R. --

MS. ANTHONY: 121, yes.

THE COURT: Uh-huh.

MS. ANTHONY: And then also we have In re Beeber, which is at 239 B.R. 13 -- and I do have copies of these cases for both Your Honor and opposing counsel.

THE COURT: I'm sorry. What page?

MS. ANTHONY: In re Beeber at 239 B.R. 13. That was another 50 percent, 50/50 shareholder situation. And

again, the Court stated the same thing: There can be little doubt that an injury to the corporation caused by one 50 percent owner is, in fact, a direct injury to the other owner.

And then I would cite to Your Honor, In re Pervis at 497 B.R. 612. That's a Northern District of Georgia bankruptcy case, 2013. And that says -- and this is a former associate of another closely-held corporation asserting some more claims for fraud, breach of fiduciary duty, tortious interference, breach of contract and seeking nondischargeability of the same.

The court says: Generally, shareholders seeking to recover misappropriated funds must bring a derivative action. However, there are two exceptions to the rule. If the shareholder can show his injury is separate and distinct from the corporation or that the wrongdoer owed him a special duty, then the shareholder may maintain an action, individual action, even if the corporation also has a cause of action from the same wrong, or when the circumstances show that the reason for the general rule requiring a derivative suit do not apply.

And we certainly have that here, Your Honor. The reasons for requiring a derivative suit are to prevent a multiplicity of lawsuits by shareholders. We don't have that.

It's to protect corporate creditors by putting proceeds of the recovery back in the corporation. I don't believe we have that either.

It's to protect the interest of all shareholders by increasing the value of their shares. There's no market for these shares so that doesn't apply either, Your Honor.

And adequately compensate the injured shareholder by increasing the value of the shares. Again, that doesn't apply to this case.

So the court says: Often the reasons for proceeding derivatively are absent in close corporations. And that's what we would state, Your Honor, is the ruling that we would like Your Honor to reach.

THE COURT: What was the status pre-bankruptcy? Was there a State Court lawsuit?

MS. ANTHONY: Your Honor, my understanding was that it was just an action to obtain documents because Savannah Capital had not been able to get documents that it requested. And there was some dispute initially about whether or not Savannah Capital was even an owner of the company, which was ultimately conceded. And so they are entitled to documents. We haven't really received any documents but, nonetheless, it was pretty -- kind of a limited action just to get documents in the State Court action.

THE COURT: What's the status of Deville Corp. now?

MS. ANTHONY: Your Honor, we don't have information because Mr. Martino is running it.

THE COURT: Okay.

MS. VAUGHAN: Your Honor, Mr. Pitisci tells me, who is working on those State Court matters, that that's not actually true, that documents were provided to Savannah Capital as part of that lawsuit. So --

THE COURT: No, but what was the lawsuit? Was it to obtain derivative status? Was it --

MS. VAUGHAN: No, it was for accounting. It was for --

THE COURT: It was not a derivative lawsuit?

MS. VAUGHAN: It's not a derivative lawsuit. There is no lawsuit, Your Honor. And that's my problem, Your Honor, is that --

THE COURT: Oh, wait. She's not --

MS. VAUGHAN: Oh, I'm sorry.

THE COURT: Are you finished? I certainly didn't mean to allow Ms. Vaughan to interrupt your presentation. Ms. Anthony, you may proceed if you hadn't finished.

MS. ANTHONY: Your Honor, I believe I was mostly finished. I just really wanted to make the point of the cases we believe support the fact that our client can have a

-- does have standing and can have a direct claim against the Debtor in this matter.

And certainly we should be able to conduct discovery before summary judgment is ruled on. I mean, we're basically re-arguing what we did a few months ago and haven't been able to get any further down the road with respect to documents or depositions.

We had tried to serve some discovery and the Debtor agreed to produce, I believe, two -- produce documents responsive to two out of 45 production requests. So we really haven't gotten far at all, Your Honor.

At the last hearing, Your Honor, we had also cited the Pieper case which was another case. It was a Judge Paskay case where the principal of the corporation was held directly liable for wrongdoing done in his fiduciary capacity. But I don't want to forget about mentioning that case again.

THE COURT: What case is that?

MS. ANTHONY: That is In re Pieper at 119 B.R. 837. That's a bankruptcy Middle District of Florida 1990 case. And it basically just said: Where a corporate officer causes defalcation or fraud by the corporation, that officer may be personally liable whether or not he personally profited from that defalcation or fraud and in turn that liability may be nondischargeable.

So, Your Honor, we believe we should be entitled to proceed forward, conduct our discovery, and then when the facts are at issue and uncovered then maybe the Debtor can move for summary judgment again. But it's certainly premature at this time.

THE COURT: Okay. Just a question as to how would a derivative claim ever be prosecuted?

MS. VAUGHAN: Well, Your Honor, there is a process --

THE COURT: If Deville is a creditor of this Debtor --

MS. VAUGHAN: Well, they may be.

THE COURT: They may be.

MS. VAUGHAN: We don't know that they are.

THE COURT: On the merits they may not be.

MS. VAUGHAN: Right.

THE COURT: But you concede -- and it seems obvious -- that Deville would have standing --

MS. VAUGHAN: That Deville would have standing if these claims existed, Your Honor.

THE COURT: -- to allege --

MS. VAUGHAN: But here's my problem, Your Honor. This issue has been raised over several months numerous times. There's steps that Savannah Capital could have taken to bring a derivative claim and they've chosen not to, for

whatever reason. I don't know why. I have no comprehension of that. But they've chosen to go forward on this and --

THE COURT: And the time has run.

MS. VAUGHAN: And the time has run, Your Honor. And that raises an issue. I mean, my client has the right to know what claims are being prosecuted against him.

THE COURT: Yes.

MS. VAUGHAN: There's a reason for these deadlines. And it's an issue of standing. I don't want to get to, as Ms. Anthony pointed out, they had 45 document request, right, before we even had a Rule 26 conference. You can see that the discovery that they're going to seek in this case is far reaching. And I contend that, you know, it's kind of a fishing expedition.

But with respect to the issue -- I guess just to address the discovery issue first and foremost, this is an issue that we can decide based on the corners of the complaint, Judge, whether they've asserted a claim that is direct or derivative. We don't need discovery.

Discovery is not going to change whether what they've alleged is a direct claim or a derivative claim. That's not going to matter. And we've cited two cases in our brief --

THE COURT: Yeah, the Eleventh Circuit Culverhouse and Judge Jennemann's case.

Case 8:16-cv-02105-VMC Document 83 Filed 01/04/17 Page 24 of 34 PageID 1234


MS. VAUGHAN: Well, we cited those two, but also on just the discovery issue, Your Honor.

THE COURT: Oh, on this, uh-huh.

MS. VAUGHAN: We cited a couple of cases including we cited to the Snook case which I concede that the Eleventh Circuit generally says you've got to have discovery before you can rule on summary judgment. But that's the general rule. It's not a hard and fast rule that can't be overcome. And the case that Ms. Anthony cites in her brief, the Snook case, even says that: If the documents or other documents sought would be relevant to the issues presented by the motion for summary judgment.

And then we cited an additional case, Your Honor, in our brief, Cordoba v. Dillard's, 419 F.3d 1169, which is an Eleventh Circuit case from 2005, where the Court said, you know, you know: There's no reason to assume that a District Judge will refuse to rule on a summary judgment motion at an early stage of the litigation if the moving party clearly apprises the Court that a prompt decision will likely avoid significant unnecessary discovery. In fact, we expect that District judges will be open to such motions.

And that's what we have here, Your Honor. The discovery is not going to reveal anything with respect to whether they have standing on these claims. So it's appropriate to rule on this now.

Plus, why would we take a case where they don't have standing to the end with all this discovery, requiring my client to spend all this time defending himself, if it turns out the claim doesn't actually belong to them in the first place.

If there's a way for them to remedy it, then let them figure that out. I'm not going to tell them what the appropriate way to do that is. I'm not sure I even know exactly how to do that.

But, you know, my argument is, Judge, dismiss it and let them figure out if they can bring it the correct way and then preserve our arguments to defend that in the event they attempt to come back.

And just as a point of fact, Your Honor, with respect to the cases that they cite, other than the Judge Paskay case, it seems to me that the cases, Phillips, Beeber and Pervis, all are not in Florida. I haven't reviewed them, but I think it's conceded that Florida law is what applies.

And we've cited in our motion, Your Honor, I cited that -- I pointed out in my argument the two, I think, most appropriate cases, the most on-point cases from Florida on this issue. We cited three other cases in our motion -- I think they're all from Florida -- that also talk about the standards.

And I would just point out, the two cases that I cited to Your Honor, the Judge Jennemann case and the Second DCA case, were both closely-held corporation cases and it didn't seem to make any difference in that judge's ruling.

So I don't think it's appropriate to cite cases from other jurisdictions. Admittedly, Your Honor, I haven't seen any of these cases because there was no brief filed that addressed them. So I haven't had a chance to review them.

I don't know what Judge Paskay's Pieper decision says, but to say that an officer may be personally liable for actions that they take, I think doesn't address the final issue, which is to whom are they liable.

THE COURT: The question really here is whether conduct by a managing member in an LLC or a managing officer and director in a closely-held corporation, if they engage in conduct that damages the corporation.

There are only three parties in the room -- the two shareholders and the entity. And the cases that you've cited support the proposition that (a) you look to the four corners of the complaint and see what's alleged as the claims -- see what claims are alleged.

Secondly, you analyze them as to whether the losses are direct to the Plaintiff or they're indirect to the Plaintiff through the losses to the corporation.

And here, that's the case. And even though it seems like a harsh result to dismiss this action, the fact remains that no steps were taken to file a claim on behalf of Deville Corporation.

And that's the point of law here that could go either way. Whether I were to say: Well, it's just like Deville Corporation, this is the party that could sue derivatively on behalf of Deville versus the cases that you've cited to me where other judges have taken the opposite approach. This is clearly an indirect loss. It's an indirect claim. It's damage to an entity in which the Plaintiff here was the 50 percent shareholder.

And I think the tipping point here is no action was taken in State Court previously and no steps were taken here in this court to assert a derivative claim on behalf of the corporation. That is the entity. That's the relief that the law allows, is to sue Mr. Martino to have him put money back in the corporate coffers.

And I'm going to grant your motion. If you would give me a draft for the reasons I've just stated, but a draft summary of findings of fact and conclusions of law. Share it with Ms. Anthony and then I'll edit it before I enter it. But that's what I'm going to do. I'm going to grant your motion for summary judgment.

As to the standing, while it's a general rule that

a debtor that's out of the money, where there's no surplus, has no standing to object to claims, I don't know whether there's going to be a surplus in this case or not. And it's a -- the conclusion to disallow the claim flows directly from the ruling in the adversary proceeding. And I see no benefit to making the Trustee, compelling the Trustee to take the papers from this proceeding and object to your claim. I'm going to disallow the claim as well.

So if you would give me an order --

MS. VAUGHAN: Two orders?

THE COURT: -- for the reasons stated on the record in open court disallowing the claim and a form of findings of fact and conclusions of law in the adversary, I will edit that and supplement it as necessary to suit my taste.

MS. VAUGHAN: Your Honor, with respect to the adversary proceeding, since this is a summary judgment motion, perhaps I should just draft it as a memorandum opinion instead of findings of fact.

THE COURT: That would be fine

MS. VAUGHAN: Okay.

THE COURT: That would be fine because I think I've got a full grasp of it. You're not giving me anything new. But run it by Ms. Anthony because this is not -- this is not going to be a ghost writing --

MS. VAUGHAN: Yes.

THE COURT: -- but it is going to expedite the process.

MS. VAUGHAN: I will do that, Your Honor.

THE COURT: All right. Than you very much.

MS. ANTHONY: Your Honor?

THE COURT: Yes, Ms. Anthony?

MS. ANTHONY: Initially, we did have Deville as a Defendant in this action. And Your Honor had dismissed Deville.

THE COURT: A Defendant?

MS. ANTHONY: Yes. We were trying to dissolve Deville and also get an accounting from Deville. And Your Honor dismissed them at Mr. Martino's -- on his motion. And we objected to that as well.

As far as the derivative -- the procedure for derivative action, I mean, I believe you have to make a demand on Deville and then we would proceed individually and on behalf of Deville if this were a derivative action. And I believe that Your Honor could have the -- you know, the pleadings conform to the evidence that whether or not this is a direct or indirect action or damage. And I think that that could be a factual issue, whether or not the damage is direct or indirect.

THE COURT: Well, I appreciate the sincerity of

that. But it seems to me the only damages that have been alleged are that assets, the one asset, the property, was allowed to be foreclosed on and that property is now gone, and that the corporation lost the equity in that property. On the merits, it would be whether there was any equity or not.

And secondly, that the company's treasury was diminished, the assets of the company were diminished by making a personal loan of a million -- I don't know, over a million dollars to Mr. Martino. And those are assets of the corporation. And the damages you've alleged are the shareholder's -- your client's interest is as a shareholder in the value of the corporation's assets, and the damages alleged are the shareholder losses.

MS. ANTHONY: But with Martino being the only other shareholder, he has no interest in filing a claim for Deville against his own estate so --

THE COURT: Which is where a derivative action would come in.

MS. ANTHONY: And we would be the only beneficiary of it. So that's why I think it's more in line with the other cases where we have filed a claim -- I guess, in a way, it's on behalf of Deville but it flows to us as the other 50 percent shareholder, the damaged shareholder, so --

THE COURT: Yes. But the fact is, the four

corners of the complaint are damages. The damages alleged are damages to the entity. And my conclusion is that's controlling.

And I think we need to, in the findings of fact, I think it's undisputed -- maybe it will be considered disputed. But the pre-bankruptcy State Court lawsuit, I don't know how long that lasted or when it was filed, but it doesn't appear to me -- Ms. Anthony, I think, has conceded that there was no action taken there. One of the two of you gave me that impression, that there was no action taken there, to have a State Court anoint Savannah Capital as having standing on behalf of Deville.

And that's also a factor here, that there's been a long time here where this could have been perhaps lined up, and has not been done.

So four corners of the complaint, the claims are direct as to Deville, derivative as to Savannah Capital. And under the case law that I have seen, that would mean that this particular Plaintiff does not have standing to make this claim, even though we've all acknowledged that it's the only party who could have done it, but after all these months and all this time, has not. And that's where we are today. Ms. Vaughan --

MS. VAUGHAN: I will prepare --

THE COURT: -- you're the prevailing party.

MS. VAUGHAN: Thank you, Your Honor. I'll prepare those orders and run them by Ms. Anthony.

THE COURT: Thank you.

MS. VAUGHAN: Thank you, Your Honor.

THE COURT: And we'll be in recess.

COURTROOM CLERK: All rise.

(Proceedings concluded at 2:47 p.m.)

## CERTIFICATE

I certify that the foregoing is the official verbatim transcript, prepared to the best of my ability from the digitally-recorded audio proceedings, as provided by the court.

Cheryl Culver (CER, CCR)
Certified Court Reporter
Court-Approved Transcriber

June 10, 2016
Date

ORDERED.

**Dated: July 13, 2016**

K. Rodney May
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

In re:

THOMAS SALVADOR MARTINO,

Debtor.
_______________________________________/

Chapter 7

Case No.: 8:14-bk-13452-KRM

SAVANNAH CAPITAL, LLC,

Plaintiff,

v.

THOMAS SALVADOR MARTINO,

Defendant.
_______________________________________/

Adversary Proceeding
Case No.: 8:15-ap-00418-KRM

**MEMORANDUM OPINION AND ORDER GRANTING**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**(Doc. No. 56)**

THIS ADVERSARY PROCEEDING came before the Court for hearing on June 9, 2016 to consider Thomas Salvador Martino's Motion for Summary Judgment as to All Counts of the Complaint and as to His Objection to Savannah Capital's Proof of Claim for Lack of Standing (the "Motion for Summary Judgment") brought by the defendant, Thomas Salvador Martino (the "Debtor"). The Motion for Summary Judgment pertains to the Complaint filed by Savannah

Capital, LLC ("Savannah Capital") which seeks to have a debt owed by the Debtor declared non-dischargeable. Savannah Capital has also filed a proof of claim, Claim No. 7-1, asserting an unsecured claim in the Debtor's bankruptcy in the amount of "$1,514,018.00 or greater" based on the same alleged conduct (the "Claim"). The Debtor filed an Objection to the Claim (the "Objection"). (Main Case, Doc. No. 91). Per the Court's earlier ruling, consideration of the Complaint and the Objection are being considered together.

**BACKGROUND AND UNDISPUTED FACTS**

The Debtor and his wife have claimed that as tenants by the entireties, they own 50% of the shares of Deville Corp., a Florida corporation ("Deville"). Debtor is the president of Deville. Savannah Capital owns the other 50% of shares in Deville. Savannah Capital is owned by various children and stepchildren of Robinson Callen. Robinson Callen's late wife was the mother of Debtor's wife.

The Debtor filed a voluntary petition for Chapter 7 relief on November 14, 2014. On December 10, 2014, the Debtor filed his schedules and statement of financial affairs. Though the Debtor contests that he owes Savannah Capital any debt, the Debtor listed Savannah Capital as a "creditor" on Schedule F in accordance with bankruptcy rules, characterizing the claim as a contingent, unliquidated, disputed claim for an unknown amount. (Main Case, Doc. No. 9). The Debtor also listed Deville on his Schedule F as a creditor holding a claim against the Debtor for $1,028,162, for a "loan" which was also listed as disputed. (Main Case, Doc. No. 9).

On December 18, 2014, the Trustee gave notice of recovery of assets and the need to file proof of claims to all creditors and parties in interest. The deadline to object to the Debtor's

discharge was set as February 17, 2015 and the claims bar date was set as March 23, 2015. (Main Case, Doc. Nos. 3 & 12). Deville did not file a proof of claim.

On May 1, 2015, Savannah Capital filed its Claim, which was deemed timely filed by Order of the Court (Main Case, Doc. No. 83). The Claim states Savannah Capital is owed "$1,514,018.00 or greater" from the Debtor "based upon the Actionable Misconduct". The "Actionable Misconduct" is alleged as improper conduct that the Debtor engaged in while in control of DeVille, specifically: "(a) funding a loan to himself for $1,028,162, through sporadic checks written out of the DeVille bank account . . . (b) failing to account as requested in connection with the business and financial operation of DeVille; (c) permitting secured loans owed by DeVille to go into default in such a manner that valuable property located at 128-130 Second Avenue North, Nashville, Tennessee (the "Second Avenue Property") was lost at foreclosure thus diminishing the net worth of DeVille; and (d) failing to account to Savannah or DeVille for the inappropriate actions and lost opportunities resulting from the apparent bankruptcy of DeVille." (Claim 7-1 at pp. 3-4). The same allegations are repeated in the Complaint as the basis for non-dischargeability of the Claim. (Complaint, Doc. No. 1 at ¶12). Savannah Capital also sought an accounting from and to dissolve Deville. (Complaint, Doc. No. 1).

On May 20, 2015, the Debtor filed a Motion to Dismiss and Strike directed at the Complaint (the "Motion to Dismiss"). (Doc. No. 3)

At a hearing held on June 11, 2015, the Court deemed Savannah Capital's late-filed Claim as timely, but reserved ruling on the allowance of the Claim. At this hearing, the Debtor argued that Savannah Capital did not have standing to bring a proof of claim for damages to

Deville Corp. (*See* Transcript, June 11, 2015, Doc. No. 16 at p. 28) ("I'm not validating the claim, which is probably your primary concern. It's not allowing the claim. I'm allowing the claim to be filed, all right? And if you wish to object to it, which you may well do – object to the allowance of the claim, I'll give you 30 days to do that, and then your objection will travel with what's left of the adversary proceeding."). The Debtor thereafter filed his objection to the allowance of Savannah Capital's Claim. (Main Case, Doc. No. 91).

Also at the hearing held on June 11, 2015, the Court granted the "Motion to Dismiss Defendant Deville Corp. as a Party", the same having been filed by Deville on May 20, 2015. (Doc. No. 4).

On August 18, 2015, the Court held a continued preliminary hearing on the Debtor's Motion to Dismiss. At this hearing, the Debtor argued again that Savannah Capital lacked standing to bring direct claims based on damages to Deville. On September 4, 2015, the Court entered an Order Denying Motion to Dismiss and Strike, (Doc. No. 26); however, the Order did not indicate that the dismissal was with prejudice. At the hearing, the Court ruled that it was not going to dismiss the Complaint on grounds of standing and further stated that "we'll see where we go on summary judgment." (*See* Transcript, August 18, 2015, Doc. No. 64 at p. 40, lines 18-19).

On September 25, 2015, the Debtor filed his Answer and Affirmative Defenses to the Complaint wherein the Debtor, *inter alia*, challenged Savannah Capital's standing to bring the Complaint. (Doc. No. 29).

On May 17, 2016, the Debtor filed his Motion for Summary Judgment as to All Counts of the Complaint and as to His Objection to Savannah Capital's Proof of Claim for Lack of

Standing. In his Motion for Summary Judgment, the Debtor limited his argument to Savannah Capital's lack of standing to bring the Complaint. (Doc. No. 56). Savannah Capital filed its Response on May 19, 2016. (Doc. No. 58). The Debtor filed his Reply on May 26, 2016. (Doc. No. 63). This Court held a hearing on June 9, 2016, to consider the Motion for Summary Judgment and related pleadings.

**<u>CONCLUSIONS OF LAW</u>**

<u>Summary Judgment Standard</u>

Pursuant to Federal Rule of Bankruptcy Procedure 7056(c), summary judgment shall be rendered when the moving party demonstrates that no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law. Fed. R. Bankr. P. 7056(c). *See also Celotex v. Catrett*, 477 U.S. 317, 322 (1986). The purpose of summary judgment is to determine if there are genuine issues for trial. *Banco Latino International v. Gomez Lopez*, 95 F.Supp.2d 1327, 1332 (S.D. Fla. 2000); *Mulhall v. Advance Security, Inc.*, 19 F.3d 586, 590 (11th Cir. 1994).

To defeat a motion for summary judgment, the opposing party must do more than simply show that there is some doubt as to the facts of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986). The party opposing the motion must establish (a) the existence of a genuine issue of material fact and may not rest upon its pleadings or mere assertions of disputed facts to defeat the motion, and (b) that the movant is not entitled to judgment as a matter of law. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

<u>Savannah Capital Does Not Have Standing to Bring Direct Claims For Damages to Deville Corp.</u>

In determining whether a shareholder has a direct cause of action against another shareholder, the Court is directed to look at the four corners of the Complaint. *See Culverhouse v. Paulson*, 813 F.3d 991 (11th Cir. 2016); *Alario v. Miller*, 354 So.2d 925, 926 (Fla. 2d DCA 1978) ("It is the body of the complaint which determines whether the injury is direct as to the stockholder and the cause of action individual to him or is indirect as to the stockholder and the cause of action derivative to the corporation.")

Before a debt can be determined dischargeable, "a plaintiff must establish that the debtor owes him a debt." *Brown v. Vega (In re Vega)*, 2014 Bankr. LEXIS 2612 at *4 (Bankr. M.D. Fla. June 2, 2014). A "debt" is a liability on a claim. 11 U.S.C. § 101(12). A "claim" is a "right to payment, whether such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5). "The plain meaning of a 'right to payment' is nothing more nor less than an enforceable obligation." *Pennsylvania Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 559 (1990) *superseded by statute on other grounds*.

Under Florida law, if the damages alleged by a shareholder are only indirectly sustained as a result of an injury to the corporation, then the claim belongs to the corporation and is not a direct claim.

> An action brought by a stockholder is derivative if the gravamen of the complaint is injury to the corporation or to the whole body of its stock or property and not injury to the plaintiff's individual interests as a stockholder.
>
> …
>
> If the damages are only indirectly sustained by the stockholder as a result of injury to the corporation, the stockholder does not have a cause of action as an

individual.

*Alario v. Miller*, 354 So.2d 925, 926 (Fla. 2d DCA 1978) (*citations omitted*). *See also White v. Whittle (In re Whittle)*, 449 B.R. 427, 430 (Bankr. M.D. Fla. 2011) (holding plaintiffs/members of LLC, did not have direct cause of action against debtor for damages inflicted on the LLC by the debtor's actions); *Mann v. Kendall Props. & Invs., LLC (In re AS Mgmt. Svcs.)*, 2007 Bankr. LEXIS 2838, *10 (Bankr. S.D. Fla. Aug. 16, 2007) ("A stockholder lacks standing to recover individually for injuries done to his corporation."); *Hodges v. Buzzeo*, 193 F. Supp. 2d 1279, 1289 (M.D. Fla. 2002) (counterclaim for breach of fiduciary duty brought as direct claim dismissed because factual allegations supporting claim showed no direct injury to minority shareholder).

Here, the "actionable misconduct" described in Savannah Capital's Claim and repeated in the Complaint asserts injuries that directly affect the corporation and only indirectly touch Savannah Capital. According to the Claim, Savannah Capital calculates its damages as being 50% of the damages to Deville because it owns 50% of the company's stock. (Claim 7-1 at p. 5). Such injuries are derivative in nature.

In this proceeding, Savannah Capital claims that the Debtor misappropriated funds from Deville in the form of a loan or checks made out to the Debtor or his entity. It also claims wrongful conduct in allowing a property owned by Deville to be foreclosed. Like the claimant in *Whittle*, Savannah Capital has no standing to recover directly any damages inflicted on Deville due to the Debtor's conduct. Accordingly, the Court concludes that the claims asserted in the Complaint and the Claim are indirect claims of Savannah Capital and Debtor is entitled to Judgment as a matter of law.

The Lack of Discovery Does not Preclude Summary Judgment

Generally speaking, in the Eleventh Circuit, discovery should be complete before ruling on summary judgment; however, the Eleventh Circuit has ruled that a court should not refuse to rule on summary judgment simply because discovery is not complete. *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169 (11th Cir. 2005) ("[T]here is no reason to assume that a district judge will stubbornly refuse to rule on a motion for summary judgment at an early stage of the litigation if the moving party clearly apprises the court that a prompt decision will likely avoid significant unnecessary discovery. In fact, we expect that district judges will be open to such motions."); *Snook v. Trust Co. of Georgia Bank, N.A.*, 859 F.2d 865 (11th Cir. 1988) (discovery sought must be relevant to the issues presented by the motion for summary judgment).

Here, even though discovery was not complete, the issue of standing is one that is decided on the substance of the Complaint as pled. Accepting the allegations as pled, discovery is unnecessary to determine whether Savannah Capital has standing to bring the claims asserted. Accordingly, the lack of discovery does not preclude summary judgment on this issue.

**CONCLUSION**

For the foregoing reasons and for the reasons stated on the record in open court on June 9, 2016, Defendant Thomas Salvador Martino is entitled to judgment as a matter of law as to all counts of the Complaint and as to his Objection to Savannah Capital's Claim.

**ORDERED:**

1. The Debtor's Motion for Summary Judgment is GRANTED as to all counts of the Complaint.

Case 8:16-cv-02105-VMC Document 13-8 Filed 01/10/17 Page 189 of 193 PageID 1450

2. The Court will enter a separate final judgment for the Defendant, Thomas Salvador Martino consistent with this ruling.

3. The Court will also enter a separate Order in the main bankruptcy case sustaining the Debtor's Objection and disallowing the Claim in its entirety.

****

Attorney Lori V. Vaughan is directed to serve a copy of this opinion and order on non-cm/ecf interested parties and file a proof of service within three days of entry of this order.

ORDERED.

**Dated: July 13, 2016**

K. Rodney May
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

In re: Chapter 7

THOMAS SALVADOR MARTINO, Case No. 8:14-bk-13452-KRM

Debtor.
_________________________________/

SAVANNAH CAPITAL, LLC,

Plaintiff,

v. Adv. Pro. No. 15-ap-00418-KRM

THOMAS SALVADOR MARTINO,

Defendant.
_________________________________/

**FINAL JUDGMENT**

**THIS ADVERSARY PROCEEDING** came before the Court for hearing on June 9, 2016, on the Thomas Salvador Martino's Motion for Summary Judgment as to All Counts of the Complaint and as to His Objection to Savannah Capital's Proof of Claim for Lack of Standing (the "Motion for Summary Judgment"). Simultaneously herewith, the Court has issued its Memorandum Opinion and Order Granting Defendant's Motion for Summary Judgment (the "Order"). For the reasons stated orally and recorded in open Court and pursuant to the Order, the

Court finds in favor of the Defendant Thomas Salvador Martino on all counts of the Complaint.

Accordingly, it is

**ORDERED, ADJUDGED and DECREED** that Judgment is entered for Defendant Thomas Salvador Martino and against Plaintiff Savannah Capital, LLC on all counts of the Complaint filed herein.

****

Clerk's Office to serve.

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

IN RE:
THOMAS SALVADOR MARTINO,

Debtor.
__________________________________/

SAVANNAH CAPITAL, LLC,

Appellant,

v.

Case No. 8:16-cv-02105-VMC
Bankr. No. 8:16-bk-13452-KRM
Adversary 8:15-ap-418-KRM

THOMAS SALVADOR MARTINO,

Appellee.
__________________________________/

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Appendix to the Appellant's Initial Brief has been furnished via electronic means on this 20th day of January, 2017, to the following:

D. Lee Pitisci, Esq.
Pitisci Dowell Markowitz
101 S. Moody Avenue
Tampa, Florida 33609
lpitisci@pdmmlaw.com
Counsel for Thomas Salvador Martino

Lori V. Vaughan, Esq.
Rhys P. Leonard, Esq.
Trenam Kemker
101 E. Kennedy Blvd., Suite 2700
Tampa, Florida 33602
lvaughan@trenam.com
Counsel for Thomas Salvador Martino

A. Christopher Kasten, II, Esq.
Bush Ross, P.A.
Post Office Box 3913
Tampa, Florida 33601
ckasten@bushross.com
Counsel for Chapter 7 Trustee

/s/ Dominic A. Isgro
**JOHN A. ANTHONY, ESQ.**
Florida Bar Number: 0731013
janthony@anthonyandpartners.com
**STEPHENIE BIERNACKI ANTHONY, ESQ.**
Florida Bar Number: 0127299
santhony@anthonyandpartners.com
**DOMINIC A. ISGRO, ESQ.**
Florida Bar Number: 0113318
disgro@anthonyandpartners.com
Anthony & Partners, LLC
201 N. Franklin Street, Suite 2800
Tampa, FL 33602
Tel: 813-273-5616 | Fax: 813-221-4113
Attorneys for Savannah Capital, LLC