IN RE:

THOMAS SALVADOR MARTINO,

      Debtor.

_____/

SAVANNAH CAPITAL, LLC,

      Appellant,

v.
                              Case No. 8:16-cv-2105-T-33
                              Bankr. No. 8:14-bk-13452-KRM
                              Adversary No. 8:15-ap-418-KRM

THOMAS SALVADOR MARTINO,

      Appellee.

_____/

## ORDER

This appeal arises from a Chapter 7 bankruptcy and a related adversary proceeding. Appellant Savannah Capital, LLC filed its brief on January 20, 2017. (Doc. # 14). Appellee Thomas Salvador Martino filed his responsive brief on March 7, 2017. (Doc. # 20). The bankruptcy trustee joined in the Appellee's brief. (Doc. # 21). Savannah filed its reply brief on March 21, 2017.

## I.  Background

Appellee Thomas Salvador Martino, the Debtor and defendant in the bankruptcy and adversary proceedings below,

was married to Pam Martino, a stepchild of Robinson Callen. (Doc. # 8-63 at ¶¶ 1, 7-9). Pam Martino and her fifteen siblings own Savannah, which has been managed by Callen since 2012. (Id. at ¶ 8). Before him, Tanya Glaize, also a child of Callen, managed Savannah. (Doc. # 8-51 at 3, ¶ 2). Pam Martino and her siblings go by the moniker of the "Callen Group." (Doc. # 8-63 at ¶ 8).

At some unspecified point, the Callen Group agreed with the Debtor to form a new corporation, DeVille Corp. (Id. at ¶ 9). As part of this venture, it was agreed the Callen Group would own fifty percent of DeVille via a separate corporate entity and the Debtor and Pam Martino would own the other fifty percent. (Id.). The Debtor was to have ongoing control of DeVille. (Id.).

In October of 2012, the Debtor, in his capacity as president of DeVille, emailed Callen to request Savannah's consent for DeVille to file Chapter 11 bankruptcy. (Doc. # 8-66 at ¶ 4). The Debtor's email initiated a series of events that culminated in August of 2014, when Savannah filed suit against DeVille in state court for declaratory judgment and for court-ordered inspection of DeVille's records. (Doc. # 8-63 at ¶ 16; Doc. # 8-66). That state-court action led to the

entry of a judgment declaring that Savannah owned fifty percent of DeVille. (Doc. # 14 at 18; Doc. # 20 at 10 n.2).

While the state-court action was pending, on November 14, 2014, the Debtor filed his voluntary petition for Chapter 7 bankruptcy, thereby initiating the underlying bankruptcy case. (Doc. # 8-6). Among his Schedules, the Debtor listed Savannah as a creditor, noting the "[c]laim[] [was] for monies owed and mismanagement." (Doc. # 8-7 at 17). The amount of the claim was listed as "[u]nknown" and the claim itself was marked as contingent, unliquidated, and disputed. (Id.).

Thereafter, Savannah filed a proof of claim and a complaint objecting to the dischargeability of debt, which initiated the underlying adversary proceeding. (Doc. ## 8-63; 8-19 at 43-49). The bankruptcy court deemed the proof of claim and the complaint to be timely filed, and entered orders documenting the same. (Doc. ## 8-26; 8-28); see also (Doc. # 8-27). The complaint in the adversary proceeding brought suit against the Debtor and DeVille. (Doc. # 8-63). Through it, Savannah asserted three counts: objection to dischargeability of debt, judicial dissolution of DeVille, and accounting. (Id.). The Debtor moved to dismiss on the grounds that Savannah lacked standing (Doc. # 8-70), and DeVille moved to

be dismissed on the grounds that the bankruptcy court lacked subject-matter jurisdiction (Doc. # 8-71).

The bankruptcy court held a hearing on June 11, 2015, during which it heard arguments on the two motions to dismiss. (Doc. # 8-76). The bankruptcy court orally granted DeVille's motion to dismiss stating, "I will grant in part the motion to dismiss all claims against De[V]ille Corp. De[V]ille Corp. is not under my jurisdiction." (Id. at 22:16-18). As to the Debtor's motion to dismiss, the hearing was continued. (Id. at 35:14-24). The order dismissing DeVille from the adversary proceeding was entered on June 16, 2015. (Doc. # 8-75).

On August 18, 2015, the bankruptcy court held its continued hearing on the Debtor's motion to dismiss. (Doc. # 8-85 at 28:15-44:4). The Debtor again argued Savannah lacked standing to sue in its own right because its claim was a derivative of DeVille's. (Id. at 30:14-22). For its part, Savannah focused its arguments on whether it had pled enough to give rise to a plausible claim for relief. (Id. at 35:20-21:13). After hearing argument, the bankruptcy court denied the Debtor's motion to dismiss, stating: "[i]t seems to me that in a closely-held corporation . . . one shareholder . . . who has his hands on the control of the corporation[] could directly injure the other shareholder by mismanaging the

corporation." (Id. at 40:7-12). The bankruptcy court stated

further:

> [t]he question, really, is whether under the
> Bankruptcy Code there is a debt that's owed for an
> injury to . . . Savannah . . . . [t]hat is distinct
> from the debts owed to [DeVille]. And there's an
> overlay here of a closely-held corporation.
> [Counsel for Savannah] has alleged and has
> suggested there's an overlay behind the scenes of
> a family nature. I'm not sure if that's alleged,
> but you've argued that.
>
> And so for this purpose, I think that's sufficient
> to at least get past a motion to dismiss. Can one
> shareholder of a privately-held fifty-fifty
> corporation who has his hands on the management of
> a company[] manage that company in such a way as to
> directly prejudice his other shareholders? And I
> think that's -- I think that can happen.

(Id. at 40:22-41:14). The order denying the Debtor's motion

to dismiss was entered on September 4, 2015. (Doc. # 8-77).

The Debtor subsequently filed his answer and again asserted

Savannah lacked standing. (Doc. # 8-78 at ¶ 55).

The adversary proceeding continued and on May 17, 2016,

the Debtor filed a motion for summary judgment as to all

counts of the complaint and the allowance of Savannah's proof

of claim. (Doc. # 8-82). The thrust of the Debtor's motion

for summary judgment was that Savannah's claim was a

derivative of DeVille's; in other words, it was DeVille—

rather than Savannah—that had suffered an injury due to the

Debtor's alleged actions. (Id.). Savannah responded by

5

arguing summary judgment was premature. (Doc. # 8-84). The bankruptcy court held a hearing on the motion for summary judgment on June 9, 2016. (Doc. # 8-87). In making its ruling, the bankruptcy court explained:

> There are only three parties in the room -- the two shareholders and the entity. And the cases that you've cited support the proposition that (a) you look to the four corners of the complaint and see what's alleged as the claims -- see what claims are alleged.
>
> Secondly, you analyze them as to whether the losses are direct to the Plaintiff or they're indirect to the Plaintiff through the losses to the corporation.
>
> . . . .
>
> And I'm going to grant your motion. . . . I'm going to grant your motion for summary judgment.
>
> . . . .
>
> it seems to me the only damages that have been alleged are that assets, the one asset, the property, was allowed to be foreclosed on and that property is now gone, and that the corporation lost the equity in that property. On the merits, it would be whether there was any equity or not.
>
> And secondly, that the company's treasury was diminished, the assets of the company were diminished by making a personal loan of a million -- I don't know, over a million dollars to Mr. Martino. And those are assets of the corporation. And the damages you've alleged are the shareholder's -- your client's interest is as a shareholder in the value of the corporation's assets, and the damages alleged are the shareholder losses.

.  .  .  .

> So four corners of the complaint, the claims are
> direct as to Deville, derivative as to Savannah
> Capital. And under the case law that I have seen,
> that would mean that this particular Plaintiff does
> not have standing to make this claim, even though
> we've all acknowledged that it's the only party who
> could have done it, but after all these months and
> all this time, has not. And that's where we are
> today.

(Id. at 26:18-31:23). The written order entered by the
bankruptcy court conforms to the reasons stated during the
hearing; namely, that "[l]ike the claimant in [White v.
Whittle, 449 B.R. 427, 430 (Bankr. M.D. Fla. 2011)],
[Savannah] ha[d] no standing to recover directly any damages
inflicted on [DeVille] due to the Debtor's conduct." (Doc. #
8-88 at 7).

Judgment was entered in favor of the Debtor in the
adversary proceeding. (Doc. # 8-91). Because of its
determination that Savannah lacked standing, the bankruptcy
court sustained the Debtor's objection and disallowed
Savannah's claim in the bankruptcy proceeding. (Doc. # 8-58).
Savannah appealed. (Doc. ## 8-59; 8-89). The appeal arising
from the adversary proceeding was assigned case number 8:16-
cv-2105-T-33 and the appeal arising from the bankruptcy
proceeding was assigned case number 8:16-cv-2151-T-17. Case
number 8:16-cv-2151-T-17 was transferred to the undersigned

7

and the appeals were consolidated. (Doc. # 5; Case No. 16-cv-2151, Doc. ## 9; 11).

## II. **Jurisdiction**

Savannah's two appeals seek review of three orders entered by a bankruptcy judge of this District. In particular, Savannah appeals (1) the Order Sustaining Objection to Proof of Claim entered in 8:14-bk-13452-KRM on July 29, 2016; (2) the Memorandum Opinion and Order Granting Defendant's Motion for Summary Judgment entered in 8:15-ap-418-KRM on July 13, 2016; and (3) the Final Judgment entered in 8:15-ap-418-KRM on July 14, 2016. (Doc. # 1; Case No. 16-cv-2151, Doc. # 1). The Court has jurisdiction pursuant to 28 U.S.C. § 158(a)(1).

## III. **Standard of Review**

This Court "review[s] the bankruptcy court's factual findings for clear error and its resolution of any legal questions _de novo_." In re Coady, 588 F.3d 1312, 1315 (11th Cir. 2009). A bankruptcy court's entry of summary judgment is reviewed de novo, In re Optical Techs., Inc., 246 F.3d 1332, 1335 (11th Cir. 2001), as is the question of standing, Pittman v. Cole, 267 F.3d 1269, 1282 (11th Cir. 2001).

"A bankruptcy court's decision to allow or disallow a claim is reviewed under the abuse of discretion standard." In re Bull, 528 B.R. 473, 484 (M.D. Fla. 2015) (citing Nat'l

<u>Capital Mgmt., LLC v. Herman</u>, No. 6:11-cv-9-Orl-28, 2011 WL 4531736, at *1 (M.D. Fla. Sept. 29, 2011)). "An abuse of discretion occurs if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous." <u>In re Red Carpet Corp. of Panama City Beach</u>, 902 F.2d 883, 890 (11th Cir. 1990). "A finding of fact is clearly erroneous 'if the record lacks substantial evidence to support it,' . . . such that [a court's] review of the entire evidence leaves [it] 'with the definite and firm conviction that a mistake has been committed.'" <u>Blohm v. C.I.R.</u>, 994 F.2d 1542, 1548 (11th Cir. 1993) (citations omitted).

**IV.** **<u>Analysis</u>**

    **A.** **<u>Standing: A Jurisdictional Issue</u>**

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 377 (1994). "Although the Constitution does not fully explain what is meant by '[t]he judicial Power of the United States,' . . . it does specify that this power extends only to 'Cases' and 'Controversies.'" <u>Spokeo, Inc. v. Robins</u>, 136 S. Ct. 1540, 1547 (2016). "Standing . . . is a doctrine rooted

in the traditional understanding of a case or controversy. . . . [It] limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." Id.

"Standing 'is the threshold question in every federal case, determining the power of the court to entertain the suit.'" Maverick Media Grp., Inc. v. Hillsborough Cty., Fla., 528 F.3d 817, 819 (11th Cir. 2008) (citation omitted). "'In the absence of standing, a court is not free to opine . . . about the merits of a plaintiff's claims,' . . . and 'the court is powerless to continue.'" CAMP Legal Def. Fund, Inc. v. City of Atlanta, 451 F.3d 1257, 1269 (11th Cir. 2006) (citations omitted).

"[T]he irreducible constitutional minimum of standing contains three elements." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992). Specifically, "the plaintiff must have suffered an 'injury in fact'" that is "(a) concrete and particularized . . . and (b) 'actual or imminent, not "conjectural" or "hypothetical."'" Id. "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" Spokeo, 136 S. Ct. 1548 (citations omitted). "[T]here must [also] be a causal connection between the injury and the conduct complained of—the injury has to be

'fairly . . . trace[able] to the challenged action of the defendant." Lujan, 504 U.S. at 560 (third and fourth alterations in original). Finally, "it must be 'likely' . . . that the injury will be 'redressed by a favorable decision.'" Id. at 561.

"Each element is 'an indispensable part of the plaintiff's case.'" CAMP, 451 F.3d at 1269 (citation omitted). "[T]he evidence necessary to prove standing at the various stages of litigation [is] as follows," OMS Collections, Ltd. v. Tien, 634 Fed. Appx. 750, 755-56 (11th Cir. 2015):

> [a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim. In response to a summary judgment motion, however, the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true. And at the final stage, those facts (if controverted) must be supported adequately by the evidence adduced at trial.

Lujan, 504 U.S. at 561 (internal quotation marks and citations omitted).

"After satisfying these constitutional requirements, a party claiming standing also must demonstrate that prudential

considerations do not restrain the trial court from hearing the case." E.F. Hutton & Co., Inc. v. Hadley, 901 F.2d 979, 984 (11th Cir. 1990). "The Supreme Court has . . . instructed courts to consider three prudential principles[,] which may counsel for judicial restraint in considering the plaintiff's claims." Bischoff v. Osceola Cty., Fla., 222 F.3d 874, 883 (11th Cir. 2000). Those considerations are namely:

> "1) whether the plaintiff's complaint falls within the zone of interests protected by the statute or constitutional provision at issue; 2) whether the complaint raises abstract questions amounting to generalized grievances which are more appropriately resolved by the legislative branches; and 3) whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties."

Id. (quoting Saladin v. City of Milledgeville, 812 F.2d 687, 690 (11th Cir. 1987)). The party invoking the court's jurisdiction bears the burden of establishing standing. CAMP, 451 F.3d at 1269; E.F. Hutton, 901 F.2d at 985.

### 1. **Savannah**

Savannah argues the bankruptcy court erred in holding it lacked standing. Whether Savannah had standing turns on whether the claim it asserted against the Debtor was a direct or a derivative claim. And while both parties agree Florida law determines if the claim was direct or derivative, they cite different tests. (Doc. ## 14 at 31; 20 at 18).

Nevertheless, the conclusion remains the same: Savannah lacked standing.

In 2006, the Eleventh Circuit stated, "Florida . . . uses the gravamen test to distinguish between direct and derivative claims." <u>Hantz v. Belyew</u>, 194 Fed. Appx. 897, 900 (11th Cir. 2006)(citing <u>Citizens Nat'l Bank of St. Petersburg v. Peters</u>, 175 So. 2d 54 (Fla. 2d DCA 1965)).

> Under the gravamen test, "a stockholder may bring a suit in his own right to redress an injury sustained directly by him, and which is separate and distinct from that sustained by other stockholders." . . . If, however, the injury is "primarily against the corporation, or the stockholders generally, then the cause of action is in the corporation and the individual's right to bring it is derived from the corporation."

<u>Id.</u> (internal citations omitted). Subsequent to <u>Hantz</u>, Florida's Third District Court of Appeal rephrased the test. The Third District Court of Appeal held:

> an action may be brought directly only if (1) there is a direct harm to the shareholder or member such that the alleged injury does not flow subsequently from an initial harm to the company and (2) there is a special injury to the shareholder or member that is separate and distinct from those sustained by the other shareholders or members. . . . [T]here is an exception to this rule under Florida law. A shareholder or member need not satisfy this two-prong test when there is a separate duty owed by the defendant(s) to the individual plaintiff under contractual or statutory mandates.

Dinuro Invs., LLC v. Camacho, 141 So. 3d 731, 739-40 (Fla. 3d DCA 2014) (internal citations omitted); see also Strazzulla v. Riverside Banking Co., 175 So. 3d 879, 884 (Fla. 4th DCA 2015) (adopting Dinuro test).

The complaint in the adversary proceeding alleged the Debtor improperly loaned himself $1,028,162 from DeVille's bank account and allowed for a diminution of DeVille's worth via foreclosure of valuable property. (Doc. # 8-63 at ¶ 12). Moreover, when Savannah calculated its damages, it divided the loan amount and the diminution from the foreclosure by two. (Doc. # 8-19 at 48-49). In other words, Savannah's own valuation of its damages recognizes it was damaged only to the extent it held a fifty percent share of DeVille. Thus, Savannah's alleged injury flowed from an initial harm to DeVille. Savannah therefore lacked standing to bring a direct claim.

Savannah's argument that "when the circumstances show that the reasons for the general rule requiring a derivative suit do not apply, shareholders may be allowed to proceed individually" (Doc. # 14 at 40), is unpersuasive. Savannah does not cite a single Florida case recognizing such an exception and the Court is unaware of any. In fact, there is Florida case law contrary to Savannah's argument. See, e.g.,

Hetrick v. Ideal Image Dev. Corp., 372 Fed. Appx. 985, 989

(11th Cir. 2010) (citing Lincoln Oldsmobile, Inc. v. Branch,

574 So. 2d 1111, 1114 (Fla. 2d DCA 1990) ("[A] stockholder

cannot maintain an action in his own name but must bring it

in the name of the corporation. This is true even where the

individual is the sole stockholder of the corporation.")).

### 2. **The Debtor**

Savannah argued at the summary judgment hearing that the

Debtor lacked standing to object to its claim. (Doc. # 8-87

at 12:17-13:7). Although the bankruptcy court's written order

does not address the Debtor's standing, the bankruptcy court

stated at the hearing:

> while it's a general rule that a debtor that's out
> of money, where there's no surplus, has no standing
> to object to claims, I don't know whether there's
> going to be a surplus in this case or not. And . .
> . the conclusion to disallow the claim flows
> directly from the ruling in the adversary
> proceeding. And I see no benefit to making the
> Trustee, compelling the Trustee to take the papers
> from this proceeding and object to your claim. I'm
> going to disallow the claim as well.

(Doc. # 8-87 at 27:25-28:8).

On appeal, the Debtor argues that (1) the uncertainty as

to whether there would be a surplus provided him with standing

and (2) he had standing by virtue of Savannah's

dischargeability action. (Doc. # 20 at 26-29). A court sitting

in an appellate capacity may affirm "'on any ground that finds support in the record,' including alternate grounds for summary judgment." <u>Thompkins v. Lil' Joe Records, Inc.</u>, 476 F.3d 1294, 1303 (11th Cir. 2007) (citation omitted). Furthermore, the court "need not consider all of the questions . . . raise[d], if [it] find[s] any ground in the record" warrants affirmance. <u>In re Monetary Grp.</u>, 2 F.3d 1098, 1103 (11th Cir. 2993).

"As a general rule[,] a Chapter 7 debtor is not a 'party in interest' for purposes of [§] 502(a) and therefore lacks standing to file an objection to a claim." <u>In re Costello</u>, 184 B.R. 166, 168 (Bankr. M.D. Fla. 1995) (citation omitted); <u>see also</u> <u>In re Brooks</u>, 548 B.R. 896, 900 (Bankr. S.D. Ga. 2016) ("Chapter 7 debtors usually do not have standing as a 'party in interest' to object to the proof of claim . . . ." (citations omitted)). That "lack of standing to object to a claim is premised upon the notion that the allowance of the claim will have no affect [sic] on the debtor's rights" because, once the objected to claim is discharged, the debtor will bear no legal obligation. <u>In re Toms</u>, 229 B.R. 646, 651 (Bankr. E.D. Penn. 1999). But, if the claim were exempted from the discharge, the debtor would continue to bear a legal obligation. <u>Id.</u>

16

There are exceptions, however. Courts have found a
debtor to have standing "where there will be a surplus after
distribution providing the debtor with a pecuniary interest
in the estate," In re Walker, 356 B.R. 834, 848 (Bankr. S.D.
Fla. 2006) (citation and internal quotation marks omitted),
and "when the debt at issue is one that may not be subject to
discharge," Brooks, 548 B.R. at 900-01 (citations omitted).

When Savannah instituted the adversary proceeding, the
Debtor, at that point, faced a prospect of a continuing legal
obligation in spite of the discharge. Accordingly, the Debtor
obtained standing to object to Savannah's claim. Toms, 229
B.R. at 651. However, when the bankruptcy court determined
Savannah lacked standing to prosecute the adversary
proceeding, the Debtor no longer faced the possibility of
having to bear a continuing legal obligation after receiving
a discharge. Thus, the Debtor lost standing to object to
Savannah's claim. Id. at 651-56 (holding that debtors lacked
standing to object to allowance of a claim that was
dischargeable).

The cases cited by the Debtor do not convince the Court
to the contrary. In In re Mandel, the objection to the claim
was decided before the bankruptcy court resolved the
adversary proceeding that sought to exempt the claim from

discharge. 641 Fed. Appx. 400, 402 (5th Cir. 2016). Likewise, there is no indication in Brooks that the adversary proceeding had concluded at the time the bankruptcy court adjudicated the objection to the claim. 548 B.R. at 899-901. In contrast, here, the Debtor's objection to Savannah's claim was disposed of after the adversary proceeding seeking to exempt the claim from discharge was resolved. (Doc. # 8-87 at 28:3-5). And with respect to In re O'Donnell, the discussion of the debtor's standing to object is dicta. 326 B.R. 901 (Table), No. 04-8054, 04-8056, 2005 WL 1279268, at *5 (Bankr. App. Panel of the 6th Cir. May 19, 2005) ("the filing of an objection by the Debtors is not necessary to the Panel's decision . . . . However, while not strictly necessary to the Panel's decision, the Panel will review the question of whether the Debtors had standing.").

The bankruptcy court therefore erred when it allowed the Debtor to object to Savannah's proof of claim. In the end though, the error was harmless. Fed. R. Bankr. P. 9005 (making Federal Rule of Civil Procedure 61 applicable to bankruptcy actions). "Under the harmless error rule[,] this Court may disregard errors which do not affect substantial rights." In re Carapella, 115 B.R. 365, 368 (M.D. Fla. 1990).

A court may question standing sua sponte. Indeed,

18

[b]efore rendering a decision . . . every federal
court operates under an independent obligation to
ensure it is presented with the kind of concrete
controversy upon which its constitutional grant of
authority is based; and this obligation on the
court to examine its own jurisdiction continues at
each stage of the proceedings, even if no party
raises the jurisdictional issue and both parties
are prepared to concede it.

Cuban Am. Bar Ass'n, Inc. v. Christopher, 43 F.3d 1412, 1422-
23 (11th Cir. 1995) (quoting Hallandale Prof'l Fire Fighters
Local 2238 v. City of Hallandale, 922 F.2d 756, 759 (11th
Cir. 1991)). The bankruptcy court was free to question
Savannah's standing to bring a claim in the bankruptcy
proceeding. And because it was DeVille that directly suffered
the alleged injury, the claim was DeVille's to bring. As such,
the bankruptcy court's disallowance of Savannah's claim was
proper.

    **B.    No Abuse of Discretion**

    Savannah further argues the bankruptcy court abused its
discretion in two ways. The first putative abuse occurred
when the bankruptcy court denied the Debtor's motion to
dismiss, which sought dismissal on the grounds that Savannah
lacked standing, but then subsequently granted the Debtor's
motion for summary judgment on the grounds that Savannah
lacked standing. The second claimed error occurred when the
bankruptcy court did not grant Savannah leave to amend its

complaint. Neither argument convinces the Court that an abuse
of discretion occurred.

The bankruptcy court was free to revisit the question of
standing, notwithstanding its decision on the motion to
dismiss. See E.F. Hutton, 901 F.2d at 983 (noting that where
district court denies motion to dismiss, allows discovery,
and reconsiders standing at summary judgment, appellate court
evaluates standing from all the materials in the record). To
be sure, standing may be challenged at any time and must be
proved by the degree required for the stage at which it is
challenged. CAMP Legal Def. Fund, 451 F.3d at 1269; Cuban Am.
Bar Ass'n, 43 F.3d at 1422–23 (citation omitted).

And with respect to Savannah's argument that the
bankruptcy court should have granted it leave to amend after
finding Savannah lacked standing to bring a direct claim,
this Court cannot say the bankruptcy court abused its
discretion. "Discretion necessarily entails flexibility and
autonomy; the [lower] court does not abuse its discretion
simply because the appellate court would have handled the
issue differently." Fils v. City of Aventura, 647 F.3d 1272,
1283 (11th Cir. 2011) (citation omitted).

Savannah knew from the motion to dismiss that its
standing was contested. (Doc. # 8-70). Furthermore,

Savannah's current argument that it had no reason to seek leave to amend after the bankruptcy court denied the Debtor's motion to dismiss is belied by its argument below. During the August 18, 2015, hearing, Savannah argued it had pled enough to survive a motion to dismiss, not that it had proven standing. (Doc. # 8-85 at 36:13-14, 37:24-38:13). Moreover, although the bankruptcy court denied the motion to dismiss, the question of standing was free to be revisited later in the proceeding. (Id. at 40:18-19). The Debtor's answer also reasserted the challenge to Savannah's standing. (Doc. # 8-78 at ¶ 55). Taken as a whole, the record demonstrates that Savannah knew its standing was contested and it could have sought leave to bring a derivative claim. But it chose not to seek leave to amend. Given this procedural history, the Court cannot say an abuse of discretion occurred.

### C.  __The Judgment__

An appellate court "must consider questions concerning [its] appellate jurisdiction on [its] own motion even if neither party has raised the issue." Holloman v. Mail-Well Corp., 443 F.3d 832, 844 (11th Cir. 2006). "[T]he issue of standing may be raised at any time, including after the entry of judgment." Alvarez v. Royal Atlantic Developers, Inc., 854 F. Supp. 2d 1219, 1225 (S.D. Fla. 2011) (citing AT&T Mobility,

21

LLC v. NASCAR, Inc., 494 F.3d 1356, 1359–60 (11th Cir. 2007); Fla. Ass'n of Med. Equip. Dealers v. Apfel, 194 F.3d 1227, 1230 (11th Cir. 1999); Pelphrey v. Cobb County, 495 F. Supp. 2d 1311, 1314 (N.D. Ga. 2007)).

Bankruptcy courts, like all federal courts, are constrained in their exercise of jurisdiction by, inter alia, standing considerations. See In re All Am. Trailer Mfrs., Inc., 631 Fed. Appx. 699, 700-01 (11th Cir. 2015) (concluding that appellant lacked standing after sua sponte raising the issue, vacating order of district court affirming bankruptcy order, and remanding with instructions for district court to dismiss for lack of subject matter jurisdiction); In re J.H. Inv. Servs., Inc., 413 Fed. Appx. 142, 149-50 (11th Cir. 2011) (after noting "standing is a jurisdictional requirement" and a party's "failure to raise the standing issue [did] not impede [its] ability to consider the issue for the first time on appeal," court sua sponte addressed standing). When the bankruptcy court concluded Savannah lacked standing, "the court [became] powerless to continue." CAMP, 451 F.3d at 1269 (citations and internal quotation marks omitted). Indeed, "[u]nless [Savannah] ha[d] . . . standing to bring its claims, the . . . court had no . . . authority to enter a judgment in the case." Maverick Media Grp., 528 F.3d at 819-20; see also

<u>Cuban Am. Bar Ass'n</u>, 43 F.3d at 1422-23. The judgment of the bankruptcy court is therefore vacated and the case is remanded with instructions to dismiss the case. <u>See</u> <u>Id.</u> at 823 (vacating district court's judgment when plaintiff lacked standing and remanding with instructions to dismiss the case).

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) The bankruptcy court's Memorandum Opinion and Order Granting Defendant's Motion for Summary Judgment entered in 8:15-ap-418-KRM on July 13, 2016, is **AFFIRMED.**

(2) The Final Judgment entered in 8:15-ap-418-KRM on July 14, 2016, is **VACATED** and the adversary proceeding is **REMANDED** with instructions that it be dismissed for lack of jurisdiction.

(3) The bankruptcy court's Order Sustaining Objection to Proof of Claim entered in 8:14-bk-13452-KRM on July 29, 2016, is **AFFIRMED** for the reasons stated above.

(4) The Clerk is directed to transmit a copy of this Order to the bankruptcy court and, thereafter, **CLOSE** this case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this
<u>27th</u> day of April, 2017.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE